**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
**(Manhattan Division)**

| | |
|---|---|
| **Sun Yeul Hong,** <br><br>                         Plaintiff, <br>       -against- <br><br> **MOMMY'S JAMAICAN MARKET** <br> **CORP.,** *et al.,* <br><br>                 the defendants. | Case Number: 20-9612 |

**Motion for Default Judgment**

Plaintiff, Sun Yeul HONG, by his attorney, (Michael) Hyunkweon Ryu, respectfully requests the court enter a default judgment against all defendants jointly and severally for the reasons set forth below.

**Nature of Action**

Plaintiff is a former employee of the defendants MOMMY'S JAMAICAN MARKET CORP., Kap Won KIM, Myong Su KIM, and Dae Kyu Kim, and brings this action to recover unpaid minimum wages and overtime wages, liquidated damages, interest, reasonable attorneys' fees and costs under the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§201 *et seq.*, and the New York Labor Law ("NYLL"), Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.* and New York Code, Rules, and Regulations §142 ("NYCRR") from the defendants.

**Jurisdiction and Venue**

This Court has jurisdiction over the federal law claim asserted in this action under 28 U.S.C. § 216(b) (FLSA, private lawsuit) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's state law claims (unpaid wages for the same work/employment) pursuant to 28 U.S.C. § 1367(a), because these claims are so closely related to Plaintiff's federal law wage and hour claim that they form parts of the same case or controversy under Article III of

the United States Constitution. Venue is proper in this Court under 28 U.S.C. § 1391(b) since the

defendants have their place of business in this District and the unlawful acts occurred in this

District. The grocery store where the plaintiff worked was located in Bronx.

## Argument

### I. Legal Standard for Entry of Default Judgment

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a court may enter a default

judgment against a party whose default has been entered by the Clerk of Court under Rule 55(a).

Despite the "oft-stated preference" for resolving disputes on the merits, the trial court has "sound

discretion" to grant or deny a motion for a default judgment. *Enron Oil Corp. v. Diakuhara*, 10

F.3d 90, 95 (2d Cir. 1993). In determining how to exercise that discretion, the court balances the

need to expeditiously adjudicate cases against its responsibility to afford litigants an opportunity

to be heard. *Id.* at 96.

A defaulting defendant is deemed to have admitted all of the well-pleaded factual

allegations in a plaintiff's complaint, except for claims relating to damages. *Cement & Concrete

Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d

Cir. 2012). To determine what damages should be awarded, the court may conduct an

evidentiary hearing or rely upon the plaintiff's documentary submissions. *See* Fed. R. Civ. P.

55(b)(2) ("The court may conduct hearings . . . when, to enter or effectuate a [default] judgment,

it needs to . . . determine the amount of damages[.]"); *Transatlantic Marine Claims Agency v.

Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) ("We have held that, under Rule 55(b)(2),

'it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a

basis for the damages specified in the default judgment.'" (quotation omitted)).

## II. The Discretionary Factors Favor a Default Judgment

To determine whether to grant a default judgment, the court considers whether: (1) the default was willful; (2) the defaulting party has a meritorious defense to the plaintiff's claims; and (3) denial of the default judgment motion would prejudice the non-defaulting party. *Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285, 291 (S.D.N.Y. 2016) (Swain, J.) (quoting *Mason Tenders Dist. Council v. Duce Const. Corp.*, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (additional citation omitted). Each of these factors weighs in favor of granting Plaintiff's request for default judgment.

### A.  The defendants' Default Was Willful

"A default is considered willful where the defendant fails to answer a complaint without explanation or justification." *Double Green Produce, Inc. v. Forum Supermarket Inc.*, 387 F. Supp. 3d 260, 266 (E.D.N.Y. 2019) (citing *S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1998) (additional citations omitted). In this case, the defendants were not only served with the summons and complaint on December 18, 2020 [Document Numbers: 19, 20, Exhibits 1, 2] but even called the plaintiff's counsel on January 7, 2021, one day prior to the due date for the defendants' response to the summons and complaint through the defendants' attorney, Mr. Errol Deans. He stated that he was representing all defendants and requested a thirty (30) day extension to respond to the summons and complaint. Plaintiff's attorney agreed to the proposed thirty (30) day extension.

Following the telephone conversation, on January 7, 2021, at 12:51 pm, the defendants' attorney emailed Plaintiff's attorney with the draft of the stipulation, which was not signed by the defendants' attorney, agreeing to the thirty (30) day extension. A true and accurate copy of the email is attached hereto as Exhibit 3.

On January 7, 2021, at 12:58 pm, through email, the plaintiff's attorney authorized the defendants' attorney to sign the stipulation on behalf of the plaintiff's attorney. A true and accurate copy of the email is attached hereto as Exhibit 4. On January 13, 2021, at 1:37 pm, the plaintiff's attorney emailed the defendants' attorney because it appeared that the defendants' attorney did not file the stipulation of extension of time with the Court. A true and accurate copy of the email is attached hereto as Exhibit 5. On January 13, 2021, at 1:39 pm, the plaintiff's attorney forwarded an email from the court that contained the order, Notice of Initial Pretrial Conference, to the defendants' attorney because it was ordered by the Judge to notify the defendants. A true and accurate copy of the email is attached hereto as Exhibit 6.

