UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
SUN YEUL HONG, :
:
                Plaintiff, :
:     20-cv-9612 (LJL)
    -v- :
:     OPINION & ORDER
MOMMY'S JAMAICAN MARKET CORP., KAP WON :
KIM, MYONG SU KIM, DAE KYU KIM, :
:
                Defendants. :
:
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/22/2021

LEWIS J. LIMAN, United States District Judge:

    Defendants Mommy's Jamaican Market Corp. ("MJMC"), Kap Won Kim, Myong Su Kim, and Dae Kyu Kim (collectively, "Defendants") move, pursuant to Federal Rules of Civil Procedure 55(c) and 60(b) to vacate the default judgment entered against them on October 15, 2021. Dkt. No. 26.

    Plaintiff Sun Yeul Hong ("Plaintiff" or "Hong") filed this action on November 16, 2020, alleging that Defendants violated the Fair Labor Standards Act of 1947 ("FLSA"), 28 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), by failing to pay him overtime wages due under the FLSA and minimum and overtime wages due under the NYLL as well as spread-of-hours payments under the NYLL during the 31-year period he worked for Defendants until September 2020. Dkt. No. 1. Hong filed affidavits of service on December 21, 2020, and the Clerk of Court issued a Certificate of Default on February 26, 2021. Dkt. Nos. 13–16, 20. On April 5, 2021, Hong moved for a default judgment against all Defendants. Dkt. No. 21. Plaintiff filed a certificate of service of the motion for a default judgment on April 9, 2021. Dkt. No. 22. The Court granted the motion for a default judgment on October 15, 2021, and judgment was

entered against Defendants. Dkt. Nos. 24–25. On November 16, 2021, Defendants filed the instant motion to vacate the default judgment. Dkt. No. 26.[1]

## DISCUSSION

A motion to vacate a default judgment is "addressed to the sound discretion" of the district court. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (quoting *State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166 (2d Cir. 2004)); *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). "As relevant here, a Rule 60(b) motion to vacate a judgment may be granted on the basis of 'excusable neglect,' Fed. R. Civ. P. 60(b)(1), or for 'any other reason justifying relief from the operation of the judgment,' Fed. R. Civ. P. 60(b)(6); *see also* Fed. R. Civ. P. 55(c) (providing that default judgments may be set aside in accordance with Rule 60(b))." *Gunnells v. Teutul*, 469 F. Supp. 3d 100, 102 (S.D.N.Y. 2020). In determining whether a default judgment should be set aside pursuant to Rule 60(b), the court considers: "(1) whether the default was willful; (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the non-defaulting party prejudice." *Green*, 420 F.3d at 108 (quoting *State Street*, 374 F.3d at 166–67); *see also Gucci Am., Inc. v. Gold Center Jewelry*, 158 F.3d 631, 634 (2d Cir. 1998). These factors are applied "more rigorously in the case of a default judgment" rather than in a challenge to the entry of a default, "because the concepts of finality and litigation repose are more deeply implicated in the [default-judgment] action." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). But even still, the Second Circuit has "expressed a strong 'preference for resolving disputes on the merits.'" *Green*, 420 F.3d at 104 (quoting *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)).

---

[1] On November 17, 2021, Defendants filed an amended motion to vacate the default judgment. Dkt. No. 31.

Defendants argue that they have satisfied each of the three elements required before a court will vacate a judgment, *see* Dkt. No. 29, and have submitted declarations in support of their argument, Dkt. Nos. 27–28, 35.  They argue that the failure to answer in this case stems from a mistaken assumption that the claims alleged in this action would be resolved by an unemployment claim that Hong filed with the New York State Department of Labor around the same time he filed his FLSA complaint.  Dkt. No. 29 at 4.  That is, they contend they believed that the proceedings were mutually exclusive, and they therefore did not need to address both matters simultaneously.  *Id*.  Defendants further argue that they have a meritorious defense because Hong was an exempt employee under FLSA because he was employed in an administrative capacity.  *Id.* at 4–5.  They also argue that Plaintiff has suffered no prejudice because the motion to vacate was filed within a month of the entry of the default judgment and while the action was still young.  *Id.* at 7.[2]

