```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/19/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
SUN YEUL HONG,                                                    :
                                                                  :
                        Plaintiff,                                :
                                                                  :        20-cv-9612 (LJL)
        -v-                                                       :
                                                                  :        MEMORANDUM &
MOMMY'S JAMAICAN MARKET CORP., KAP WON                            :        ORDER
KIM, MYONG SU KIM, DAE KYU KIM,                                   :
                                                                  :
                        Defendants.                               :
                                                                  :
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

   Plaintiff Sun Yeul Hong ("Plaintiff") moves, pursuant to Federal Rule of Civil Procedure 56, for partial summary judgment against Defendants Kap Won Kim ("Kap Won"), Myong Su Kim ("Myong Su"), and Mommy's Jamaican Corp. ("Mommy's Jamaican" and, together with Kap Won and Myong Su, "Defendants"), finding Defendants jointly and severally liable to Plaintiff under the New York Labor Law ("NYLL") for unpaid minimum and overtime wages, including principal, liquidated damages, and prejudgment interest; for violating the wage statement provisions of the NYLL; and for reasonable attorneys' fees and costs. Dkt. No. 80. The motion is denied.

## DISCUSSION

   Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for

the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party," *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001), and the movant bears the burden of demonstrating that "no genuine issue of material fact exists," *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).  If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

Plaintiff presents substantial evidence of violations of the NYLL while he was employed by Mommy's Jamaican from May 1990 until September 6, 2020, including evidence that he was not paid the New York minimum wage during the years 2019 and 2020 and that he was never given overtime pay.  *See, e.g.*, Dkt. No. 82 ¶¶ 13, 17, 131, 170; *see* Dkt. No. 81 at 15–16.  Defendants do not dispute that Plaintiff was not given the minimum wage and overtime pay to which he would have been entitled had he been their "employee" under the terms of the statute, but they argue that Plaintiff is an "exempt" employee under the NYLL.  *See generally* Dkt. No. 91.[1]

The regulations implementing the NYLL define an employee as "any individual employed, suffered or permitted to work by an employer, except . . . [an] [e]mployee . . . does not include any individual permitted to work in . . . [an] [e]xecutive, administrative, or professional capacity."  12 N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") § 142-2.14(a), (c)(4).

---

[1] Defendants do dispute Plaintiff's hours worked.  Dkt. No. 91 at 9.  In light of the Court's disposition of this motion, the Court need not resolve that issue.

Defendants argue that Plaintiff is exempt because he worked in an "administrative" capacity. *See* Dkt. No. 91 at 6–7. The NYLL's regulations define "work in a *bona fide* . . . *administrative . . . capacity*" to mean

> work by an individual: (a) whose primary duty consists of the performance of office or nonmanual field work directly related to management policies or general operations of such individual's employer; (b) who customarily and regularly exercises discretion and independent judgment; [and] (c) who regularly and directly assists an employer, or an employee employed in a bona fide executive or administrative capacity (*e.g.*, employment as an administrative assistant) or who performs, under only general supervision, work along specialized or technical lines requiring special training, experience or knowledge.

12 N.Y.C.R.R. § 142-2.14(c)(4)(ii) (italics and ellipses in original). In addition, the NYLL establishes a floor on the salary a person must be paid to be considered an administrative employee. For the years 2019 and 2020 for "[s]mall employers of 10 or fewer employees," a person must have been paid "a salary, inclusive of board, lodging, or other allowances and facilities, of not less than" $1,012.50 and $1,125.00 per week, respectively. *Id.* § 142-2.14(c)(4)(ii)(d)(1).

Courts have drawn a distinction between employment "belonging in the administrative category, which falls squarely within the administrative exception, [and] production/sales work, which does not." *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 532 (2d Cir. 2009).[2] The rule distinguishes "between employees directly producing the good or service that is the primary output of a business and employees performing general administrative work applicable to the running of any business." *Id.* at 535; *see Pray v. Long Island Bone & Joint, LLP*, 2016 WL 945557, at *10 (E.D.N.Y. Aug. 11, 2016). "The border of the administrative exemption is 'not a

---

[2] Because the NYLL "applies the same exemptions as the FLSA," the Court draws from case law addressing the FLSA and the NYLL exemptions interchangeably. *Reiseck v. Univ. Commc'ns of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010); *see also Zubair v. EnTech Eng'g P.C.*, 808 F. Supp. 2d 592, 600 (S.D.N.Y. 2011) (same).