On January 15, 2021, at 2:18 pm, the plaintiff's attorney emailed the defendants' attorney because it appeared that the defendants' attorney did not file the stipulation of extension of time with the Court and asked for a telephone number which he can talk to, also attaching a draft case management plan and scheduling order. A true and accurate copy of the email is attached hereto as Exhibit 7. On January 15, 2021, at 2:26 pm, a non-attorney staff member Ms. Christine Sawyer-Lee from the defendants' law firm emailed the plaintiff's attorney to state that the defendants' law firm is no longer representing the defendants in this matter, and a new counsel will contact the plaintiff's attorney soon. A true and accurate copy of the email is attached hereto as Exhibit 8. However, so far no one (not just a lawyer, anyone) has contacted the plaintiff's attorney or plaintiff since then. Further, since then, the defendants have failed to enter an appearance and respond to the Complaint although they have had more than sufficient time: original due date, and additional 30 days and many more to defend this lawsuit. The defendants have offered no explanation or justification for their failure to appear and answer the Complaint despite the plaintiff's attorney gave the defendants' attorney (and the defendants) additional days to answer as requested.

4

These circumstances demonstrate the defendants' intent to abandon their defense against this action. Accordingly, the Court should find that the defendants' default was willful. *See Santana*, 198 F. Supp. 3d at 291 n.2 (finding that defendants' failure to appear and respond to a complaint and motion for default judgment indicated willful conduct) (citing *Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-cv-6865 (LTS)(GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007)).

### B.  The Defendants Have Presented No Meritorious Defense

Because they have neither appeared nor filed an answer to the Complaint, the defendants have raised no meritorious defense to Plaintiff's claims. Default judgment is favored in circumstances where a defendant's failure to respond to a complaint leaves the court unable to determine whether a defendant may have meritorious defenses. *United States v. Myers*, 236 F. Supp. 3d 702, 707 (E.D.N.Y. 2017); *Santana*, 195 F. Supp. 3d at 291 n.2. This factor therefore weighs in favor of granting the instant Motion.

### C.  the defendants' Inaction Prejudices Plaintiff

In the absence of an appearance by the defendants, a denial of the plaintiff's Motion would prejudice the plaintiff because "there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-cv-14226 (RLC)(RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) (citation omitted). The plaintiff would be left without the opportunity to vindicate his rights and receive just compensation for hours worked. *Santana*, 195 F. Supp. 3d at 291 n.2. Accordingly, this factor, in addition to the other factors, favors entry of a default judgment. As explained below, the allegations in the Complaint establish a basis for finding liability and entering a default judgment against the defendants.

## III. Plaintiff's Complaint Establishes the defendants' Liability

In light of the defendants' default, the well-pleaded allegations pertaining to liability in the Complaint must be accepted as true. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Gesauldi v. Dan Yant Inc.*, 6 F. Supp. 3d 264, 269 (E.D.N.Y. 2014). The Complaint states claims for violations of the minimum wage provisions of the NYLL, the overtime wage provisions of the FLSA and NYLL, and the notice and wage statement provisions of the NYLL, as amended by the Wage Theft Prevention Act ("WTPA").

### A.  The defendants Are Subject to the FLSA and the NYLL

The FLSA and NYLL require employers to pay employees at least the minimum wage for each hour worked up to forty per workweek. 29 U.S.C. § 206; N.Y. Lab. Law § 652. The FLSA and NYLL also require employers to pay their employees a premium, 50 percent more than the employee's regular rate of pay, for hours worked over forty per workweek. 29 U.S.C. § 207; N.Y. Lab. L. § 652; 12 N.Y.C.R.R. §§ 142–2.1, 142–2.2.

Following the passage of the WTPA, the NYLL additionally requires employers to give employees written notice of, *inter alia*, their rates of pay and to furnish each employee with a wage statement with each wage payment. N.Y. Lab. L. § 195(3).

An employer is subject to the FLSA if it is an "enterprise engaged in commerce," meaning it: (1) "has employees engaged in commerce or in the production of goods for commerce," or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and (2) has annual gross volume of sales made or business done of not less than $500,000. *Galicia v. 63-68 Diner Corp.*, No. 13-cv-3689 (PKC), 2015 WL 1469279, at *2 (E.D.N.Y. Mar. 30, 2015) (quoting 29 U.S.C. § 203(s)(1)(A)). Individuals may also be subject to the FLSA if they exercise "operational control" over the employee. *Id; see also Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013). The NYLL is broader than the FLSA, and states that virtually any person or entity "acting as [an] employer,"

including "any individual . . . [or] corporation," is an employer of a plaintiff-employee. *See, e.g.*, *Galicia*, 2015 WL 1469279, at *3 (citing N.Y. Lab. L. § 651(6)).