---

[2] Defendants also argue that MJMC was not properly served.  In support of his opposition to Defendants' motion to vacate the default judgment, Hong's counsel submitted an email and attached a draft stipulation for an extension of time to respond to the complaint from Errol Deans of the Song Law Firm, LLC, noted on the draft stipulation as "Attorneys for Defendants."  Dkt. No. 32-2.  In the draft stipulation, the agreement is between Hong and all Defendants, including MJMC.  *Id.*  This indicates that MJMC had notice of the proceeding.  "[O]n a motion to vacate a default judgment based on improper service of process where the defaulting defendant had actually notice of the original proceeding but delayed in bringing the motion, the defendant bears the burden of proof to establish that the purported service did not occur."  *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005).  "A process server's sworn statement of service creates a presumption that service has been effectuated."  *DeCurtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) (summary order).  According to the New York Department of State's website, Kap Won Kim is listed for both the "Service of Process Name and Address" and the "Chief Executive Officer's Name and Address."  Dkt. No. 28-3.  Here, the summons and complaint were served on Tim Chi, Kap Won Kim's son-in-law, who, according to the Proof of Service filed on the docket "is designated by law to accept service of process on behalf of Mommy's Jamaican Market Corp."  Dkt. No. 15.  There is no evidence that, in contrast to the process server's sworn statement, Tim Chi was not authorized to accept service of process on behalf of MJMC.  While Defendants argue that service was made "on a complete stranger to defendant MJMC," in violation of the Federal Rules of Civil Procedure, Kap Won Kim's own declaration explains that he "rel[ies] on his son-in-law, Mr. Tim Chi to handle all our household

**I.      Willfulness**

The willfulness element addresses "those defaults that arise from egregious or deliberate conduct." *Am. All. Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996); *see also Bricklayers & Allied Craftworkers*, 779 F.3d 182, 186 (2d Cir. 2015) (holding that "willfulness" refers to "conduct that is more than merely negligent or careless, but is instead egregious and . . . not satisfactorily explained"); *Gucci Am., Inc.*, 158 F.3d at 636 ("[I]t is sufficient that defendant defaulted deliberately."). Although "[g]ross neglect can weigh against the party seeking relief from a default judgment, . . . it does not necessarily preclude relief." *Am. All. Ins. Co.*, 92 F.3d at 61.

Whether the Defendants' default was willful is a close question. The complaint was served on Kap Won Kim and the other defendants on December 18, 2020. Dkt. Nos. 13–16. Shortly after being served, Kap Won Kim, the former principal of MCMJ, and his wife, defendant Myong Su Kim, consulted with an attorney regarding representation in the FLSA litigation. Dkt. No. 27 ¶¶ 1, 4. Around the same time, the Kims received a notice from the New York State Department of Labor ("NYSDOL"), mailed on January 4, 2021, concerning an unemployment claim by Hong. *Id.* ¶ 4; Dkt. No. 27-1. The notice from the NYSDOL concerned some of the time periods alleged in the complaint. According to Kap Won Kim's declaration, he and his wife, "who have no more than an extremely basic understanding of the English language," Dkt. No. 27 ¶ 2, understood the NYSDOL notice to allege that Hong was underpaid while working at MJMC, *id.* ¶ 5. Kap Won Kim and his wife knew "that defendant MJMC <u>must</u> be represented by counsel in this case." Dkt. No. 35 ¶ 7. But, not wishing to spend

---

matters, including the bills, mail, repairs, etc." Dkt. No. 27. This suggests that Mr. Chi was acting as Mr. Kim's agent in accepting service on behalf of MJMC. Defendants have not met their burden in showing that service of MJMC was improper.

money on attorneys' fees, they asked their counsel to obtain an extension on the FLSA lawsuit, believing that when the NYSDOL matter resolved, this lawsuit "would conclude accordingly, if not automatically," and then the individual defendants responded *pro se* to the NYSDOL with a protest.  *Id.* ¶¶ 6–7; Dkt. No. 27-2 at 2.  Believing that "this lawsuit and the NYSDOL proceedings were mutually exclusive," and having received no word from the NYSDOL on the notice and the protest, Defendants believed that they did not need to pursue a defense of the lawsuit.  Dkt. No. 35 ¶ 14.  Kap Won Kim acknowledges that they did not hear from NYSDOL within the extended time to answer the FLSA lawsuit.  *Id.* ¶ 13.  When, in October 2021, they learned of the default judgment, they retained counsel immediately and brought this application.  *Id.* ¶ 15.

      Defendants ascribe their default to "carelessness or negligence."  *Id.* ¶ 17.  There is evidence that supports that characterization.  Defendants' decision not to defend the action was based on a false assumption that the NYSDOL would resolve Hong's claims and that once the NYSDOL resolved its claim that would also resolve the FLSA claim and obviate the need for both sides to litigate.  Dkt. No. 35 ¶ 13; Dkt. No. 27 ¶ 9.  The Court credits that Defendants had that understanding.  Defendants are small-business owners with apparently little knowledge about the process of court proceedings and "an extremely basic understanding of the English language."  Dkt. No. 27 ¶ 2; Dkt. No. 35 ¶ 2.  They were—albeit, by their own choice— proceeding without counsel to disabuse them of their misconceptions for much of the litigation.  A defendant's incorrect assumptions about court processes and the obligation to respond to an action may support a showing that a default was not willful.  *See Brien v. Kullman*, 71 F.3d 1073, 1078 (2d Cir. 1995) (concluding that a defendant's default was not willful when, among other things, defendant "incorrectly assumed that the Answer was to be filed after the petition for

removal was determined" (alterations adopted)); *Puddu v. 6D Golobal Technologies, Inc.*, 2020 WL 2833852, at *4 (S.D.N.Y. May 31. 2020) (explaining that "[w]hile it may have been careless or even grossly negligent for [defendant] – a sophisticated businessman who is no stranger to litigation" to respond to complaint, "the Court cannot conclude – in light of his explanations and resolving all doubts in his favor – that [defendant's] actions rise to the level of willfulness").