clear one' outside the manufacturing context, and must be determined in each case based on 'what [a] particular employee's primary duties actually were.'" *Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417, 427 (S.D.N.Y. 2013) (alteration in original) (quoting *Kadden v. VisuaLex, LLC*, 910 F. Supp. 2d 523, 540 (S.D.N.Y. 2012)). "[T]asks related to vendor relations, customer communications and support, and order logistics" can be considered "directly related to Defendant's general business operations and distinct from its sales activities." *Id.* at 428.  A claim of an exemption is an affirmative defense and Defendants have the burden of proving that an exemption applies. *Suarez v. Big Apple Car, Inc.*, 806 F. App'x 19, 21 (2d Cir. 2020); *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 n.7 (2d Cir. 2013).

Moreover, where, as here, the employer has failed to keep adequate records or provide statements of wages to employees as required by statute, the employer must demonstrate by a preponderance of the evidence that it in fact paid its employees the "wages, benefits and wage supplements." NYLL § 196-a(a); *see also Estrada v. Therapy PLLC*, 2021 WL 4427068, at *3 (S.D.N.Y. Sept. 27, 2021); *Guerrero v. Danny's Furniture Inc.*, 2021 WL 4155124, at *3 (S.D.N.Y. Sept. 13, 2021).

Plaintiff presents powerful arguments he neither performed work related to the "management policies or general operations" of Mommy's Jamaican nor was paid the minimum salary necessary for him to be considered an "administrative" employee.  He recites a litany of his duties and responsibilities at Mommy's Jamaican, which Defendants do not dispute, that range from cooking for the other employees, Dkt. No. 82 ¶¶ 24, 53, to restocking the shelves of the store and displaying fish and meat products in the freezer, *id.* ¶¶ 69–70, 74, to cleaning up "the cat poop and pee," *id.* ¶¶ 84–85, to removing snow from the front of the store and salting the sidewalk after a storm, *id.* ¶¶ 89–90.

Defendants respond, however, with the declaration of Kap Won who swears that while Plaintiff occasionally performed work outside any administrative functions or administrative capacity, his "job duty primarily consist[ed] of office or nonmanual field work directly related to [Mommy's Jamaican's] general operations" and "his main daily tasks included the running or servicing of [the Mommy's Jamaican] store and included (a) Negotiating prices with suppliers to replenish inventory; (b) Exploring and researching new product to replace unpopular inventory; (c) Calculating optimal price points for maximum profit margin; and (d) Anticipating consumer sentiment based on trends and seasonal changes."  Dkt. No. 93-1 ¶ 21.  Kap Won further declares that those job duties "required discretion and independent judgment because they did not always require our supervision or direction," that the "subject matter of these decisions are matters of significance because any mistakes in the ordering, pricing or supply process can be devastating to any small grocery store operation such as [Mommy's Jamaican]," that the owners "trusted" Plaintiff "to exercise his discretion and independent judgment in the best interest of [Mommy's Jamaican]," that the owners were "the ones who decided how much to order of higher priced items" but did so with Plaintiff's assistance, and that Plaintiff "was the highest compensated employee at [Mommy's Jamaican]" with "access to the books, including all wages paid."  *Id.* ¶¶ 22–24.