Plaintiff worked as a manual laborer at the defendants' grocery store located at Bronx, for stocking, displaying, packaging, and cleaning of the goods to be sold, at the instructions and directions of the defendants, handling, using or otherwise working on goods produced or manufactured outside the State of New York, including foreign countries such as Mexico, Jamaica, South Korea, and China to be put in interstate commerce, and brought into this State through interstate commerce, and as a result, Plaintiff was engaged in commerce under 28 U.S.C. §203(b). Exhibit 9, Compl. ¶¶ 16, 17. Further, the defendants formed an enterprise under the FLSA because they performed the management and operation of the grocery store, MOMMY'S JAMAICAN MARKET CORP., through their unified operation or common control for a common business purpose of profit generation through the grocery store business. Exhibit 9, Compl. ¶ 11. The defendants and the enterprise purchased the goods to sell such as fruits, vegetables, dried fish, bread, meat, alcoholic and non-alcoholic beverages, canned food, condiments, candies, teas, cooking oil, soap, and toilet papers from vendors, and sold the merchandise to customers of the general public. Exhibit 9, Compl. ¶¶ 12, 13. Further, the defendants and the enterprise also accepted EBT which is New York State's federally mandated and 100% federally funded SNAP (formerly known as Food Stamps) program. ¶ 14. As a result, the defendants and the enterprise were engaged in commerce under 28 U.S.C. §203(b). Exhibit 9, Compl. ¶ 15. The plaintiff was an employee engaged in commerce or the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce. Exhibit 9, Compl. ¶ 13. The defendants and enterprise had an annual gross volume of sales in excess of $500,000. Compl. 18.

In the default judgment context, Plaintiff's uncontested allegations are sufficient to establish that the defendants are employers covered by the FLSA and NYLL. *See, e.g.*, *Apolinar v. Glob.Deli & Grocery, Inc.*, No. 12-cv-3446 (RJD)(VMS), 2013 WL 5408122, at *5 (E.D.N.Y. Sept. 25, 2013) (holding that, "in the absence of any opposition from the defendants," the uncontested allegations in the Complaint were sufficient to establish that the defendants "were involved in interstate commerce and [] subject to the FLSA" for purposes of default judgment) (citing *Garcia v. AKR Corp.,* No. 11-cv-6184 (RRM), 2013 WL 685613, at *3 (E.D.N.Y. Jan. 10, 2013); *Banasiewicz v. Olympia Mechanical Piping & Heating Corp.,* No. 10-cv-369 (SJ), 2012 WL 4472033, at *4 (E.D.N.Y. Aug. 31, 2012)).

The Complaint also pleads sufficient facts showing that the defendants exercised sufficient control over the terms and conditions of the plaintiff's employment at Mommy's Jamaican Market Corp to be considered his employer. "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Id.* at *8-9.

As alleged in the Complaint and in the plaintiff's declaration in support of this Motion, Kap Won Kim and Myung Su Kim are the husband and wife, and the owners of the grocery store. Dae Kyu Kim was the son of the owners. Compl. 19, 20. Further, they interviewed Plaintiff for hiring (Kap Won Kim only); hired Plaintiff, or participated in the hiring decision of Plaintiff (not Dae Kyu Kim); participated in and approved of the pay practices of the enterprise and corporate the defendant, including how Plaintiff was paid, how much Plaintiff was paid, and how the payment to Plaintiff was recorded and reported to the appropriate taxing authority; managed, supervised, established, administered or exercised authority over the terms and conditions of Plaintiff's employment; assigned work or participated in assigning work to

Plaintiff, including directing Plaintiff where to work and when to work; and had the power and authority to discipline Plaintiff. Compl. 19, 20

Thus, the individual defendants Kap Won Kim, Myung Su Kim and Dae Kyu Kim therefore exercised significant operational control over the corporate defendant Mommy's Jamaican Market, Corp and the plaintiff, and accordingly are individually liable as employer for any violations of the FLSA. *See, e.g. Santana*, 198 F. Supp. 285 at 292 ("Because [individual defendant] Pimental had the power to hire and fire Santana, affect her terms and conditions of employment, and manage her work activities, he is also an employer of Santana under the FLSA.") (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). These same facts are also sufficient to establish that the individual defendants were the plaintiff's employer under the NYLL. *See Fermin v. Las Delicias Peruanas Restaurant, Inc.*, 93 F. Supp. 3d 19, 34–35 (E.D.N.Y. 2015) (explaining that "Plaintiffs' burden in establishing that they are 'employees' entitled to NYLL protections is similar to the definition they had to satisfy under the FLSA" but the NYLL "focuses more on 'the degree of control exercised by the purported employer' over the purported employee.'")