On the other hand, there is evidence that bespeaks willfulness or a "deliberate decision[] not to respond to" the complaint. *Gucci Am., Inc.*, 158 F.3d at 636. Defendants knew that MJMC had to be represented by counsel and knew that the negotiated-for extension had expired. Even if they believed that the NYSDOL proceeding would resolve all of Plaintiff's claims and even if—through their conduct in that proceeding—they evinced an intent to defend themselves, they also made a conscious decision not to also and simultaneously participate in this litigation. This conduct suggests an element of willfulness, at least on the part of Kap Won Kim, former principal of MCMJ, and Myong Su Kim. *See Gunnells*, 469 F. Supp. 3d at 103 (observing that "facts [that] would suggest that the defaulting defendants were fully aware that [counsel] would not represent them until he was paid" would "render[] their failure to take further action to protect their interests in this case egregious").

As explained below, the Court need not finally resolve how best to characterize Defendants' conduct. Even if it could be characterized as willful, it is so close to the line that, given the other factors in the case, the judgment should be vacated.

## II.  Meritorious Defense

Vacating a default judgment is not to be a pointless exercise; a court vacates a default judgment only when the party against whom it enters has some prospect of avoiding a judgment—that is, when he has a meritorious defense.  "'To make a sufficient showing of a meritorious defense' on a motion to vacate a default judgment, a movant 'need not establish his defense conclusively,' but must present evidence of facts that, 'if proven at trial, would constitute a complete defense.'"  *Gunnells*, 469 F. Supp. 3d at 104 (quoting *McNulty*, 137 F.3d at 740 (internal citations omitted)); *see also Enron Oil Corp.*, 10 F.3d at 98 ("The test of [a meritorious] defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense.").

Defendants argue that Hong is an administrative employee exempt from the FLSA under 29 U.S.C. § 213(a)(1), which provides that Section 207 of the FLSA "shall not apply with respect to (1) any employee employed in a bona fide . . . administrative . . . capacity."  29 U.S.C. § 213(a)(1).  Evidence that an employee likely qualified for an exemption under the FLSA and NYLL qualifies as a potentially meritorious defense.  *See King v. Regen Med. Mgmnt, LLC*, 2021 WL 4066598, at *4 (S.D.N.Y. Sept. 7, 2021).  The U.S. Department of Labor regulations define a person as employed in a bona fide administrative capacity as one who is:

> (1) Compensated on a salary or fee basis . . . at a rate of not less than $684 per week . . .;
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).  The regulations define work directly related to management or general business operations to include work in functional areas such as purchasing and quality control.  *Id.* § 541.201(b).  They further define the exercise of discretion and independent judgment with

respect to matters of significance as involving the comparison and evaluation of possible courses of conduct and acting or making a decision after the various possibility have been considered, and they define "matters of significance" as referring to the level of importance or consequence of the work performed. *Id.* § 541.202.

Accepting the assertions in Kap Won Kim's declaration as true, they would provide a complete defense to the FLSA claims. Kap Won Kim declares that Hong received a salary of between $950 and $985 per week for the time periods at issue, Dkt. No. 35 ¶ 19, and states that he was the highest compensated employee at MJMC, *id.* ¶ 24. Kap Won Kim states that, for the six-year period before Hong's separation from MJMC, Hong's primary duties consisted almost exclusively of administrative functions; that his primary duty was to perform general business operations of MJMC including the negotiation of prices with suppliers to replenish inventory, exploring and researching new product to replace unpopular inventory, calculating optimal price points for maximum profit margin, and anticipating consumer sentiment based on trends and seasonal changes; that Hong's duties were matters of significance; and that Hong was trusted to exercise his discretion and independent judgment. Dkt. No. 27-1 ¶¶ 13, 15–16.