The NYLL test turns upon "the primary duty" of the employee and not upon his exclusive duties.  A person who performs some ministerial or sales functions can still be exempt if his primary duty consists of office work that is directly related to the general operations of the employer.  *See Torrenegra v. Grameen Am., Inc.*, 2017 WL 1401291, at *6 (E.D.N.Y. Apr. 19, 2017) (noting in the FLSA context that "[e]mployees are commonly called upon to perform a wide range of tasks, some of which are within an exemption and some of which are not" and that

an employee's primary duty is "the principal, main, major or most important duty that the employee performs" (quoting 29 C.F.R. §§ 541.200, 541.500, 541.700(a))). By the same token, the administrative exemption turns upon whether "discretion and independent judgment" is "customarily and regularly exercise[d]," and not upon whether that exercise of judgment is ever subject to review. 12 N.Y.C.R.R. § 142-2.14(c)(4)(ii)(b). Among the factors to consider in determining whether an employee exercises discretion and independent judgment is whether he "carries out major assignments in conducting the operations of the business" or "is involved in planning long- or short-term business objectives." *In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 155 (2d Cir. 2010) (quoting 29 C.F.R. § 541.202(b)). "[E]mployees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." *Pray*, 2016 WL 945557, at *11 (quoting 29 C.F.R. § 541.202(c)).

At this stage, reviewing the facts "in the light most favorable" to the non-moving parties, as the Court is required to do, *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008), the Court concludes that genuine issues of fact exist as to Plaintiff's primary duty and whether, in the exercise of that duty, Plaintiff was permitted to, and did, exercise discretion and independent judgment, *see Hoxhaj v. Michael Cetta, Inc.*, 2023 WL 3455444, at *2–3 (S.D.N.Y. May 15, 2023) (denying motion for summary judgment where factual issues existed as to the primary duty of employees and whether they exercised discretion).

Genuine issues of fact also exist as to Plaintiff's salary for 2019 and 2020. It is undisputed, for purposes of summary judgment, that the amount Plaintiff was paid in cash and checks on a weekly basis fell below the floor necessary for him to be classified as exempt. Kap Won testified that Mommy's Jamaican paid Plaintiff "a little more than $900" weekly in 2021, of which $700 was paid in cash and "200 something dollars" was paid by check. Dkt. No. 82-40 at

38–39. Kap Won testified that "that was how much" Plaintiff was paid in 2020 and that he was paid the "same" for the years 2015 through 2019. *Id.* In paragraph 170 of his Rule 56.1 statement, Plaintiff includes a chart that sets forth what Plaintiff was told and believes he was paid "[a]ssuming the check was $250": $950 per week for the period November 14, 2014 to December 31, 2017, $965 per week for the period January 1, 2018 to December 31, 2018, $970 per week for the period January 1, 2019 to December 31, 2019, and $985 per week for the period January 1, 2020 to September 7, 2020. Dkt. No. 82 ¶ 170. Defendants respond that "Plaintiff has been compensated *at least* $1,200 per week during his last 6 years with [Mommy's Jamaican]. This weekly amount comprises salary, as set forth in Paragraph 170 of Plaintiff's declaration and meals and transportation allowances." Dkt. No. 94 ¶ 188 (emphasis in original). The statement is supported by the declaration of Kap Won where he testifies:

> These "detailed payments" [reflected in paragraph 170] do not evidence all the compensation given to Mr. Hong during the "last 6 years." The above "detailed payments" do not include the cost of meals and transportation provided to Mr. Hong, nearly every day he had worked at [Mommy's Jamaican]. On certain long days, we provided Mr. Hong with 3 meals (breakfast, lunch and dinner). We also provided him with taxicab service. We provided these benefits because of our relationship with him lasting more than 30-years. We do not know the exact amount of these benefits because we often dined with Mr. Hong, and sometimes drove him home ourselves. However, we are confident that the wages paid to Mr. Hong plus all such benefits provided to him exceed $1,200 per week during his "last 6 years."

Dkt. No. 93-1 ¶ 20 (underline in original).