**B. Minimum and Overtime Wage Violations Under the FSLA and NYLL**

The plaintiff was paid as follows. Exhibit 9, Compl. ¶¶ 35, 36.

| Period beginning date | Period ending date | Total payment per week |
|---|---|---|
| 11/14/2014 | 12/31/2017 | $950.00 |
| 1/1/2018 | 12/31/2018 | $965.00 |
| 1/1/2019 | 12/31/2019 | $970.00 |
| 1/1/2020 | 9/20/2020 | $985.00 |

**1.  Hours Worked Per Work Week**

For the period commencing on or about 31 years ago, Plaintiff regularly and customarily at the specific instructions and demand of the defendants worked 6 days per week, 12 hours and

9

a half each day. Exhibit 9, Compl. ¶ 35. As a result, the total hours worked per week is 75 hours

(=12.5x6) under the FLSA. However, under NYLL, since the defendants regularly and

knowingly required the plaintiff to be at work in excess of ten (10) hours per day, the defendants

were required to pay Plaintiff one extra hour's pay at least at minimum wage for every day in

which the interval between Plaintiff's start and end times exceeded ten hours, in violation of New

York State labor regulations (12 NYCRR §§ 142-2.4). As a result, for the purpose of the

damages calculations under the NYLL, the hours worked per workweek is 81 hours

(=(12.5+1)x6).

### 2. The Defendants Violated the Minimum Wage Provisions of the NYLL

The NYLL ensures payment of a basic minimum wage rate. N.Y. Lab. Law § 652; 12

N.Y.C.R.R. § 142-2.1. As detailed in the Complaint, the defendants paid the plaintiff a fixed

weekly amount throughout his employment. Exhibit 9, Compl. ¶ 36. Because the plaintiff's

employment is not covered by minimum wage standards established in any other minimum wage

order promulgated by the New York State Department of Labor Commissioner, the plaintiff is an

employee in a miscellaneous industry and occupation as defined by 12 NYCRR § 142-1.1.

the defendants suffered or permitted the plaintiff to work the aforementioned schedules at

MOMMY'S JAMAICAN MARKET. 12 N.Y.C.R.R. §§ 142–2.14. Exhibit 9, Compl. ¶¶ 16, 24,

56. As the defendants' employee, the plaintiff was entitled to receive payment of at least the

minimum wage for hours worked up to forty per week. 12 N.Y.C.R.R. § 142-2.2. However, as

demonstrated in the plaintiff's damages calculations in the Complaint, Exhibit 9, ¶ 36., and

herein, and described in Exhibit 10, the plaintiff was paid beflow the minimum wage as

established by the NYLL while employed by the defendants.

In this case, the defendants did not pay the plaintiff an hourly rate, but instead paid him a

fixed amount (salary) every workweek regardless of the number of hours worked. Because he

was paid a salary, the plaintiff's regular hourly wage is determined "by dividing the total hours worked during the week into the employee's total earnings." 12 N.Y.C.C.R. § 142-2.16; *see also Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 506 (S.D.N.Y. 2013) ("The NYLL does not require that employees be paid by the hour, only that the total wages paid to the employee are equal or greater to the total sum of the applicable minimum wage rate times the number of hours worked by the employee."). As calculated by dividing the plaintiff's weekly salary by the number of hours worked per week—and as detailed in the plaintiff's damages calculations in the tables Exhibit 10 — the plaintiff was paid a regular rate that is less than the New York City Minimum Wage in 2018, 2019 and 2020 as shown in the table Exhibit 10. In light of these well-pleaded factual allegations, the plaintiff has established that the defendants violated the minimum wage provisions of the NYLL. N.Y. Lab. L. § 652; 12 N.Y.C.R.R. § 142-2.1.

### 3. The defendants Violated the Overtime Wage Provisions of the FLSA and NYLL

Both the FLSA and NYLL require employers to pay their non-exempt employees a premium, 50 percent more than the employee's regular rate of pay, for hours worked over 40 per workweek. 29 U.S.C. ¶ 207; N.Y. Lab. L. ¶ 652; 12 N.Y.C.R.R. ¶¶ 142-2.1, 142-2.2. As reflected by the plaintiff work schedule set forth in the Complaint in paragraph 35, the plaintiff worked overtime hours (*i.e.*, hours over 40 per workweek) throughout his employment with the defendants at MOMMY'S JAMAICAN MARKET. Because the plaintiff was the defendants' employee for purposes of the FLSA and NYLL, he was entitled to overtime pay for the overtime hours he worked. However, the defendants did not pay the plaintiff wages at the rate of 1.5 times his regular rate for hours worked over 40 per workweek. Exhibit 9, Compl. ¶ 27. Accordingly, Plaintiff's well-pleaded factual allegations establish that the defendants violated the overtime provisions of the FLSA and NYLL.

### 4. Applicable Statutes of Limitations

Claims under the FLSA are subject to a three-year statute of limitations if the defendants'

actions were "willful." 29 U.S.C. § 255(a). An employer acts willfully when it knows or shows

reckless disregard for whether its actions are unlawful. An employer need not act with malice or

bad faith; rather, where an employer knew that failure to pay overtime was unlawful or did not

take reasonable steps to learn about its obligation to pay overtime, its conduct is willful. *Yang v.*

*ACBL Corp.*, 427 F. Supp. 2d 327, 337-338, 340-41 (S.D.N.Y. 2005). Where, as here, the

defendants have defaulted, and the Complaint alleges that the defendants acted intentionally,

willfully, and in bad faith. Exhibit 9, Compl. ¶¶ 29, 34, 47, 51-54, 57-59, 63, 64, 68, 70, 71.