Plaintiff argues that Defendants do not provide evidence that would provide a defense to the claims based on the NYLL and accompanying regulations and that the default judgment was based on the NYLL. Dkt. No. 32 at 20–21. The NYLL, like the FLSA, contains an exemption for employees who work in an "[e]xecutive, administrative or professional capacity" and defines "administrative capacity" substantially similarly to the FLSA. 12 NYCRR 142-2.14(c)(4)(ii). Under the NYLL, the administrative exemption applies only if, when an employee is employed by an employer with 10 or fewer employees, he is paid at least $787.50 per week on and after December 31, 2016; $900 per week on and after December 31, 2017; $1,012.50 per week on and

8

after December 31, 2018; and $1,125.00 per week on and after December 31, 2019. *Id.* Though Kap Won Kim's initial declaration was unclear, the declaration now unambiguously admits that Hong received wages of between $950 and $985 per week from November 2014 until September 2020. Dkt. No. 35 ¶ 19. Kap Won Kim also declares that Hong received compensation in the form of meals and transportation that was not included in the wage calculation and that this compensation "exceed[ed] $1,200 per week" during the last six years of Hong's employment with Defendants. With the other evidence, that could qualify Hong as an exempt administrative employee. Plaintiff still objects that Defendants will not be able to prove their case and makes powerful arguments for why Plaintiff ultimately will prevail. But the question at this stage is not whether the Court finds Defendants' arguments to be credible but rather whether Defendants have presented sufficient evidence that, if true, they would prevail and therefore are entitled to have the case resolved on the merits. They have done so.

### III. Prejudice

Plaintiff has a particularly difficult challenge in showing any prejudice. Plaintiff argues that he will suffer "extreme prejudice" because Defendants failed to file a responsive pleading for almost a year and the corporate defendant has ceased operations. Dkt. No. 32 at 22–23. Plaintiff does not contend that the state of the corporate defendant's operations is any different than they were at the time Plaintiff initially filed the complaint.

Moreover, "delay alone is not a sufficient basis for establishing prejudice." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). "Some delay is inevitable when a motion to vacate a default judgment is granted . . . [and so] something more is needed. For example, delay 'may thwart plaintiff's recovery or remedy. It also may result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Green*, 420 F.3d at 110 (quoting 10A Charles A. Wright, et al., Fed. Practice & Procedure: Civil § 2699, at

9

169 (3d ed.1998)). "Accordingly, in determining whether a plaintiff has suffered prejudice, courts consider 'the effect of the delay caused by the defendant's default.'" *Manzanares v. Your Favorite Auto Repair & Diagnostic Center, Inc.*, 2020 WL 6390162, at *8 (E.D.N.Y. Nov. 8, 2020) (quoting *Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010)).

There is no prejudice Plaintiff has suffered. Plaintiff identifies no lost documents, no increased difficulties of discovery, no opportunities for fraud, and no advantages inuring to Defendants from delay as a result of Defendants' failure to answer. Although Defendants did fail to answer or participate in the case for approximately nine months from when their answer was due to the motion to vacate the default judgment, Plaintiff identifies no prejudice whatsoever from that delay.[3] Indeed, all of the documents and all of the testimony that was available at the beginning of 2021 when the Court was prepared to hold its initial pretrial conference would be here today.

Finally, the Court takes note of correspondence from defense counsel using language about Defendants' position in this case that is neither befitting a lawyer appearing before this Court nor productive. But counsel's discourteous language is not enough to deprive his client of a day in court.

## IV. Balance of the Factors

Weighing the factors, vacatur of the judgment is appropriate here. The Second Circuit "has expressed on numerous occasions its preference that litigation disputes be resolved on the merits, not by default." *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995). It has "described default judgments as 'the most severe sanction which the court may apply.'" *Id.* (quoting *Sec. &*

---

[3] As a means of minimizing prejudice, the Court orders that Defendants reimburse Plaintiff the costs incurred in moving for the default judgment. *See Gunnells*, 469 F. Supp. 3d at 105 n.3.

10

*Exchange Comm'n v. Mgmnt Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975)).  These considerations drive the principle that, "in ruling on a motion to vacate a default judgment, all doubts must be resolved in favor of the party seeking relief from the judgment." *Green*, 420 F.3d at 104.  As explained above, Defendants have presented a meritorious defense to this lawsuit, Plaintiff will not suffer prejudice from vacating the judgment.  Whether Defendants were willful in their default is an extremely close call; in light of the direction to resolve all doubts "in favor of the party seeking relief from the judgment" and the conclusion that the other factors weigh in favor of vacatur, the Court does not view Defendant's conduct as so egregious—if it was egregious at all—to preclude relief.  *Cf. Gunnells*, 469 F. Supp. 3d at 103 (noting that a court "should consider and weigh all three factors" and declining to decide whether the default was willful in light of the showing of meritorious defenses and the lack of evidence that plaintiff will suffer prejudice if the default judgment was vacated).

## CONCLUSION

The motion to vacate the default judgment is GRANTED.

The Clerk of Court is respectfully directed to reopen the case and to close Dkt. Nos. 26 and 31.

SO ORDERED.

Dated: December 22, 2021
      New York, New York

                                        LEWIS J. LIMAN
                                    United States District Judge