There are reasons to question Kap Won's declaration. In his reply Rule 56.1 statement, Plaintiff asserts that the meals, transportation, and extra pay he received totaled no more than $17.91 a week. Dkt. No. 99 ¶ 188. The meals consisted of ramen noodles that he cooked as a snack for people who worked at the store and that usually sold for less than $1 per package at the Korean markets, Dkt. No. 82-45 ¶¶ 24, 28, a Korean style soup that did not contain any meat or eggs because the owners did not permit employees to eat what the store sold, *id.* ¶¶ 57, 59, and

7

chicken drum sticks that the owners brought into the store from time to time and that were past their expiration date, *id.* ¶¶ 54–55; *see* Dkt. No. 98-2 ¶ 25.  He claims none of those meals qualify as part of his salary under New York law because employers are not entitled to meal credits unless the meal provides "adequate portions of a variety of wholesome, nutritious foods" and includes eggs, meat, fish, or poultry.  Dkt. No. 99 ¶ 188 (citing 12 N.Y.C.C.R.R. § 142-2.19).  Moreover, under New York regulations, meals for small employers cannot be valued at more than $4.65 per meal on and after December 31, 2018 and $5.15 on and after December 31, 2019.  12 N.Y.C.R.R. § 142-2.5(a)(i)(a)(2).

Plaintiff also claims that he was not given a transportation allowance and that the only transportation benefit he received was that the owners gave him a ride home two or three times a month when they stayed late, which saved him the $2.75 bus fare home.  Dkt. No. 99 ¶¶ 20, 22–23.  Further, in 2019 and 2020, he was given a Christmas bonus of $300 or $500.  *Id.* ¶ 99.

Plaintiff makes these assertions in a reply Rule 56.1 statement, however, and thus they are not properly before the Court.  *See Pape v. Dircksen & Talleyrand Inc.*, 2019 WL 1435882, at *3 (E.D.N.Y. Feb. 1, 2019), *report and recommendation adopted*, 2019 WL 1441125 (E.D.N.Y. Mar. 31, 2019) ("Local Rule 56.1 does not permit the filing of Reply Rule 56.1 Statements, as Defendants have done.").[3]  Plaintiff was aware that Defendants would claim that

---

[3] Though the Court refuses to hold that Rule 56.1 replies are categorically impermissible, *see Cap. Recs., LLC v. Vimeo, LLC*, 2018 WL 4659475, at *1 (S.D.N.Y. Sept. 7, 2018) ("Local Civil Rule 56.1 does not provide for a 'reply' in further support of a Rule 56.1 statement of undisputed facts . . . [but] the Rule does not prohibit such replies."), Plaintiff did not seek leave to submit such a reply and did not give the Court an opportunity to fashion a fair process for the submission of such a reply, for example by giving Defendants the ability to respond, *see, e.g., id.* (permitting the plaintiffs to submit a Rule 56.1 reply but noting that "[t]he Court is sympathetic . . . to [the d]efendants' concerns about the potential unfairness of doing so" and permitting the defendants "to submit either a reply in further support of their own Rule 56.1 statement or a sur-reply to [the p]laintiffs' reply").

the checks and cash that he was given did not constitute his entire salary; Defendants made that same assertion in a declaration filed on December 20, 2021. Dkt. No. 35-1 ¶ 20. Plaintiff offers no excuse for why he did not address that claim by offering evidence in his opening summary judgment papers or seek leave of the Court to submit his reply Rule 56.1 statement. *See supra* p. 8 n.3. Equally significant, however, the Court "may not make credibility determinations or weigh the evidence" on summary judgment. *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)). Thus, no matter how dubious the Court might be of Defendants' claims or how much evidence Plaintiff offers to rebut them, Defendants have offered just enough at this stage to forestall summary judgment.[4]

## CONCLUSION

Accordingly, Plaintiff's motion for partial summary judgment at Dkt. No. 80 is DENIED. Defendants have also moved to strike portions of the pending motion for partial summary judgment, Dkt. No. 113, and to strike Plaintiff's sur-reply to that motion, Dkt. No. 117. Those motions are DENIED AS MOOT.

SO ORDERED.

Dated: September 19, 2023
       New York, New York

_____
                LEWIS J. LIMAN
                United States District Judge

---

[4] The Court will have an opportunity to revisit whether Defendants have established evidence to show that the administrative exemption applies at the close of Defendants' case at trial. *See* Fed. R. Civ. P. 50(a).