Plaintiff is entitled to a finding that the defendants' conduct was willful. *See, e.g., Wicaksono v.*

*XYZ 48 Corp.*, No. 10-cv-3635 (LAK)(JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011)

("Because the defendant defaulted and the complaint alleges that all of the violations were

undertaken 'knowingly, intentionally and willfully,' the plaintiffs are entitled to finding that the

defendant's conduct was willful, and the three year statute of limitations will apply.").

In addition, as employers, the defendants should have been aware of their legal

obligations under the FLSA and NYLL. Nevertheless, the defendants did not pay the plaintiff the

required minimum and overtime wages and failed to comply with "basic recordkeeping

requirements," as reflected by their failure to provide the plaintiff with wage notices and

statements. *Moon v. Kwon*, 248 F. Supp.2d 201, 231 (S.D.N.Y. 2002). The plaintiff is therefore

entitled to a three-year limitations period on his FLSA claims.

The NYLL has a six-year statute of limitations for the plaintiff's state-law claims,

regardless of willfulness. N.Y. Lab. L. § 663(3). Because the Complaint was filed on November

16, 2020 [Document Number: 1], Plaintiff is entitled to damages under the NYLL dating back to

the start of his employment with MOMMY'S JAMAICAN MARKET in November 16, 2014.

### B. the defendants Violated the Wage Theft Prevention Act

The defendants unlawfully dispensed with their obligation to provide the plaintiff, with each wage payment, a statement listing "the dates of work covered by that payment of wages, name of employee, name of employer . . . the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." N.Y. Lab. L. § 195(3). Because the defendants did not furnish the plaintiff with corresponding wage statements accompanying his payments, (Exhibit 9, Compl. ¶ 31), the plaintiff is entitled to statutory damages for the defendants' failure to comply with the WTPA.

### IV. Plaintiff is Entitled to Damages.

The well-pleaded allegations in Plaintiff's Complaint, taken as true, establish the defendants' violations of the FLSA and the NYLL. Once the defendants' liability is established, the Court must determine the appropriate amount of damages. *Santana*, 198 F. Supp. 3d 285, 291; *see also Apolinar*, 2013 WL 5408122 at *6 (*"A court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded."). "Where, as here, the defendant has never appeared, 'the Court's determination is based solely on plaintiff[s'] submissions.'" *Gesauldi v. Dan Yant Inc.*, 6 F. Supp. 3d 264, 269 (E.D.N.Y. 2014) (alteration in original) (quoting *Gilbert v. Hotline Delivery,* No. 00-cv-0160 (MBM)(RLE), 2001 WL 799576, at *2 (S.D.N.Y. July 10, 2011)).

It is within the Court's discretion "whether or not to hold an evidentiary hearing" to determine and calculate damages. *Id.* at 269; *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 293 (E.D.N.Y. 2011) ("In calculating damages, this Court relies on the submissions of plaintiff and has not required a hearing. The Second Circuit has expressly endorsed this approach so long as the court has 'ensured itself that there was a basis for the damages specified in the default

13

judgment.'") (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir.1997) (internal quotation omitted)). In cases where "no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff['s] recollection and estimates of hours worked are presumed to be correct.'" *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 88 (E.D.N.Y. 2012) (quoting *Zeng Liu v. Jen Chu Fashion Corp.,* No. 00-cv-4221 (RJH)(AJP), 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)). Accordingly, the plaintiff's unrebutted recollections and estimates of hours worked as reflected in his Complaint as well as Declaration provide "sufficient evidence to establish damages with respect to the defendants' FLSA and NYLL violations 'with reasonable certainty'" in this case. *Santana*, 198 F. Supp. 3d at 292 (quoting *Transatlantic Marine Claims Agency*, 109 F.3d at 111).

### A. Unpaid Minimum Wage Calculation

To calculate the minimum wages owed to the plaintiff, the first step is determining his regular rate of pay for the applicable timeframe. The plaintiff's regular rate of pay is determined by dividing the total weekly pay that he received by the hours that he worked that week. As detailed in the damages calculations Exhibit 10, the plaintiff is entitled to the difference between the New York State statutory minimum wage rate and the effective hourly rate the defendants actually paid him, for all hours worked since November 16, 2014. N.Y. Lab. Law § 652; 12 N.Y.C.R.R. § 146. The plaintiff's total damages for unpaid minimum wages are $15,434.00. See below for calculation.

($12-$11.91)x81=$7.00 minimum wage unpaid per week for year 2018
($13.50-$11.98)x81=$123.50 minimum wage per week for year 2019
($15-$12.16)x81=$230.00 minimum wage per week for year 2020

See the table Exhibit 10 for detailed calculations.

**B. Unpaid Overtime Wages Calculation**

The plaintiff is entitled to overtime compensation at one and one half (1½) times his regular hourly rate for each hour beyond forty per week. See 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2. Since the regular rate was calculated by dividing the total amount actually paid with the total hours that should have been paid, all hours paid above that the minimum wage are considered to have been paid for the regular rate for all hours worked and the unpaid wages are the overtime portion of the overtime hours. On the other hand, for hours the actual rate paid was lower than the minimum wages (years 2018, 2019 & 2020), the unpaid minimum wages were calculated as set forth above and in the table Exhibit 10, and based on the minimum wages (the regular rate in this case), again the overtime portion of the overtime hours was calculated.

$11.73x(81-40)x0.5=$240.43 per week for years prior to 2018,

$12.00x(81-40)x0.5=$246.00 per week for year 2018; taking the minimum wage as the regular rate not the actual rate,

$13.50x(81-40)x0.5=$276.75 per week for year 2019; taking the minimum wage as the regular rate not the actual rate, and

$15.00x(81-40)x0.5=$307.50 per week for year 2020; taking the minimum wage as the regular rate not the actual rate. *Poon v. Apple NYC Corp*, 2019 U.S. Dist. LEXIS 471, at *12-13 (S.D.N.Y. Jan. 2, 2019) ("Accordingly, her overtime rate is calculated with reference to the minimum wage to which she was actually entitled under the NYLL. See 29 C.F.R. 778.100 (regular rate, for purposes of calculating overtime, may not be less than statutory minimum wage); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 (providing that overtime rate should be computed in the same manner as under the FLSA)"). Accordingly, as detailed in the damages

calculations in Exhibits 10, 11, the plaintiff's overtime damages are $77,959.48 under NYLL

(and $39.295.26 under the FLSA, for jurisdictional purposes only, not for double dipping).

### C.  Wage Theft Prevention Act Claims

Also, since April 9, 2011, the NYLL has required that employers "furnish each employee

with a statement with every payment of wages, listing the following information: (1) the dates of

work covered by that payment of wages; (2) the employee's name; (3) the employer's name,

address, and telephone number; (4) the rate or rates of pay and basis thereof; (5) gross wages; (6)

deductions; (7) allowances, if any, claimed as part of the minimum wage; and (8) net wages.

N.Y. Lab. L. § 195(3). "Prior to February 25, 2015, the failure to [provide an accurate wage

statement] was a violation for which plaintiffs could receive $100 per work week in damages,

with a cap of $2,500." *Perez v. Platinum Plaza 400 Cleaners, Inc*., No. 12-cv-9353 (PAC), 2015

WL 1881080, at *4 (S.D.N.Y. Apr. 24, 2015) (citing NYLL § 198(1–d)). Amendments to these

provisions became effective on February 27, 2015 and increased the penalties for failure to

provide wage statements to $250.00 in damages per workday with a cap of $5,000.00. N.Y. Lab.

L. § 198(1–d) (2016). Indeed, Plaintiff is entitled to damages for the defendants' failure to

provide wage statement with *each* payment of wages. *Perez*, 2015 WL 1881080 at *4. Plaintiff's

total damages for WTPA violations are $5,000.00.

### D. Liquidated Damages

#### 1.  Fair Labor Standards Act

"Both federal and state law provide for an award of liquidated damages to plaintiffs who

establish that an employer has failed to pay required wages." *Jaramillo*, 2014 WL 2993450, at

*5. Liquidated damages consisting of 100 percent of unpaid wages are "the norm" in FLSA

cases. *Yang*, 427 F. Supp. 2d at 340 ("Under the FLSA, an employer who violates the statute's

overtime compensation provision is liable for any unpaid overtime compensation and 'an additional equal amount as liquidated damages.'") (quoting 29 U.S.C. § 216(b)). A court may reduce the amount of liquidated damages only if defendants can prove that they acted in good faith. 29 U.S.C. § 260. "The employer's burden, though, is a difficult one to meet . . . ." *Yang*, 427 F. Supp. 2d at 340 (citation omitted). Because the defendants defaulted, they should not be given the opportunity to contest liquidated damages. *See Pereira v. J. Sisters Hair Care Prods., Inc.,* No. 8-cv-4537 (GBD)(RLE), 2010 WL 2194808, at *2 (S.D.N.Y. Apr. 5, 2010) (awarding plaintiffs liquidated damages against defaulting defendants based on allegations of unpaid wages). In addition, for the reasons discussed above, the defendants' actions were willful and thus were not made in good faith. The plaintiff is therefore entitled to recover liquidated damages consisting of 100 percent of his FLSA damages. 29 U.S.C. § 216(b).

### 2. New York Labor Law

Liquidated damages are also appropriate under the NYLL when a defendant's actions were willful. N.Y. Lab. L. § 198(1–a). The standard for willfulness under the NYLL and the FLSA is substantially the same. *See Moon*, 248 F. Supp. 2d at 235. Willfulness can be established when employers voluntarily underpay their employees. *Pereira*, 2010 WL 2194808, at *3. For the reasons described above, the defendants' failure to pay lawful wages was willful. However, the Second Circuit has established that employees are not entitled to liquidated damages under both the FLSA and the NYLL. *See Chowdhury v. Hamza Express Food Corp*., 666 F. App'x. 59, 60-61 (2d Cir. 2016). Instead, "[c]ourts should award damages under the statute that provides for the greater recovery." *Leon v. Zita Chen*, No. 16-cv-480 (KAM)(PK), 2017 WL 1184149, at *9 (E.D.N.Y. Mar. 29, 2017) (citing *Luna v. Gon Way Construction, Inc.*, No. 16-cv-1411 (ARR)(VMS), 2017 WL 835321, at *14 (E.D.N.Y Feb. 14, 2017)). Accordingly, the plaintiff requests that the Court grant an award of liquidated damages under the NYLL, as it

is the higher of the two liquidated damage awards. As reflected in the attached damages calculations, the plaintiff is entitled to $93,393.83 (=$15,434.00+$77,959.48:the unpaid minimum wage + the unpaid overtime) in liquidated damages.

### E. Interest

The plaintiff is entitled to prejudgment interest on damages related to the defendants' failure to pay overtime under the NYLL. N.Y. C.P.L.R. § 5001(a); N.Y. Lab. L. § 663(1); *Heng Chan v. Sung Yue Tung Corp.*, No. 03-cv-6048 (GEL), 2007 WL 1373118, at *9-10 (S.D.N.Y. May 8, 2007) (awarding prejudgment interest on compensatory damages recovered under the NYLL). Prejudgment and liquidated damages under the NYLL are not functional equivalents and both may be awarded for violations of the NYLL. *Santillan,* 822 F. Supp. 2d at 298 (citing *Reilly v. Natwest Mkts. Grp., Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)).

New York law sets the statutory interest rate at nine percent per annum. *Id.*; N.Y. C.P.L.R. § 5004. When a plaintiff has incurred damages at various times, prejudgment interest "shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Prejudgment interest is "calculated from the midpoint of [the employee's] employment to the date of entry of judgment at an interest rate of nine percent per year." *Pineda v. Frisolino, Inc.*, No. 15-cv-3774 (GBD), 2017 WL 3835882, at *13 (S.D.N.Y. Aug. 29, 2017). Using the reasonable intermediate date method per employment period, Plaintiff's prejudgment interest was calculated to be $28,780.09 (=$4,514.45+$22,803.15+$1,462.50) as of April 6, 2020.

$4,514.45=3.25x0.09x$15,434.00 (unpaid minimum wage principal)

$22,803.15=3.25x0.09x$77,959.48 (unpaid overtime principal)

$1,462.50=3.25x0.09x$5,000 (unpaid NYLL 195(3) damages)

The plaintiff is also entitled to post-judgment interest should any sums be awarded by the Court, beginning on the date judgment is entered, at the rate prescribed by 28 U.S.C. § 1961. *See Fermin*, 93 F. Supp. 3d at 23 (awarding post-judgment interest in FLSA case).

### F. Attorneys' Fees and Costs

The FLSA and the NYLL provide for recovery of reasonable attorneys' fees and costs by successful plaintiffs. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1–a), (1–d), 663. The FLSA and NYLL are remedial statutes designed to protect the low-wage workers. "Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk," like the risk presented here of collecting against an absent defendant. *Khait v. Whirlpool Corp.*, No. 06-cv-6381 (ALC), 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010). Experienced counsel expended a significant but reasonable amount of time in litigating this matter by, *inter alia*, interviewing and investigating the plaintiff's claims, drafting the Complaint, attempting to engage the defendants to participate in this litigation, and seeking a default judgment, including preparing the instant Motion.

> "Under the FLSA and the NYLL, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citing 29 U.S.C. § 216(b) and NYLL § 663(1)). "[A] reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." [*5]  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010) (internal quotation marks and citation omitted). "In the Second Circuit, attorney['s] fees awards are [] calculated based on the 'presumptively reasonable fee' approach." *McGlone v. Contract Callers Inc.*, 146 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (citation omitted). "The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Dancy v. McGinley*, 141 F. Supp. 3d 231, 235 (S.D.N.Y 2015) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)) (alteration omitted).

A court's calculation of "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks and citation omitted). "The reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). In calculating that rate, the court must "bear in mind *all* of the case-specific variables . . . relevant to the reasonableness of attorney's fees." *Id.* These include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the [*6] client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3; *see id.* at 191. There is a presumption that "a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally," and so in ordinary circumstances courts may rely on typical fees within the district as a measure of reasonableness. *Id.* at 191.

In determining the number of hours reasonably expended, courts must consider both "contemporaneous time records specifying, for each attorney, the date, the hours expended, and the nature of the work done," *Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2011) (internal quotation marks, citation, and alterations omitted), as well as "its own familiarity with the case and its experience generally as well as . . . the evidentiary submissions and arguments of the parties," *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir.1992) (internal quotation marks and citation omitted). Courts may reduce the fee award requested in some circumstances, such as when plaintiffs submit deficient or [*7] incomplete billing records, *see Hensley*, 461 U.S. at 437 n.12, or in order to exclude "excessive, redundant, or otherwise unnecessary hours," *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

*Chen v. Patel*, 2020 U.S. Dist. LEXIS 56666, at *4-7 (S.D.N.Y. Mar. 31, 2020)

> (1) the time and labor required;

This case needed a substantial time to figure out the whereabouts of the defendants because the defendants sold their grocery store and did not let the plaintiff know where they resided.

(2) the novelty and difficulty of the questions;

This case did not have a novel or difficult questions except figuring out whereabouts of the defendants.

(3) the level of skill required to perform the legal service properly;

This case needed only just average skills of lawyers who are versed with the wage and hour law litigation, except that the plaintiff needed a lawyer with good Korean skills because he is very limited in his English.

(4)  the preclusion of employment by the attorney due to

acceptance of the case;

This case did not create an extraordinary burden in accepting other cases.

(5) the attorney's customary hourly rate;

The attorney Michael Hyunkweon Ryu's hourly rate is $480 per hour. The paralegals' rate is $180 per hour. They are the same rate that are charged to all clients for all kinds of matters for this attorney. This is also very reasonable (in fact cheap). $600 per hour was approved in 2015. *Lora v. J. V. Car Wash, LTC.*, No. 11-cv-9010 (LLS)(AJP), 2015 WL 4496847, at *6 (S.D.N.Y. July 24, 2015); $600 per hour was approved in 2019. *Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 658 (S.D.N.Y. 2019).

"A reasonable rate is generally the 'prevailing market rate[] for counsel of similar experience and skill to the fee applicant's counsel,'" with the "community" defined as the district in which the court sits. *Williams*, 368 F. Supp. 3d at 656 (quoting *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005); *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000)). According to the 2018 Wolters Kluwer Real Rate Report thru September 2018, attached hereto as Exhibit 12, the mean "Real Rate" for Partners and Associates working in Labor and Employment law in New York City was $620.00 and $400.00, respectively.

(6) whether the fee is fixed or contingent;

It is contingency, and now it is even contingent upon collection as well as prevailing on the merits

(7) the time limitations imposed by the client or the circumstances;

There was nothing special to note for this factor.

(8) the amount involved in the case and the results obtained;

As it is a default judgment, the amount obtained is pretty much what is demanded, and that is around $210,000. It is not a huge case, but not a small case eighter.

(9) the experience, reputation, and ability of the attorneys;

Michael Hyunkweon Ryu has been practicing since 2004 in various jurisdictions: federal and state courts of NY, NJ, DC, MD & VA as well as the patent office. He has litigated many wage and hour cases in federal and state courts of NY and MD, and federal courts of DC and VA. He also litigated commercial cases in the state courts of NY, MD and VA. He has no disciplinary records, and currently is a popular wage and hour lawyer in the Korean community in VA. He is not yet well known in NY.

(12)    the "undesirability" of the case;

The attorney is honored for the chance to be trusted with Mr. Hong's case; however, the fact that the grocery store business was sold made the collectability of this case uncertain and to that extent this case was not a favored case although it was still not undesirable.

(12)    the nature and length of the professional relationship with
        the client;

This is the first time this attorney works with Mr. Hong, and the chance is that it would probably be the last since he is just an employee who almost retired.

(12) awards in similar cases.

22

In a similar case, the entry of a default judgment after the defendants' default to appear, the court, Judge Liman awarded $16,292.38 in attorney's fees and costs; the damages in that case were only $95, 711.34. *Corrales v. AJMM Trucking Corp.*, 2020 U.S. Dist. LEXIS 69417, *11 (S.D.N.Y. April 20, 2020).

For these Lodestar factors and statements in the Declaration of Michael Hyunkweon Ryu (Exhibit 13), the counsel for the plaintiff requests $20,132.00 in attorneys' fees, and $909.00 in costs.

## Conclusion

For the foregoing reasons, the plaintiff respectfully requests that the Court enter a default judgment in his favor and jointly and severally against the defendants Mommy's Jamaican Market, Crop., Kap Won Kim, Myung Su Kim and Dae Kyu Kim for the total of $241,608.04 for the following:

Unpaid minimum wage principal: $15,434.00, its liquidated damages: $15,434.00, the principal's pre-judgment interest: $4,514.45;

Unpaid overtime principal: $77,959.48, its liquidated damages: $77,959.48, the principal's pre-judgment interest: $22,803.15;

NYLL 195(3) violation: $5,000, its pre-judgment interest: $1,462.50;

Reasonable attorney's fees: $20,132.00;

Cost and expenses: $241,608.04; and

Post judgment interest.

Respectfully Submitted,
by Sun Yeul HONG
through his counsel:
/s/ (Michael) Hyunkweon Ryu
(Michael) Hyunkweon Ryu

35-71 162nd Street
1st Floor
Flushing, New York 11358
Tel: 718-819-0001
email: michaelryu@ryulawgroup.com