UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/14/2024
```

-----------------------------------------------------------------------X
: 

SUN YEUL HONG,                                           :

                                    Plaintiff,           :

                                                         :          20-cv-9612 (LJL)

                   -v-                                   :

                                                         :          OPINION AND ORDER

MOMMY'S JAMAICAN MARKET CORP. et al.,                    :

                                    Defendants.          :

                                                         :
-----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

     Plaintiff Sun Yeul Hong moves for sanctions against Peter Y. Lee, Esq. ("Mr. Lee"),

former counsel to the defendants in this action, pursuant to the Court's inherent power and

28 U.S.C. § 1927.  Dkt. No. 239.  Mommy's Jamaican Corp. ("Mommy's Jamaican"), Kap Won

Kim, and Myong Su Kim (with Mommy's Jamaican and Kap Won Kim, "Defendants") also

move, pursuant to the Court's inherent power and 28 U.S.C. § 1927, for the imposition of

sanctions, and pursuant to New York Judiciary Law § 487, for damages against their former

counsel, Mr. Lee.  Dkt. No. 226.

     For the following reasons, Plaintiff's motion for sanctions is granted in part and

Defendants' motion for sanctions is denied.

## BACKGROUND AND PROCEDURAL HISTORY

     The motions are based on the conduct of Defendants' counsel, Mr. Lee, in moving to vacate

the Court's entry of a default judgment and in resisting the motion to reinstate the default judgment.

In brief, and as further described below, that conduct involved statements made to the Court over

multiple hearings, including under oath, in briefs and in declarations that misrepresented when Mr.

Lee began advising Defendants, which was a central issue in with respect to the default judgment.

The Court first describes the procedural history of this case and then describes the relevant facts and the Court's findings with respect to the default judgment which give rise to the motions for sanctions.

## I.    Procedural History

Plaintiff initiated this case by complaint filed on November 16, 2020, alleging that Defendants, his former employers, failed to pay minimum wage and overtime wages required by law under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law ("NYLL"), Art. 6, §§ 190 *et seq.* Dkt. No. 1. The complaint was served on Defendants on December 18, 2020, by delivery to Tim Chi, who lives with and is the son-in-law of the Kims. Dkt. Nos. 13–16. The Court held an initial pretrial conference on January 29, 2021; Plaintiff appeared, but Defendants failed to appear. *See* Minute Entry for Jan. 29, 2021.

On February 25, 2021, Plaintiff received a clerk's certificate of default against Defendants. Dkt. No. 20. The Court held a conference on March 4, 2021, which Plaintiff attended but Defendants failed to attend. *See* Minute Entry for Mar. 4, 2021. On April 5, 2021, with Defendants still having failed to appear, Plaintiff filed his motion for a default judgment. Dkt. No. 21.

On October 15, 2021, the Court issued an Opinion and Order granting a default judgment to Plaintiff. Dkt. No. 24. The Court concluded that Plaintiff's allegations substantiated his claims that Defendants violated the overtime provisions of the FLSA and the minimum wage, overtime, spread-of-hours, timely payment, wage notice, and wage statement provisions of the NYLL. *Id.* at 4. After reviewing the materials submitted by Plaintiff, the Court concluded that a further inquest was not necessary. *Id.* The Court awarded Plaintiff $93,393.48 in back wages with 9% prejudgment interest accruing from October 18, 2017, and $93,393.48 in liquidated damages plus $5,000 for Defendants' violation of NYLL § 195(3) and attorneys' fees of $14,800 and costs of $909. *Id.* at 11.

On November 16, 2021, Defendants finally surfaced.  On that date, Defendants filed a motion to vacate the default judgment.  Dkt. No. 26.  The contents of the motion to vacate are highly relevant to the motions for sanctions.  Defendants argued that their default was not willful but arose out of a mistaken belief that a demand by Plaintiff before the New York State Department of Labor ("NYSDOL") for unemployment benefits somehow would resolve Plaintiff's claims under FLSA and the NYLL.  Dkt. 30 at ECF p. 7.  With the motion, Defendants submitted the declaration of Ms. Kim attesting that she and her spouse were first-generation Korean senior citizens who had no more than an extremely basic understanding of the English language, that they relied on their son-in-law, Tim Chi, to handle all household matters, and that Mr. Chi himself had only a limited ability to speak and understand English.  Dkt. No. 27 ¶ 2.[1]  Ms. Kim stated that they did not wish to spend attorneys' fees on this lawsuit and on Plaintiff's claims before the NYSDOL, and offered the explanation that Defendants did not appear because they understood that if the NYSDOL case was resolved, the FLSA and NYLL lawsuit "would conclude accordingly, if not automatically," discovering only on a later date that that understanding was not correct.  *Id.* ¶ 6.  Ms. Kim made reference to the fact that an attorney (not Mr. Lee) had requested an extension of time to answer the complaint in this case.  *Id*. at ¶¶ 3, 6.  But Ms. Kim attributed the failure to take any further action to a desire to save attorneys' fees and a misunderstanding about the NYSDOL.  She stated: "to the extent NYSDOL proceedings did not cost us any attorney's fees, and we believed this lawsuit and the NYSDOL proceedings were mutually exclusive, we chose not to pursue any defense in Mr. Hong's

---

[1] The declaration refers to Kap Won as the husband and co-defendant Myong Su as "his wife." Dkt. No. 37 ¶ 10.  In fact, Kap Won is a woman and Myong Su is her husband.  In this opinion, the Court refers to Kap Won and Myong Su by their correct genders and not by the incorrect information set forth in the declarations.

lawsuit." *Id.* ¶ 9. She further offered that it was not until October 2021, at the time she received a copy of the default judgment, that she realized the difference between the NYSDOL proceedings and the lawsuit and that at that point, "[r]ealizing the urgent and important nature of the document, we engaged an attorney immediately to bring this application." *Id.* ¶ 10.

The motion to vacate the default judgment was hotly contested. On December 1, 2021, Plaintiff filed an opposition to the motion to vacate the default judgment which argued, *inter alia*, that Defendants' default was willful. Dkt. No. 32. Plaintiff noted that Defendants delayed for approximately one year from the service of the summons and complaint and seven months after service of the motion for the default judgment to bring the motion to vacate and that the failure to appear was indefensible because Defendants admitted that they had hired a lawyer at some point after being served who had obtained a 30-day extension in early January of time to file an answer and who had waived Defendants' personal jurisdiction defenses. *Id.* at 18; Dkt. No. 32-2. Plaintiff asserted that it was inexcusable that Defendants would have fired the lawyer who obtained an extension and then been silent for ten months until filing the motion to vacate the default judgment. *Id.* at 19. Plaintiff further asserted: "If the person who filed the protest [before the NYSDOL] was a lawyer, Defendants' allegation that Defendants thought they were dealing with this action by filing the protest cannot be true. If the person who filed the protest was not a lawyer, Defendants' conduct of proceeding without a lawyer for this action, even with their 'extremely basic understanding of the English language' was so reckless as to be willful." *Id.* On December 8, 2021, Defendants filed a reply memorandum of law in further support of the motion to vacate, which again argued that the default was not willful. Dkt. No. 33 at 2–3. Defendants argued that the default was the product of a misunderstanding caused "in no small part [by] Defendants' inability to read and understand English effectively," that "by resolving the

unemployment claim and (mistakenly) believing that Plaintiff's claims in this action would terminate accordingly, Defendants [would be able] to save on the costs and fees which they are now incurring to defend against this action." *Id.*

The Court scheduled a conference on the motion to vacate the default judgment for December 15, 2021. *See* Dkt. No. 34; Minute Entry for Dec. 15, 2021. One of the central issues at the conference was the attorneys Defendants had and when they had those attorneys for that issue was central to the question of willfulness. Plaintiff's counsel pointed out that Defendants' declarations failed to disclose when precisely the prior counsel who had requested the extension from Plaintiff in early January was terminated and when Defendants engaged new counsel with respect to this lawsuit. Plaintiff's counsel argued: "After firing original counsel, whether they hired the second counsel or not, I have no clue. And in fact, that's my point. They did not mention whether they hired a second counsel or not. [. . .] They don't even tell when they hired Peter Lee." Dkt. No. 56 at 14. Plaintiff's counsel pressed: "If you have so limited English that you know that you are limited, then how – what are you thinking? You fired attorney and then don't hire lawyer?" *Id.* at 15. Through their lawyer, Mr. Lee, Defendants represented in response that the declarations "explain[ed] to the Court exactly what defendants were thinking . . . We openly admit that the defendants told the lawyer, hold off on doing any work so we don't have to pay you, because it was their reasonable belie[f] at the time, Judge, that this unemployment claim . . . if that had concluded, then there would be nothing left to litigate before this Court." *Id.* at 17. In response to the Court's inquiry regarding the timing of Defendants' terminating of counsel's services, Mr. Lee stated: "I do not known when they actually terminated the attorney." Dkt. No. 56 at 17–18. Mr. Lee did not disclose whether, in addition to the first lawyer who had been hired to obtain an extension, any other lawyer was consulted or retained in

connection with this matter before October 2021, which is when Ms. Kim's declaration suggests that Mr. Lee was retained. Dkt. No. 27 ¶ 10. At the conclusion of the hearing, Mr. Lee offered to submit a revised declaration with information about when counsel was terminated. Dkt. No. 56 at 18.

On December 20, 2021, Defendants submitted a revised declaration of Ms. Kim. Dkt. No. 35-1. The declaration repeated that before October 2021, Ms. Kim did not appreciate the difference between the NYSDOL proceedings and this lawsuit and that in late October 2021, upon receiving the default judgment and realizing the "urgent and important nature of the document, we engaged counsel and brought this application immediately." Dkt. No. 35-1 ¶ 10. She also explained that shortly after service of process, Defendants consulted an attorney named Joseph Song regarding representation but that after also being made aware of the NYSDOL and not wanting to pay attorneys' fees, Defendants had instructed Mr. Song to ask for additional time to respond to the lawsuit and then, because they believed that the NYSDOL would decide Mr. Hong's claims and they wanted to save on attorneys' fees, they discharged Mr. Song. Dkt. No. 35-1 ¶¶ 4, 7, 13. The declaration also stated that "To the extent Mr. Hong, we presumed, would inform his own attorney in this lawsuit about our timely response in NYSDOL, we concluded that Mr. Hong and his attorney could neither seek default in this case nor inform the Court that we are not defending against his 'underpaid' claims." *Id*. ¶ 13. Nothing was said to disabuse the parties of the message, clearly conveyed on December 1 and beforehand, that after Mr. Song was discharged, Defendants did not have the assistance of counsel until they retained Mr. Lee in October 2021 after receiving the default judgment.

On December 22, 2021, the Court issued an Opinion and Order vacating the default judgment conditioned on Defendants paying Plaintiff $10,890.00 in attorneys' fees. Dkt. No. 37.

6

The question of whether to vacate the default judgment was close.  As the Opinion and Order reflected, the Court ultimately relied on the understanding conveyed by Mr. Lee that after Defendants terminated the representation of Mr. Song and until October 2021 they did not have counsel and that the reason for the default was the mistaken understanding that this lawsuit would be resolved by the NYSDOL proceeding.  The Court stated that whether the "default was willful is a close question," but concluded that Defendants were "proceeding without counsel to disabuse them of their misconceptions for much of the litigation" and that when "they learned of the default judgment, they retained counsel immediately and brought this application."  *Id*. at 4–5.

The litigation then proceeded.  Defendants answered the complaint, Dkt. No. 43, and the Court held a case management conference and entered a case management plan and scheduling order, Dkt. No. 48.  The Court granted Plaintiff's motion to compel the deposition of Myong Su and denied Defendants' motion for a protective order to resist that deposition.  Dkt. No. 66.  After the close of discovery, Plaintiff moved for partial summary judgment.  Dkt. No. 80.

About a year after the Court had vacated the default judgment, on December 21, 2022, Plaintiff filed a motion to set aside the vacatur of the default judgment and to reinstate the default judgment on the grounds that a fraud had been committed on the Court in connection with the motion to vacate the default judgment.  Dkt. No. 83.  Defendants had argued that the default was not willful because they had terminated the representation of Mr. Song after he had obtained an extension of time to answer, that Defendants did not answer because they mistakenly believed that no answer was necessary because of the NYSDOL proceeding, and that immediately after receiving a copy of the default judgment, they retained Mr. Lee.  As Plaintiff's memorandum of law in support of the motion to reinstate the default judgment put it, Defendants conveyed the

false understanding that they had immediately fired their counsel after obtaining an extension to

respond to the complaint and that "they did not have a lawyer after firing the lawyer who

obtained the extension and as a result, they did not know what to do." Dkt. No. 84 at 1.

Plaintiff's counsel argued that: "the truth was that during that time, they had a lawyer, and it was

not just any lawyer, but it was the very lawyer who drafted the declarations that they did not

have a lawyer." *Id.*; *see also id.* at 13.

Plaintiff based the motion on evidence, newly discovered by Plaintiff's counsel in June

2022, that Mr. Lee had been representing the Kims long before the default judgment had been

entered. Specifically, Plaintiff's counsel had discovered that on March 1, 2021, Mr. Lee

prepared a deed for the Kims and that on or about June 3, 2021 he sent that deed to the Bergen,

New Jersey County Clerk. Dkt. No. 84 at 5–6.; Dkt. No. 84-2. Plaintiff suggested that the

timing of the transfer of the Kims' house to their daughter through a quitclaim deed in March

2021 made it very likely that counsel had evaluated this lawsuit on behalf of the Kims prior to

March 2021 and before the motion for a default judgment was made but after Plaintiff had sued

the Kims and had assisted them in transferring the house for the purpose of avoiding, hindering,

or delaying collection on an eventual judgment in this case. Dkt. No. 84 at 7. Plaintiff asserted:

"it turned out that Defendants' attorney Peter Y. Lee was hired by Defendants at the latest by

March 1, 2021." *Id.* at 5.

On January 12, 2023, Defendants submitted a memorandum of law in opposition to the

motion to set aside the vacatur of the default judgment. Dkt. No. 90. In that memorandum of

law, counsel argued that Plaintiff's theory that the Defendants had the advice of counsel in

connection with this lawsuit after Mr. Song's representation was terminated and before or while

the motion for default judgment was pending and thus before it was entered in October 2021,

was "offensive" and based on "only conjecture and wild, baseless accusations." Dkt. No. 90 at
ECF p. 5. Mr. Lee stated that the claim that he was representing the Kims was "pure fiction" and
"categorically den[ied] any and all accusations by Mr. Ryu, along with his personal attacks,"
Dkt. No. 90 at 6, including presumably the accusation that Mr. Lee had consulted on this
litigation prior to default judgment being entered. Mr. Lee described what he did for Defendants
as "estate planning work for the elderly Mr. Myung [sic] Su Kim, and his wife, Kap Won Kim."
*Id.* at ECF pp. 4–5.[2]

In his reply brief, Plaintiff argued that "it is natural to assume that Defendants Kap Won
Kim and Myong Su Kim must have asked about the present lawsuit [during the time period when
Lee was assisting them with the quitclaim deed in March 2021] because this lawsuit is what
prompted them to make the fraudulent transfer." Dkt. No. 97 at ECF p. 8. Plaintiff also argued
that as part of the "estate planning" that Lee claimed to have helped the Kims with around March
2021, the Kims and Mr. Lee must have discussed this litigation. *Id*. at ECF p. 9.

The Court scheduled a hearing for May 19, 2023. Dkt. No. 121. The Court identified the
subject of the hearing as relating to "Peter Y. Lee's involvement in this matter and the 'estate
planning work,' Dkt. No. 90 at 1, he performed for Defendants Kap Won Kim and Myong Su
Kim, including when Mr. Lee was retained in the estate planning matter, the services for which
he was retained, his qualifications to perform those services, the nature and purpose of the real-
estate transaction, and the date he was retained in the FLSA matter and his knowledge of the
FLSA matter before he entered an appearance in this case." *Id*.

---

[2] Mr. Lee even went so far as to later file a motion for sanctions against Plaintiff's lawyer in
connection with Plaintiff's motion to set aside the vacation of the default judgment and all
related proceedings, including the May 19, 2023 evidentiary hearing. Dkt. No. 197.

In anticipation of the May 19, 2023 hearing, Plaintiff requested on May 12 that Defendants produce a number of documents central to the question of when Mr. Lee was retained by Defendants and for what purposes. Dkt. No. 122. In particular, Plaintiff requested that Defendants produce the following documents, among others, by May 17, 2023:

As to Mr. & Mrs. Kim:

1. All representation agreements with any lawyer including Peter H. Lee that was signed in years 2019 and 2020.

2. All images of cleared checks paid to any lawyer including Mr. Peter H. Lee in 2019 and 2020, whether the checks were issued by Mr. & Mrs. Kim's or other individuals, including their daughter Ms. Chi, as long as those checks were the payment for any legal work that involves or relates to Mr. & Mrs. Kim or Mommy's Jamaican Market Corp. [. . .]

As to Mr. Peter H. Lee:

1. All representation agreements with Mr. & Mrs. Kim. [. . .]

3. All images of cleared checks and/or cash receipt payments paid by anyone (including the daughter Mrs. Chi) for Mr. & Mrs. Kim or in relation to Mr. & Mrs. Kim. [. . .]

*Id*.

Defendants resisted the production of those documents, on the grounds that it exceeded the scope of the hearing. Dkt No. 123. On May 15, 2023, the Court rejected that argument and granted Plaintiff's motion to compel, ordering Defendants to produce the requested documents before the hearing, by May 18, 2023, and to deliver any documents sought to be withheld on privilege grounds to chambers. Dkt. No. 129. No objection was made by Defendants with respect to the timing of the production of documents. Defendants submitted three documents to chambers for privilege review, as to which the Court sustained a claim of privilege as to two. Dkt. No. 152 at 3–4. A number of other documents were produced by the Defendants and introduced at the hearing, including a copy of the quitclaim deed, a bill for $625 dated March 22,

2021 for "Quitclaim Deed preparation" issued by Mr. Lee to the Kims, a copy of a check from Ms. Chi to Mr. Lee for $625 dated March 29, 2021, emails from the Bergen County Clerk's Office regarding the deed, and U.S.P.S. tracking information for the deed.  Dkt. Nos. 134-1, 134-2, 134-3, 134-4, 134-5, 134-6; Dkt. No. 152 at 4.  Defendants also produced an email from October 28, 2021 with Sun Yeul Hong's paystubs.  Dkt. No. 134-7.  Mr. Lee did not produce any representation agreement, signed or unsigned.  Dkt. No. 152 at 31–32; Dkt. No. 249-1 ¶¶ 9–17.

Mr. Lee testified at the May 19, 2023 hearing.  Dkt. No. 152.  The Kims did not attend the hearing.  At the outset of the hearing, the Court identified the question for the hearing to be "when Mr. Lee began his representation of these clients in connection with this matter and whether it is accurate when the statement is made by Mrs. Kim that it was not until late October, when they realized the urgent and important nature of the document, that they engaged counsel with respect to this matter."  Dkt. No. 152 at 30.  Mr. Lee testified that Ms. Kim's declaration was prepared based on conversations with Ms. Chi—the daughter of the Kims, who, along with her husband Tim Chi, lives with the Kims—and information in the public record and that Mr. Lee first spoke to Ms. Kim shortly before her deposition.  *Id.* at 19–21, 26–27.  Mr. Lee testified that he "assum[ed]" Ms. Kim signed her declaration but he was "coordinating only with Mrs. Chi."  *Id*. at 22.  Mr. Lee testified that he himself did not sign Ms. Kim's declaration.  *Id*. at 23.  Mr. Lee additionally testified that he had known Ms. Chi only since mid or late February 2021, "if not early March 2021."  *Id*. at 25.

The Court asked Mr. Lee directly whether he had any representation agreements with Defendants:

> THE COURT: Let me ask the question in a proper form. Did you have an engagement letter with any of the defendants in this case?
>
> THE WITNESS: No, your Honor, I did not.

THE COURT: Did you have one with Ms. Chi?

THE WITNESS: No, your Honor, I did not.

*Id.* at 32.

When Plaintiff's counsel then asked "when [Ms. Chi] came to you, what did she tell you the reason for her coming to you?  What's the legal work that she wanted from you?," Mr. Lee testified that Ms. Chi came to him because she "knew [he] did real estate" and because her "elderly parents, having sold the store, . . . wanted to do some financial planning."  *Id*. at 32–33. He also testified that when Ms. Chi came to him for a quitclaim deed, she did not mention anything about this lawsuit or about the NYSDOL wage protection issue.  *Id*. at 37.

At the conclusion of the May 19, 2023 hearing, the Court denied the Plaintiff's motion to set aside the vacatur of the default judgment, ruling:

> I granted this hearing because plaintiff had suggested enough to indicate that Mr. Lee might have been consulted with respect to this lawsuit during the time that the default judgment proceedings were pending.  In that case, a statement in the declaration would have been untrue or might have been untrue. Mr. Lee has testified. I find his testimony to be convincing and to be credible. That testimony has been to the effect that he was not consulted during the underlying real estate transaction about the FLSA or the Department of Labor proceedings. So the question that gave rise to the hearing has now, in my view, been answered.

*Id*. at 54.  *See also* Dkt. No. 151.

Following the Court's ruling at the May 19, 2023 hearing, the case continued and ultimately proceeded to trial, which began on December 11, 2023 and concluded on December 13, 2023.  *See* Minute Entries for Dec. 11, 12, and 13, 2023; *see also* Dkt. Nos. 188, 190, 192. There was no real question as to liability at trial.  Defendants proffered the defense that Plaintiff operated in a bona fide administrative capacity and, as a consequence, was not entitled to overtime pay.  But the evidence was overwhelming that Plaintiff performed only ministerial tasks and had no management discretion whatsoever.  The jury took just four hours to deliberate

and some of those hours covered the lunch hour and others, no doubt, would have been spent calculating damages.  The jury awarded a verdict of $86,501.00.  Dkt. No. 187.

Approximately two months after the verdict, on February 22, 2024, new counsel appeared for the Kims and filed a letter with the Court stating that they were retained to "assess the events and circumstances underlying this FLSA litigation including the legal advice and counseling" that the Kims received from Mr. Lee.  Dkt. No. 204.  The Kims' new counsel further stated that their investigation was still in its "infancy," but they had uncovered "that certain testimony and evidence presented to the Court by Mr. Lee—including at an evidentiary hearing—was false, inaccurate and/or otherwise misleading."  *Id*. at ECF pp. 1–2.  The letter went on to explain that, contrary to Mr. Lee's sworn testimony at the May 19, 2023 evidentiary hearing, Mr. Lee was "retained at the very outset of this litigation in January 2021, approximately three weeks after the Kims were served . . . and long before default judgment was entered."  *Id*. at 2.  The letter also described 1) a retainer agreement issued by Mr. Lee dated January 11, 2021, in which Mr. Lee confirmed that he was representing the Kims in the FLSA lawsuit before this Court, and 2) a $5,000 retainer check from the Kims to Mr. Lee which was cashed two days after the date of the retainer agreement.  *Id*.  The Kims' new counsel also argued that the declarations Mr. Lee submitted in support of the motion to vacate the default judgment, which appear to be signed by Mrs. Kim, were not actually signed by her at all and were predicated on a false premise: namely, that Mr. Lee had no knowledge of the lawsuit until after default judgment was entered.  *Id*. at 3.  The letter stated that the Kim family had not known about the contents of the declarations nor what was said by Mr. Lee during the May 19, 2023 evidentiary hearing until "recently."  *Id*. at 2–3.  The letter concluded that counsel was "assessing our clients' rights and remedies arising out of Mr. Lee's conduct including, without limitation,

pursuing claims either in this action or a separate proceeding under Section 487 of New York Judiciary Law (Misconduct by attorneys)." *Id.* at 4. The letter attached the January 2021 engagement letter. Dkt. No. 204-2. The letter also claimed that Mr. Chi had raised "concerns about the factual inaccuracies" with Mr. Lee over email and Mr. Lee had responded that "whatever was said or presented in the past, is now history. Things are done." Dkt. No. 204 at 4.

The following day, February 23, 2024, a lawyer for Mr. Lee submitted a letter disputing certain of the Kims' accusations, asking for leave for Mr. Lee to withdraw as counsel, and attaching a declaration from Mr. Lee. Dkt. No. 205. In this declaration, for the first time, Mr. Lee admitted having discussed the FLSA lawsuit with Ms. Chi, as a representative for her parents, in January 2021 and having sent them an engagement letter. Through counsel, Mr. Lee argued that he did not produce the January 2021 engagement letter prior to the May 19, 2023 evidentiary hearing "because the Kims had not even seen the document," and it was "not even signed, let alone enforceable." *Id.* at 2. The letter also argued that "Mr. Lee had not rendered any representation or services in the underlying case until October/November 2021" and "the Kims did not pay one cent to Mr. Lee. Ever." *Id.* (In a declaration attached to the letter, Mr. Lee said he had received payment from *Ms. Chi* a few days after the January representation agreement was sent, but not from the Kims, "whom [he] had yet to meet." Dkt. No. 205-1 ¶¶ 6–7). Mr. Lee also disputed the allegation that the Kims had no knowledge of the May 19, 2023 evidentiary hearing and stated that the declarations in support of the motion for default judgment were handled through Ms. Chi and Mrs. Kim acknowledged her signatures on the declarations during her deposition. Dkt. No. 205 at 2. Mr. Lee also argued that the email exchange quoted in the letter omitted a portion where Mr. Lee had informed Mr. Chi that he was traveling with his family and promised to sit-down upon his return the following week and answer any questions.

14

*Id*. at 2–3.  The Court held a conference on February 27, 2024, at which time Mr. Lee withdrew as counsel for the Defendants.  Dkt. No. 219.

## II.    The Motion for Sanctions

On June 17, 2024, following briefing on the motions for sanctions by Plaintiff and Defendants against Mr. Lee that are the subject of this opinion, this Court ordered Mr. Lee to show cause why he should not be sanctioned under the Court's inherent powers and 28 U.S.C. § 1927 and contempt sanctions imposed.  Dkt. No. 240.  The Court invited Mr. Lee to give testimony and present any additional evidence.  *Id*.  Mr. Lee filed a response to the Court's Order to Show Cause on July 16, 2024 after retaining counsel.  Dkt. No. 249.[3]

The Court held a hearing on the motions for sanctions on July 25, 2024.  *See* Minute Entry for July 25, 2024.  Plaintiffs, Defendants, and Mr. Lee, represented by counsel, appeared at the hearing.  The Court received the following evidence: two declarations from Mr. Lee, Dkt. Nos. 205, 249-1; a declaration from Mr. Chi, Dkt. No. 227, which included a copy of an email exchange between Mr. Chi and Mr. Lee dated February 15, 2024, Dkt. No. 227-1; a declaration from Ms. Chi, Dkt. No. 228, which included a copy of the January 2021 retainer agreement and the check and relevant bank statements evidencing the January 2021 payment to Mr. Lee, Dkt. Nos. 228-1, 228-2, copies of text message exchanges between Ms. Chi and Mr. Lee on October 25, 2021 and July 1, 2022, Dkt. Nos. 228-3, 228-7, a copy of an email exchange between Mr. Lee and Ms. Chi on December 22, 2021, and additional bills and payments between the Chis and

---

[3] Defendants moved to strike Mr. Lee's submission in response to the Court's order to show cause, relying on a prior order by the Court where, in granting Mr. Lee's counsel's request to adjourn the hearing by two weeks, the Court stated that no further briefing would be permitted. Dkt. No. 250.  At the hearing, the Court denied Defendants' motion to strike, ruling that "Regardless of whether there's a correct interpretation of my prior order, I find compelling and convincing [Mr. Lee's counsel's] argument that Mr. Lee has an opportunity to be heard, and I'm granting him that opportunity."  Dkt. No. 252-1 at 2.

Mr. Lee, Dkt. Nos. 228-8 through 228-12; and a declaration from Ms. Kim, Dkt. No. 229. In addition, the Court relies on all prior proceedings in this matter, including the memoranda of law submitted by Mr. Lee and statements at the various court conferences.

The Court also offered all parties an opportunity to testify. Dkt. No. 252-1 at 2. Plaintiff and Defendants declined to put on testimony. *Id*. at 3–5. Mr. Lee initially indicated that he did not wish to testify. Dkt. No. 252-1 at 5. After the Court closed the hearing and heard argument on the motions, Mr. Lee indicated that he wished to testify. *Id*. at 47. The Court reopened the hearing for the limited purpose of receiving Mr. Lee's testimony over the objection of Defendants. *Id*. at 54–63. Mr. Lee then withdrew his request to testify. Dkt. No. 254. The parties then submitted additional briefing on the issue of the appropriate calculation of sanctions. Dkt. Nos. 259–61.

The Court makes the following findings based on the evidence.

There is clear and convincing evidence that a fraud has been perpetrated on the Court and Mr. Lee has unreasonably and vexatiously prolonged the proceedings. Defendants did not default in answering the complaint in this action as a result of a "choice" based on a mistaken understanding that they did not need a lawyer and that Plaintiff's FLSA and NYLL claims would be addressed by the resolution of the NYSDOL matter, as claimed in the Kap Won Kim declaration submitted by Mr. Lee. Nor did Defendants lack counsel during the period of time from when Mr. Song requested an extension of time to answer until the time they received the default judgment as referenced in the Kap Won Kim declaration and asserted by Mr. Lee. Counsel was not immediately retained after the default judgment. Mr. Lee agreed to represent Defendants as early as January 2021 and, in connection with that representation and as a result of a conversation with Ms. Chi, the daughter of Mr. and Mrs. Kim, devised a strategy pursuant to

which the Defendants would knowingly take a default but contest the amount of damages Defendants owed to Plaintiff at a subsequent inquest Mr. Lee expected to take place.  Mr. Lee signed a representation letter to provide those services, accepted and cashed a retainer, and—as he agreed in the engagement letter—monitored the docket of this case.  That strategy failed when, contrary to Mr. Lee's expectation and representation to Ms. Chi, the Court did not order an inquest but instead found no inquest was necessary and awarded damages to Plaintiff.  Then, instead of accepting that his strategy had failed or admitting to the Court that his clients knowingly accepted the default, Mr. Lee engaged in a strategy of deception.  He presented a false story regarding the NYSDOL that entirely omitted the fact that the Defendants, through their daughter, had agreed on a strategy to default and challenge only damages.  When he was caught in that lie and Plaintiff moved to reinstate the default judgment, Mr. Lee did not admit to the truth.  He withheld the engagement letter and misrepresented the date on which he was first contacted by a representative of Defendants and the purpose and content of that contact.  The Court relied on Mr. Lee's representations and omissions in first vacating the entry of default and in later denying Plaintiff's motion to reinstate the default judgment.  As a result, the proceedings were needlessly prolonged to the detriment of Plaintiff and of the court system as a whole.  The following facts emerged as a result of the hearing that were not disclosed to the Court (or opposing counsel) at the relevant time.

Mr. Lee was not engaged "immediately" in October 2021 when the default judgment was sent to the Kims, as was represented to the Court.  As early as January 9, 2021, shortly after Defendants were first served with the summons and complaint and within the time to answer, Mr. Lee met to discuss the case with Ms. Chi, the Kims' daughter and Tim Chi's wife.  Dkt. No. 205-1 ¶ 3.  Mr. Lee knew at the least from the declaration he submitted to the Court in November

2021, that Mr. Chi was authorized "to handle all of [the Kims'] affairs, including the bills, mail, repairs, etc.," Dkt. No. 27 ¶ 2, and Ms. Chi has since confirmed that she and her husband were authorized to handle "matters pertaining to Mommy's Jamaican," since around 2014.  Dkt. No. 229 ¶ 4; Dkt. No. 228 ¶ 3.  Ms. Chi informed Mr. Lee that she did not want her parents to know about the lawsuit because it would cause them enormous stress and unnecessary aggravation; her parents were in poor health and she wanted to allow them to enjoy their retirement.  Dkt. No. 205-1 ¶¶ 5, 12; *see also* Dkt. No. 228 ¶ 4 (Ms. Chi had decided not to make the Kims aware of the lawsuit because they were elderly, dealing with debilitating medical conditions, and infected with Covid at the time).  During Ms. Chi's conversation with Mr. Lee, the two discussed strategy for handling the matter and Ms. Chi told Mr. Lee she wanted to retain him on behalf of her parents, brother, and Mommy's Jamaican. [4]  Dkt. No. 205-1 ¶ 3–6; Dkt. No. 228 ¶ 5.  Mr. Lee accepted the engagement.  As a result of that conversation, Mr. Lee signed a retainer agreement addressed to Kap Won Kim and Myong Su Kim and emailed it to Ms. Chi.  Dkt. No. 505 ¶ 6; Dkt. No. 228 ¶ 6; Dkt. No. 204-2; Dkt. No. 228-1.  The agreement is entitled: "Retainer Agreement – Sun Yeul Hong Litigation."  Dkt. Nos. 204-2, 228-1.  The agreement reflects that the Kims have retained Mr. Lee to represent them, Mommy's Jamaican and Dae Kyu Kim in the litigation brought by Sun Yeul Hong for a $5,000 flat fee for "certain defined tasks."  *Id.*  The agreement also reflects the strategy that Mr. Lee had proposed and Defendants, through Ms. Chi, had agreed to follow, with respect to this lawsuit.  In particular, contrary to the representation that the Defendants chose not to answer the complaint because of a misunderstanding about the role of the NYSDOL, Mr. Lee had proposed and Defendants had agreed that Defendants would

---

[4] Ms. Chi had initially retained the Song Law Firm to defend the lawsuit on behalf of her parents, brother and Mommy's Jamaican.  Dkt. No. 228 ¶ 4.

intentionally default and defend only with respect to damages at an inquest.  The agreement thus states:

> This confirms you have retained me to represent you, Mommy's Jamaican, and Dae Kyu Kim, in connection with a New York litigation matter against you brought by Mr. Sun Yeul Hong (U.S. District Court, S.D.N.Y. Case 1:20-cv-09612)."  [. . .] As agreed, please remit $5,000.00 at this time.  **We shall monitor the litigation and participate if and when default is entered in this case.  As we discussed, we are proceeding in this manner to reduce potential exposure to punitive damages and other liquidated damages**: It is our understanding that Mr. Sun Yeul Hong will be unable to prove any damages against you.  My services will be limited to monitoring the case and defending you at the inquest hearing."

Dkt. No. 228-1 (emphasis added).

There is a signature line for the Kims but no signature by them.  *Id.*  But, in addition to the conversation and the written agreement, the Chis in fact sent Mr. Lee a check for $5,000 that he deposited.  Dkt. No. 205-1 ¶ 7; Dkt. No. 205-2; Dkt. No. 228 ¶ 8; Dkt. No. 228-2.  At that point, a contract was formed.  *See Kimm v. Kyu Sung Cho*, 706 Fed. Appx. 1, 2 (2d Cir. 2017) (unsigned retainer agreement for legal services enforceable where attorney represented party in litigation and party paid).

Thereafter, Mr. Lee and Defendants both acted consistently with the understanding on the part of both that an agreement had been formed.  Mr. Lee cashed the check.  Dkt. No. 228-2.  There is no evidence that he held it in escrow.  The evidence also supports that he monitored the docket.  In October 2021, approximately ten days after the Court entered default judgment, Mr. Lee reached out to Ms. Chi via text message and informed her that a judgment had been entered against her parents, brother, and Mommy's Jamaican.  Dkt. No. 228 ¶ 9; Dkt. No. 228-3.  The message from Mr. Lee stated: "Hello Mrs. Chi.  A judgment came out from the Court.  I am preparing a motion to cancel it.  Please tell the accountant that you need Mr. Hong payroll records."  Dkt. No. 228-3.  The conduct is inexplicable unless Mr. Lee had understood that he, and not some other lawyer, had been retained by Defendants and thus that he, and not someone

else, would be looking at the docket.  In addition, there would have been no reason for him to start preparing a motion to "cancel" the default judgment and to direct Ms. Chi to ask for the payroll records unless he understood that he, and not someone else, was responsible for representing Defendants and had the authority to prepare and file a motion.  Ms. Chi's response is consistent with the shared understanding that Mr. Lee was already Defendants' lawyer.  She did not ask what he was doing looking at the docket or why he assumed he could act for Defendants.  She approached him with the understanding that he was the lawyer for the Defendants, asking: "Okay.  What does it mean that a judgment came out."  *Id.*  In response to Ms. Chi's questions, Mr. Lee wrote with advice that it may be possible to change the judgment but he "will have to try it quickly" and "strangely, the Judge did it without conducting a hearing to confirm the amount."  *Id.*  Mr. Lee clearly understood he had the authority to act for Defendants.

The record is uncontradicted that Mr. Lee was the one who prepared the declaration submitted in support of the motion to vacate the default judgment.  Dkt. No. 152 at 19, 22–23; Dkt. No. 205 ¶¶ 21–23; Dkt. No. 249 ¶ 30.  Mr. Lee testified that he prepared the declarations based on conversations with Ms. Chi and information in the public record and that he gave the declaration to Ms. Chi for her to have her mother sign.  Dkt. No. 152  at 22–23, 26–27.  According to Ms. Chi, Mr. Lee signed the declarations without even showing them to her.  Dkt. No. 228 ¶ 13.  Who signed the declarations is immaterial for purposes of this motion.  Regardless of who signed the declarations, Mr. Lee would have known their contents were untrue.  Defendants did not default because of a mistaken but not ill-intended view that the NYSDOL proceeding would resolve this lawsuit and that they would never have to answer or pay an attorney.  Mr. Lee knew that as late as March 2021 the Kims did not even know about the

litigation.  Dkt. No. 205-1 ¶ 12.  He knew that it was Ms. Chi and not the Kims who were making decisions about the lawsuit and that Ms. Chi had agreed with his advice to knowingly default.  Mr. Lee would have known about this deliberate decision because he was in fact the lawyer who had been hired by Defendants and advised that strategy.  There would have been no reason for the Defendants to have paid the $5,000 for Mr. Lee to have monitored the docket and no reason for him to have monitored the docket if the NYSDOL proceeding was to resolve this matter and no answer to the complaint ever would be necessary.  Mr. Lee knew that the Kims did not immediately engage an attorney to prepare and file the motion to vacate the default judgment after being served with that judgment as was stated in the Kap Won Kim declaration.  He was the attorney who prepared the motion and he did so on his own initiative without the need for further engagement or instruction after the default judgment.  He had been engaged months earlier. There was no subsequent engagement.  As he admitted at the hearing, he did not even consult with the Kims about the declarations.  He had no reason to believe that they would have had any different understanding than the understanding shared with Ms. Chi.  She had told him contemporaneously that she was not going to even inform her parents about the lawsuit.  Dkt. No. 205-1 ¶¶ 5, 12.

Mr. Lee compounded his falsehoods by his conduct at the December 15, 2021 hearing and with his drafting and submission of the revised Kap Won Kim declaration thereafter.  The matter of whether the Kims were represented by counsel who did anything other than ask for an extension and then immediately be terminated was no minor matter.  It was central to the question whether the default judgment should be vacated.  If Defendants were aware of the risk of default and nonetheless knowingly undertook that risk, the default judgment never would have been vacated.  This case would have been over.  Plaintiff's counsel and the Court both pressed

on that issue, with Plaintiff's counsel going so far as to question whether Defendants had hired a second lawyer.  It was inconceivable that that second lawyer could have been Mr. Lee and he could have been consulted prior to the default judgment having been entered.  He had filed a declaration stating that the counsel who filed the motion to vacate the default judgment had been engaged after the default judgment was entered and served.  Mr. Lee nonetheless chose to withhold the critical information.  He stated (presumably truthfully) that he did not know when the services of the first lawyer were terminated.  But he entirely omitted the material fact that at or around the time when that lawyer had been engaged and when the Defendants still had time to answer, he was engaged to represent Defendants and that he had advised the Defendants, through Ms. Chi, that if they did not answer, they would be in default and that the strategy was to defend against damages at an inquest.  And he reiterated the lie that it was Defendants' "reasonable belief" that they did not need to retain a lawyer or answer because once the unemployment claim was resolved, there would be "nothing left to litigate before this Court."  Dkt. No. 56 at 17.  Mr. Lee then also reinforced that false understanding in the revised Kap Won Kim declaration that he voluntarily submitted after the hearing.  Rather than disclose to the Court that Defendants had engaged him and the strategy of intentionally defaulting, he perpetuated the lie that the default was a product of a mistaken understanding regarding the NYSDOL and added:  "To the extent Mr. Hong, we presumed, would inform his own attorney in this lawsuit about our timely response in NYSDOL, we concluded that Mr. Hong and his attorney could neither seek default in this case nor inform the Court that we are not defending against his 'underpaid' claims."  *Id*. ¶ 13.  Mr. Lee had no basis for believing that Defendants had any such presumption.  He knew that at the time the lawsuit was served, Mr. and Ms. Chi—who had been served with the lawsuit—had made a decision not to bother her parents with the lawsuit, that Ms. Chi was going

to be the one to make the decision about how the lawsuit would be handled, and that she would have had no such presumption that Plaintiff would not seek a default. *See* Dkt. No. 205 ¶¶ 5, 12. It was apparent to Mr. Lee at the critical time in January 2021 that the Kims did not even know of the summons and complaint and Ms. Chi had asked Mr. Lee not to inform them of the lawsuit. *Id.* ¶¶ 5, 13. The agreed-upon strategy involved Mr. Lee taking action after the entry of default as to liability in order to save fees for Defendants.

Mr. Lee also made misrepresentations in connection with the motion to reinstate the entry of the default judgment and in his testimony at the hearing on that motion. He submitted a memorandum in which he stated that Plaintiff's argument was "offensive," based on "only conjecture and wild, baseless accusations," and "pure fiction" and in which he personally "categorically den[ied] any and all accusations by [Plaintiff's counsel] Mr. Ryu, along with his personal attacks," Dkt. No. 90 at 2, 6. Those claims were untrue. Mr. Ryu's "accusation" (based on the only evidence he was able to obtain) was that the Defendants had a lawyer in connection with the FLSA matter well before the motion to vacate the entry of default and that lawyer was Mr. Lee. Mr. Lee falsely denied that accusation and left the Court and Plaintiff with the incorrect and mistaken impression that, while he had consulted the Defendants, he had done so only after the time to answer had expired and only with respect to estate planning and that the question of the FLSA matter never came up. It was correct that Mr. Lee consulted Defendants (and/or their daughter) with respect to an asset transfer. What was untrue, as Mr. Lee later admitted in his first declaration, was that his advice was limited to estate planning. *See* Dkt. No. 205 ¶¶ 11–12. Ms. Chi, on behalf of Defendants, contacted Mr. Lee for advice regarding the FLSA matter and he provided advice, including with respect to the prospect of a default judgment as early as January 2021. *See* Dkt. No. 228 ¶¶ 5–8.

The Court also finds that Mr. Lee made misrepresentations in his testimony to the Court on May 19, 2023 and that those misrepresentations were knowing. Mr. Lee testified that he had known Ms. Chi only since mid or late February 2021, "if not early March 2021." Dkt. No. 152 at 25. That fact was material. By February 2021, Defendants were already in default. The real estate transaction on which Mr. Lee advised was in March 2021. The plain implication was that, as Mr. Lee led the Court to believe, he was not retained until after the default and only then in connection with the real estate transaction and not with respect to the FLSA matter. That testimony also was untrue. As Mr. Lee was later forced to admit, he had been engaged by Ms. Chi in January 2021 and in connection with the FLSA matter. Mr. Lee misrepresented the reason Ms. Chi came to him for advice. He testified that Ms. Chi came to him because she "knew [he] did real estate" and because her "elderly parents, having sold the store, . . . wanted to do some financial planning. *Id*. at 32–33. He also testified that when Ms. Chi came to him for a quitclaim deed, she did not mention anything about this lawsuit or about the NYSDOL wage protection issue. *Id*. at 37. The first testimony was untrue and the second is suspect and was at best misleadingly incomplete. Ms. Chi came to him for advice regarding the FLSA matter, as Mr. Lee knew. Mr. Lee later testified that when he met with Ms. Chi in February and March 2021, the FLSA lawsuit did come up and Ms. Chi informed him that she had not yet gotten around to discussing the FLSA litigation with her parents and was hesitant to do so. Dkt. No. 205-1 ¶ 12. And, even if the Court is not to credit that later testimony and find that during the conversation regarding the quitclaim deed, Ms. Chi did not mention anything about this lawsuit (a matter as to which the Court need not conclude), the reason Mr. Lee was engaged at all and the context of his having met the Chis and Kims in the first place was because of the FLSA lawsuit and his FLSA expertise. Mr. Lee also made misrepresentations with respect to whether

he had an engagement letter with Defendants. The request for production of documents was not limited to engagement letters signed by both sides. Plaintiff's counsel asked for all engagement letters Mr. Lee had with Defendants. Dkt. No. 122. Mr. Lee withheld the document. When the Court asked Mr. Lee under oath whether he had any engagement letters with any of the Defendants, he reiterated the misrepresentation. He also stated that he did not and he also did not have one with Ms. Chi. *Id.* at 32. That was untrue. He had an engagement letter, and with respect to this precise matter. As a result of those misrepresentations, the Court denied the motion to reinstate the default judgment and allowed this case to proceed to trial.

Mr. Lee's responses are not convincing and do not excuse his conduct. Mr. Lee first would have that he did not consider himself "retained" without a signed engagement letter, Dkt. No. 205-1 ¶ 8, and that therefore the engagement letter was not responsive to any requests or to the Court's questions. He points out that he did not engage in any conduct with respect to this case until October 2021. Dkt. No. 205 at 2. The Court does not credit that response. Ms. Chi has testified that she asked Mr. Lee to represent her parents, her brother, and Mommy's Jamaican at the meeting in January 2021 and he agreed. Dkt. No. 228 ¶¶ 5, 9. Mr. Lee's conduct is entirely inconsistent with the notion that he did not consider himself retained in January 2021. The Court finds that it was Mr. Lee's understanding as of January 2021 that he was representing Defendants in this lawsuit and that they would follow his strategy of allowing a default and defending at the inquest and Ms. Chi shared that understanding. Mr. Lee acted as if he was retained. After Mr. Lee demanded a $5,000 retainer from Defendants in January 2021, Defendants paid that retainer and Mr. Lee cashed the check. There is no evidence that he kept the check in "escrow." Dkt. No. 205-2 ¶ 8. He monitored the docket, conduct in which he would not have had to engage had another lawyer been engaged to represent the Kims and he

was not their lawyer.  In October 2021, it was *Mr. Lee* who reached out to *Ms. Chi* via text message about the default judgment having been entered, not the other way around.  Dkt. No. 228-3.  Mr. Lee did not take action in this case until October 2021 because he and Ms. Chi agreed that he would not take action until then.  And then, tellingly, Mr. Lee proceeded to demand documents and to draft the motion to vacate the default judgment and the related declaration without any further engagement letter from Defendants and without asking for any further instruction.  Indeed, he simply alerts Ms. Chi that he is already "preparing a motion to cancel it."  Dkt. 228-3.  In July 2022, Mr. Lee texted Ms. Chi asking her for additional fees for services performed pursuant to the January retainer agreement.  Dkt. No. 228 ¶ 16; Dkt. No. 228-7.  He stated: "According to the January 11, 2021 $5,000 contract, I promised to cancel the judgment.  I canceled the judgment and have continued working."  Dkt. No. 228 ¶ 16; Dkt. No. 228-7.  On July 13, 2022, Mr. Lee then sent a "Statement for Services Rendered" which showed a flat fee of $5,000 for services rendered from January 11, 2021 through January 6, 2022, which had been paid, and then a flat fee of $5,000 for services rendered from January 7, 2022 through July 31, 2022 for $5,000 less a $1,500 discount, that had not yet been paid.  Dkt. No. 228-8. It is untrue that Mr. Lee "did not consider [himself] 'retained' until November 2021."  Dkt. No. 249-1 ¶ 42.  In fact, he never received a different engagement letter other than the January 11, 2021 engagement letter.  Dkt. No. 205 ¶ 8.  The evidence is clear and convincing.

There also is the suggestion in some of Mr. Lee's submissions that because the engagement letter was directed to Ms. Chi and not to Defendants and because the statements in the November declaration were made by Ms. Kim and not by Ms. Chi that he did not form an attorney-client relationship with Defendants in January 2021 and that the declaration was not false and misleading.  The Court also rejects that suggestion.  With respect to the engagement,

throughout this proceeding, Mr. Lee has acted with the understanding that Ms. Chi was authorized to speak and act on behalf of Defendants and that when he formed an agreement with her he was also forming an agreement with Defendants.  Dkt. No. 152 at 21; Dkt. No. 205 at 1–3; Dkt. No. 205-1 ¶¶ 2, 38; Dkt. No. 249-1 ¶ 52.  Had he not had that understanding, there would have been no reason for him to cash the check and there would have been no basis for him to have prepared the motion for a default judgment on their behalf.  There would have been no basis for Mr. Lee to have charged Defendants any additional fees.  Indeed, if the January 2021 engagement letter and the conversations with Ms. Chi were not sufficient to form an attorney-client relationship, there would have been no basis for Mr. Lee even to have made an appearance in this case and to have represented Defendants through trial.  There is no other evidence of his authority to act for Defendants.

Mr. Lee also would have it that he did not knowingly misrepresent in the May 2023 hearing and did not knowingly withhold responsive documents because at that time he had forgotten about the engagement letter.  Mr. Lee claims that, prior to the May 2023 hearing, he only had a few days to search for documents responsive to Plaintiff's requests and that to do so, he accessed his electronic client folders for the Kims but found no representation agreements, and did not find the January 2021 check from the Chis, that he did not search his billing folder because the document requests did not call for bills, and that he did not search any other folders or correspondence.  He claims that he believed that his testimony about not having a retainer agreement was accurate at the time because he forgot about the unsigned retainer agreement and it had not appeared in his search and he had also forgotten about his early January conversation with Ms. Chi.  Dkt. No. 249-1 ¶¶ 4–29.[5]  That testimony too is incredible.  Mr. Lee's focus on

---

[5] Mr. Lee's story has shifted over time.  The brief and declaration submitted on behalf of Mr. Lee

what he did in the period immediately before the May 19, 2023 evidentiary hearing misses the forest for the trees. From November 2021 on, a central question had been whether Defendants had been represented by counsel between January 2021 and the default judgment and whether Mr. Lee had provided advice to Defendants regarding the FLSA lawsuit before default or shortly thereafter, and before October 2021. The issue was central in November and December 2021 as the Court was considering the motion to vacate the default judgment (and at that time, it had only been a matter of months since Mr. Lee's initial meeting with Ms. Chi and advice to default). It also was central beginning in December 2022 (only a few months after Mr. Lee referenced the January retainer agreement and asked Ms. Chi for additional payment for work he had performed since then) and continuing until May 2023 when Plaintiff's counsel questioned when Mr. Lee was first retained and for what purpose. If Mr. Lee's recollection needed refreshing, it is inconceivable that he would not have reviewed his files and realized that he had an engagement letter with Defendants. In any event, Mr. Lee's recollection would not have needed refreshing. He had been paid pursuant to the engagement letter and he specifically referenced the engagement letter in his correspondence with Ms. Chi just months earlier, in July 2022. This is not a situation where Mr. Lee made an off-hand comment about not having a retainer agreement that later turned out to be untrue and was an excusable mistake or lack of due diligence. Plaintiff's counsel raised the issue, over and over again, from the very beginning of this case. It was a critical issue in this case over multiple sets of briefing and hearings. Forgetting about a retainer agreement is one thing; forgetting when he first met Ms. Chi and why, about multiple

---

in February 2024, stated that "Mr. Lee did not produce the [retainer agreement] in connection with the May 19, 2023, hearing because the Kims had not even seen the document" and it was not signed or enforceable and "[s]o for the purposes of the May 19, 2023 hearing, Mr. Lee denied any retainer agreement accordingly." Dkt. No. 205 at 2; *see also* Dkt. No. 205-1 ¶ 13.

conversations, payment, and a calculated legal strategy is another. Whether or not the former is credible, the latter is not. The issue is when Mr. Lee began representing the Kims, as a substantive matter. On that issue, the Court finds Mr. Lee was not straightforward with this Court and his claims that he was simply negligent in his preparation for the May 2023 hearing but did not act in bad faith are unconvincing. And moreover, whether Mr. Lee remembered the engagement letter when he was asked for documents and gave the testimony in May 2023 is also immaterial for purposes of this motion. The misrepresentations were not limited to Mr. Lee's testimony regarding whether there was an engagement letter. At the May 2023 hearing, he also gave false and material testimony regarding when he was first contacted by Ms. Chi and for what purpose. By that time, he had falsely denied the claims made in Plaintiff's motion to reinstate the default judgment. And he had, in November and December 2021, submitted a declaration and memorandum that he would have known contained misrepresentations that were material.

With respect to the Kims' declarations in support of the motion to vacate the default judgment submitted in October 2021, whether or not Mr. Lee or Ms. Chi or anyone else signed them for the Kims is not determinative because the more significant issue is what Mr. Lee knew about their content. At that point, it had only been a matter of months since Mr. Lee's initial conversation with Ms. Chi where they discussed the intentional strategy of default, and even fewer months since he raised it again with Ms. Chi in February or March of 2021. Mr. Lee knew through March 2021 that the Kims were not even aware of this lawsuit and thus could not have been mistaken regarding the need to answer. But he also knew that he and Ms. Chi (whom Mr. Lee communicated with and relied upon and who lives with the Kims, *see* Dkt. 205 at 2–3; Dkt. No. 205-1 ¶¶ 21–23, 38; Dkt. No. 249 ¶¶ 30, 35, 52) had certainly been aware of the lawsuit before default and indeed they had discussed the exact strategy of willfully defaulting. Thus,

regardless whether Ms. Chi knew of the declaration and was complicit in its filing, Mr. Lee certainly had personal knowledge that the facts contained in it were untrue.

There also is the matter of the adoptive admission. Fed. R. Evid. 801(d)(2)(B); *see also Experience Hendrix, LLC v. Chalpin*, 461 F. Supp. 2d 165, 171–172 (S.D.N.Y. Nov. 6, 2006) ("[A] failure of a witness to deny an accusation in circumstances in which such a denial reasonably would be expected constitutes an adoptive admission."); *Phipps v. Comprehensive Cmty. Dev. Corp.*, 2005 WL 287413, at *13–14 (S.D.N.Y. Feb. 4, 2005) (where reasonable juror could conclude that individual heard, understood, and acceded to the accusation against him, the failure to deny the accusation may be deemed an adoptive admission); *U.S. v. Williams*, 577 F.2d 188, 194 (2d Cir. 1978) (where, in context, it was more probable than not that party would have objected that he was innocent, it was appropriate to deem such lack of objection an adoptive admission). After the case proceeded through litigation and after Defendants hired new counsel to look into the conduct of Mr. Lee, Mr. Chi sent Mr. Lee a text in which he asked about the misrepresentations made to the Court. The exchange occurred on February 15, 2024, approximately two months after the verdict. Mr. Chi asked:

> MR. CHI: [. . .]
>
> - While you're away, do we owe any other responses to Ryu at this time? Because if so, are we at risk of another default?
>
> - As followers of Jesus and ultimately having an ultimate judge to answer to, it's really gnawing at our conscience that it appears we've provided lies to the court and that really bothers us since we didn't submit it and we certainly don't want to be accused of that (is that possible?) While I don't understand the logic/defense, but since the hearing was based on the three things (awareness of lawsuit, retainer agreement and when we hired you) are you ok with those lies being in that doc? Might it cause us further harm?

Had he not been aware of and at least complicit in making misrepresentations to the Court, one would have expected Mr. Lee to respond by asking what Mr. Chi was saying. What "lies"

were provided to the Court?  What do you mean about the "retainer agreement and when we hired

you"?  But that is not the answer that Mr. Lee gave.  Mr. Lee responded essentially what is done

is done:

> MR. LEE: [. . .]
>
> To answer your bullet points.
>
> First bullet: No. At this time, all we are waiting for is the judge to decide Ryu's application for more money. I've responded. (Although my response was one day late, I asked the judge to allow me a one-day extension after-the-fact because I was under the weather. Ryu actually opposed my request, and pulled up papers from my other pending cases to somehow show that I was not under the weather. The guy is unbelievable. Anyway, the judge promptly granted my request and accepted our opposition one day late.  (I get along well with the judge, who is overseeing another case I am handling.))
>
> Second bullet: *Tim, whatever was said or presented in the past, is now history. Things are done. Case went to trial. Jury has spoken. Ryu's efforts to manipulate previous statements and filings fell flat. The judge's comments towards the end of the 5/19/23 proceeding are self-explanatory. Also, the time to appeal or try to reopen previous proceedings has passed.* If you want, I can grab a coffee with you Friday evening if you want.

Dkt. No. 227-1 (emphasis added).

The Court concludes from the exchange that Mr. Lee knew at the time about the

misrepresentations to the Court.

## DISCUSSION AND CONCLUSIONS OF LAW

Both Plaintiff and Defendants, Mr. Lee's former clients, have moved this Court for

sanctions against Mr. Lee based on his conduct during this litigation under 28 U.S.C. § 1927 and

the Court's inherent powers.  The Court has also raised the question whether sanctions should be

payable to it.  *See* Dkt. No. 240.  The Court concludes that sanctions are appropriate.[6]  Based on

---

[6] The Court need not address the separate matter whether Mr. Lee should be held in civil contempt.

the findings made above, clear and convincing evidence exists that Mr. Lee has acted in bad faith to warrant the imposition of sanctions under 28 U.S.C. § 1927 and the Court's inherent authority. The Court will impose a sanction for the excess attorneys' fees that Plaintiff incurred and the waste of judicial resources that were directly caused by Mr. Lee's bad faith conduct, which unnecessarily and vexatiously prolonged this litigation.

Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Courts also have inherent power to sanction a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Doe v. 239 Park Ave. S. Assocs.*, LLC, 2022 WL 4592713, at *8 (S.D.N.Y. Sept. 30, 2022) (citing *Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997)). The standard for imposing sanctions under Section 1927 and the Court's inherent authority are essentially the same. The Second Circuit has stated that the "only meaningful difference" between Section 1927 sanctions and those made pursuant to the court's inherent power is that awards under Section 1927 can only be made against attorneys or persons authorized to practice before the courts while the inherent power can be used against an attorney, a party, or both. *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).

To impose sanctions under either Section 1927 or a court's inherent power, a district court must find 1) the challenged claim was without a colorable basis and 2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay. *Id.* (citing *Schlaifer Nance & Co. Inc. v. Est. of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)). With respect to the first prong, "[a] claim is colorable when it has some legal and factual support,

considered in light of the reasonable beliefs of the individual making the claim." *Schlaifer*, 194 F.3d at 337 (internal citation omitted). With respect to the second prong, under both Section 1927 and a district court's inherent power, the Court must make an explicit finding of bad faith before the imposition of sanctions. *See Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 143 (2d Cir. 2023) (citing *U.S. v. Seltzer*, 227 F.3d 36, 41–42 (2d Cir. 2000) and *Oliveri*, 803 F.2d at 1273 and *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997)); *see also (RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*, 2022 WL 4234552, at *5 (S.D.N.Y. Sept. 14, 2022). Under the bad faith requirement, the "attorney's actions [must be] so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Bao Guo Zhang v. Shun Lee Palace Rest., Inc.*, 2021 WL 2414872, at *2 (S.D.N.Y. June 11, 2021) (citing *Oliveri*, 803 F.2d at 1273)). Both of these findings must be supported "by a high degree of specificity in the factual findings." *See Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (quoting *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009)). Bad faith must also be shown by clear and convincing evidence. *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 281 (2d Cir. 2021). Bad faith applies not only to the act of initiating a claim but also the party's subsequent conduct. *United States v. Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 484 (S.D.N.Y. 2018).

Additionally, a court can impose sanctions under its inherent authority when it finds fraud on the court. *See, e.g.*, *Almeciga v. Ctr. For Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 427 (S.D.N.Y. 2016). Such sanctions are appropriate when there is "clear and convincing evidence that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action." *Id*. (cleaned up)

(citing *N.Y. Credit & Find. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*, 432 Fed. Appx. 25, 25 (2d Cir. 2011)).

"Courts within the Second Circuit construe Section 1927 narrowly and with great caution, so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *(RC) 2 Pharma Connect*, 2022 WL 4234552 at *5 (citing *Cameau v. Nat'l Recovery Agency, Inc.*, 2018 WL 4522104, at *5 (E.D.N.Y. Aug. 6, 2018), *report and recommendation adopted*, 2018 WL 4853050 (E.D.N.Y. Sept. 28, 2018)).  Even where the standards for imposing sanctions are met, a court retains discretion to decide whether to impose such sanctions and in what form and amount.  *239 Park Ave. S. Assocs.*, 2022 WL 4592713, at *8; *Bao Guo Zhang*, 2021 WL 2414872, at *4.  The court may account for the waste of judicial time and resources that the violation caused.  *Bao Guo Zhang*, 2021 WL 2414872, at *4.  Under its inherent authority, a court may order a party to pay the other side's legal fees that would not have been incurred but for the bad faith.  *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 104 (2017).[7]

---

[7] Although he did not raise it in his most recent response to the Court's order to show cause, Mr. Lee previously raised the question whether this Court had jurisdiction to issue sanctions against him given that he has now withdrawn as the Kims' counsel.  *See* Dkt. No. 235.  The Court has jurisdiction to sanction Mr. Lee for his conduct before this Court because it is a "collateral issue" that the Court can consider even after an action is terminated.  *See Cooter & Gell v Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990); *see also Schlaifer*, 194 F.3d at 333 ("The District Court clearly has jurisdiction to impose sanctions irrespective of the status of the underlying case because the imposition of sanctions is an issue collateral to and independent from the underlying case.").  It follows that the Court can consider such a collateral issue even after the attorney has withdrawn as counsel.  *Cf. Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2003 WL 22227956, at *7 (S.D.N.Y. Sept. 26, 2003) (attorney's withdrawal from the case does not prevent the imposition of Rule 11 sanctions against that attorney); *Gold v. The Last Experience*, 1999 WL 156005, at *4 (S.D.N.Y. Mar. 22, 1999).

Mr. Lee made numerous claims without a colorable basis that vexatiously and unreasonably prolonged the litigation.  The claims were made when Mr. Lee knew that they were untrue.  The claims made without a colorable basis include:

- The claims in the original motion to vacate the default judgment and accompanying declarations that Defendants' default arose from their mistaken belief about the relationship between the NYSDOL proceedings and this litigation and their inability to understand English effectively, and that they did not realize their mistake until October 2021 at which time they "engaged an attorney immediately" to bring the vacatur application, Dkt. Nos. 27, 29, 30, 33;

- Mr. Lee's statements at the December 15, 2021 conference that the Kims had told their original lawyer to hold off doing any work because of their reasonable belief that the NYSDOL claims would resolve this litigation, and that Mr. Lee did not know if the prior attorney was terminated "right before [he] was retained or well before [he] was retained," Dkt. No. 56 at 17–18, and Mr. Lee's obfuscation and misleading omission in response to the Court's question about whether the Kims were "proceeding without counsel after they received the extension" in early January 2021, *id*. at 14;

- The statements in the response to the motion to set aside the vacatur of the default judgment that Plaintiff's allegations that Mr. Lee had been consulted on the FLSA litigation before the default were "pure fiction" that they "categorically denied" and were an "offensive" "conspiracy theory," made up of "conjecture" and "wild, baseless accusations," Dkt. No. 90 at 5, 9; and the testimony at the May 2023 hearing that Mr. Lee did not have a representation agreement with the Kims or

Ms. Chi, that Ms. Chi came to him because she "knew [he] did real estate," that

when Ms. Chi came to him about the quitclaim deed they never spoke about the

FLSA lawsuit, and that he first met Ms. Chi in late February if not March 2021,

Dkt. No. 152 at 25, 32, 37–38, 43.

Mr. Lee's claims were without a colorable basis because, quite simply, they were untrue

and known to be untrue.  And the repeated nature of the misstatements concerning issues central

to the litigation over multiple hearings that resulted in years of unnecessary litigation amounts to

a fraud on the court.  Mr. Lee acted without a colorable basis and in bad faith starting from the

original motion to vacate the default judgment and then "continually engag[ed] in obfuscation of

the issue," when the matter of his representation was raised again and again.  *Keller v. Mobil

Corp.*, 55 F.3d 94, 99 (2d Cir. 1995).

The Court also concludes that the false claims were made in bad faith and were motivated

by improper purposes such as harassment or delay.  This is not a case where there is a "fine line

between an attorney zealously advocating for a client and the Court's responsibility for policing

sanctionable conduct."  *In re Cartisano*, 2019 WL 1028497, at *5 (E.D.N.Y. Br. Mar. 4, 2019).

There were flat-out misstatements of fact made to the Court on numerous occasions.  The factual

claims about the representation of the Kims were "without any legal or factual basis . . . in light

of the reasonable beliefs of [Mr. Lee]" and these actions were "so completely without merit as to

require the conclusion that they must have been undertaken for some improper purpose such as

delay."  *See Wolters*, 564 F.3d at 114; *Oliveri*, 803 F.2d at 1273; *cf. In re Bavelis*, 563 B.R. 672,

674–75 (S.D. Ohio Br. 2017) ("Withholding material evidence and lying to a party and the Court

constitute bad faith and an affront to the judicial system that must be redressed."), *aff'd* 743 Fed.

Appx. 670, 677 (6th Cir. 2018); *Lahiri v. Universal Music and Video Distrib. Corp.*, 606 F.3d

1216, 1221–22 (9th Cir. 2010) (affirming attorneys' fees sanction against lawyer who persisted in litigating frivolous copyright claim for three years, including by making misrepresentations to the court); *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) (affirming attorneys' fees sanction against lawyer who acted in bad faith by litigating claim which he knew had no factual basis, including by submitting a false and deceptive affidavit).

Moreover, those misstatements were made for improper purposes—for vacating the default judgment and delaying the ultimate day of reckoning for Defendants and for prolonging these proceedings. In addition, while the misstatements and baseless arguments were made ostensibly for the benefit of the Defendants who would be able to enjoy the relief from the default judgment and the possibility of prevailing at a trial, the Court concludes that they were also made equally for the benefit of Mr. Lee. It was Mr. Lee who provided the advice that Defendants could wait until after a default judgment was entered and then defend against the imposition of damages at an inquest. It was he who mistakenly assumed that there would be a second stage of an inquest after the Court found liability during which Defendants would be able to contest damages. And, after the Court entered a default judgment as to damages without a further inquest, it was Mr. Lee's advice and strategy that would have been at issue. He not only would have known that the statements he submitted and made were untrue, but he had a personal motive to make the untrue statements. If he had revealed the truth, it would have resulted in the judgment against his clients remaining in place and would have revealed his mistaken understandings.

The evidence thus supports the imposition of sanctions under Section 1927 and the Court's inherent power. Although Section 1927 frequently is invoked when a party makes baseless claims in a pleading, *see, e.g.*, *Gollomp v. Spitzer*, 568 F.3d 355, 369–71 (2d Cir. 2009);

*In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115–16 (2d Cir. 2000); *Banus v. Citigroup Global Markets, Inc.*, 757 F. Supp. 2d 394, 401–03 (S.D.N.Y. 2010), it is not so limited.  The statute applies whenever an attorney "multiplies the proceedings . . .  unreasonably and vexatiously," 28 U.S.C. § 1927, and not just when he does so through a misrepresentation in a pleading.  *See MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 73 F.3d 1253, 1262 (2d Cir. 1996) ("Section 1927 violations do not depend upon the submission of a pleading, motion or other paper.").  Accordingly, courts have not hesitated to impose Section 1927 sanctions based on false factual representations in documents other than pleadings.  *See, e.g.*, *Usherson v. Bandshell Artist Mgmt.*, 2020 WL 3483661, at *9 (S.D.N.Y. June 26, 2020) *aff'd sub nom Leibowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267 (2d Cir. 2021) (imposing sanctions under Section 1927 for, *inter alia*, lying to the Court and filing a document containing a false statement); *In re Bavelis*, 563 B.R. at 674 (imposing sanctions under Section 1927 for concealing an assignment from and lying to the other party and the Court); *Worldwide Home Prods., Inc. v. Bed, Bath and Beyond, Inc.*, 2015 WL 1573325, at *6 (S.D.N.Y. April 9, 2015) (Section 1927 sanctions appropriate where lawyer's prosecution of patent claim was in bad faith because he had made material misstatements or omissions in procuring the patent in the first place); *Enmon*, 675 F.3d at 144–46 (affirming bad faith finding in support of sanctions under Section 1927 due, in part, to counsel's misrepresentations to the court).

The Court also has inherent authority to impose sanctions based on submitting false declarations to the Court and making misrepresentations to the Court.  *See Usherson*, 2020 WL 3483661, at *9 ("A court may impose sanctions under its inherent authority if it finds, by clear and convincing evidence, that the party or attorney knowingly submitted a materially false or misleading pleading, or knowingly failed to correct false statements, as part of a deliberate and

unconscionable scheme to interfere with the Court's ability to adjudicate the case fairly.")   The submission of false and misleading statements to the court "seriously impedes the truth-finding process." *Universe Antiques, Inc. v. Vareika*, 826 F. Supp. 2d 595, 611 (S.D.N.Y. 2011); *see also Laba v. JBO Worldwide Supply Pty Ltd.*, 2023 WL 4985290, at *9 (S.D.N.Y. July 19, 2023) (finding sanctions appropriate against party for committing fraud on the court where clear and convincing evidence showed that party and counsel knew signature on agreement forming basis of claim was fraudulent and fabricated and that party submitted false declarations and testimony); *Almeciga*, 185 F. Supp. 3d at 434–35 (sanctioning litigant for pressing allegations she knew to be false).  Here, "the lies are established by clear and convincing evidence, concern issues that are central to the truth-finding process, and seriously affected the integrity of the normal process of adjudication." *Yuan v. & Hair Lounge*, 2023 WL 6807310, at *1 (S.D.N.Y. Oct. 13, 2023) (internal citations omitted); *see also McMunn v. Memorial Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002).[8]

There also can be no question that Mr. Lee's false claims vexatiously and unreasonably prolonged the proceedings, which is a "threshold requirement" of Section 1927, *see Polaris Images Corp. v. Cable News Network, Inc.*, 365 F. Supp. 3d 340, 342 (S.D.N.Y. 2019); *see also Greenberg v. Chrust*, 297 F. Supp. 2d 699, 705 (S.D.N.Y. 2004) (noting sanctions under Section 1927 inappropriate where resolution of the action was not delayed); *Amlong & Amlong, P.A., v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007); *In re Kahn*, 593 Fed. Appx. 83, 86 (2d Cir.

---

[8] Although such fraud on the court cases are often brought against litigants who lie to the court, as opposed to attorneys, the Court has inherent authority to sanction attorneys as well, *Oliveri*, 803 F.2d at 1273 and the reasoning is equally applicable to attorneys, who act as officers of the court.  *See Laba*, 2023 WL 4985290, at *12 (sanctioning counsel as well as litigant under inherent authority); *Wager v. G4S Secure Integration, LLC*, 2021 WL 4311373, at *6 (S.D.N.Y. Sept. 21, 2021) (noting that federal courts have inherent power to assess attorneys' fees against counsel) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991)).

2015) (summary order) (sanctions not appropriate where they have not multiplied the proceedings unreasonably and vexatiously).[9]  Had the misrepresentations not been made and had Mr. Lee disclosed his representation of the Defendants back in November 2021, the Court would not have vacated the default judgment in the first place.  Had the misrepresentations not been made in December 2022 and in May 2023, the Court would have reinstated the default judgment. This litigation has been extended by nearly three years, including the briefing and hearings on the issue of sanctions against Mr. Lee.  This Court conducted a 3-day trial that never should have occurred.  Costs were imposed on Plaintiff and the Court who "were required to spend time sorting out [Mr. Lee's] falsehoods."  *Bandshell Artist*, 6 F.4th at 290.

Mr. Lee tries to avoid this result based on the contention that he corrected the record with his February 23, 2024 declaration.  In that declaration, Mr. Lee admitted for the first time that his first introduction to the Kims was through Ms. Chi who contacted him in or about January 9, 2021, to discuss this case and that thereafter he had sent Ms. Chi an engagement letter agreeing to represent the Kims.  Dkt. No. 205-1 ¶¶ 3, 6.  But this was too little too late.  Mr. Lee's

---

[9] *Enmon* is not to the contrary.  675 F.3d 138.  There, the Second Circuit noted that sanctions may be warranted "even where bad-faith conduct does not disrupt the litigation before the sanctioning court."  *Id.* at 145.  However, that was in the context of litigants who had filed a frivolous application for a temporary restraining order in Texas, which sought to enjoin an ongoing action in the Southern District of New York.  It did not have that effect but it still "multiplied the proceedings" in the sense that the opposing party had to seek its own TRO in New York and the New York court had to consider whether the Texas TRO required dissolution of the S.D.N.Y. TRO.  *Id.*  The sanctions imposed included the fees the opposing party incurred in connection with the Texas TRO.  *See Prospect Cap. Corp. v. Enmon*, 2010 WL 2594633 ("*Enmon I*"), at *1 (S.D.N.Y. June 23, 2010).  Thus, while there may be circumstances in which the proceedings before the sanctioning court are not affected to the extent the sanctioned party intended to affect them or where the proceedings are multiplied by conduct before other courts, it is still the case that, consistent with the plain text of the statute, sanctions under Section 1927 are appropriate only when an attorney "so multiples the proceedings in any case unreasonably and vexatiously,"  28 U.S.C. § 1927, and even then only for the "excess costs, expenses and attorneys' fees reasonably incurred because of such conduct," *id*.  If there were not some level of multiplied proceedings, then no "excess" fees could be incurred.

February declaration was filed one day after and in response to the letter filed by Defendants'
new counsel in which that counsel disclosed the engagement letter and that Mr. Lee had
consulted with Ms. Chi about this lawsuit in January 2021.  Mr. Lee did not disclose anything
that the Court had not already been told.  In short, the cat was already out of the bag.  Through
counsel, Mr. Lee now states that he would have disclosed the fact of the engagement letter to the
Court anyway and that it is an accident of timing that he did so only after the Court had already
learned of its existence because of the letter from Defendants.  He claims he had intended to
write to the Court after receiving the email from Mr. Chi about the misrepresentations but did not
do so because he was on vacation.  Dkt. No. 205 at 2–3; Dkt. No. 227-1.  But that self-serving
rationalization is a matter of convenience and has no weight.  *Cf. In re Bavelis*, 563 B.R. at 693
(where attorney "undertook his remedial efforts only after [the opposing party] uncovered [the
truth] and brought it to the Court's attention, the efforts in no way make him any less culpable
for concealing [the truth.]").  Mr. Lee does not state in the email to Mr. Chi that he intends to
come clean with the Court.  He says, in essence, let bygones be bygones:  "[W]hatever was said
or presented in the past, is now history.  Things are done. Case went to trial.  Jury has spoken.
Ryu's efforts to manipulate previous statements and filings fell flat.  The judge's comments
towards the end of the 5/19/23 proceeding are self-explanatory.  Also, the time to appeal or try to
reopen previous proceedings has passed."  Dkt. No. 227-1.  There is no indication that Mr. Lee
knew at the time that Mr. Chi had hired counsel.  It is apparent that, had new counsel not come to
the Court, Mr. Lee would have been content with the Court continuing to rely on the prior
mistaken understandings he had conveyed to the Court.

    For the foregoing reasons, the Court will exercise its discretion to impose sanctions
against Mr. Lee under § 1927 and the Court's inherent authority.

### III.     Amount and Type of Sanctions

#### A.     Section 1927 and Inherent Power Sanctions

Section 1927 itself sets forth that when an attorney unreasonably and vexatiously multiplies proceedings, he "may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

The parties dispute the amount of costs, expenses, and fees Mr. Lee should be required to satisfy as well as to whom those costs, expenses and fees should be paid.  Defendants argue that they should be compensated for attorneys' fees and costs they paid to Mr. Lee, attorneys' fees they paid to a separate lawyer, Mr. Song, to file bankruptcy petitions for the Kims that Mr. Lee allegedly "caused Defendants to file," and the attorneys' fees and costs that Defendants paid to Plaintiff in connection with the motion for default judgment. *See* Dkt. No. 230 at ECF p. 14. Defendants have also argued in the alternative that under Section 1927, their damages could be measured in full from the point at which default judgment was entered through and including when the Court entered final judgment.  Dkt. No. 261 at ECF p. 5.  Plaintiff asserts that he should be paid attorneys' fees and costs, and prejudgment interest, and that Mr. Lee and Defendants should be jointly and severally liable for the full amount of the attorneys' fees and costs, with Mr. Lee jointly and severally liable only for one third of the prejudgment interest.[10] Dkt. No. 238 at ECF p. 21.  The Court, relying on *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732 (9th Cir. 1995), raised *sua sponte* the question whether the fees should be paid to the Court.  Dkt. No. 240.

Courts have held that fees should be paid to the party injured by the vexatious and unreasonable delay.  *See, e.g.*, *Laba*, 2023 WL 4985290, at *9 ("Awarding opposing counsel's

---

[10] Plaintiff represented that he has not yet been paid those fees and costs ordered by the Court, Dkt. No. 217, following trial, Dkt. No. 252-1 at 30.

attorneys' fees and costs is a well-accepted measure of sanctions for bad faith conduct that unnecessarily prolongs a proceeding and multiplies the expense incurred by an adversary.") (citing *Usherson*, 2020 WL 3483661, at *20)); *Worldwide Home*, 2015 WL 1573325, at *6; *Enmon I*, 2010 WL 2594633, at *5; *Cotterill v. City and Cnty. of San Francisco*, 2010 WL 1223146, at *15 (N.D. Cal. Mar. 10, 2010). In this case, Plaintiff and Plaintiff's counsel were the parties who were injured as a result of Mr. Lee's vexatious and unreasonable conduct. Plaintiff should have received a judgment in the amount of $191,786.96 in back wages and liquidated damages, plus $15,709 in attorneys' fees and costs, plus prejudgment interest, in October 2021. Dkt. No. 24. Instead, and as a result of Mr. Lee's conduct, Plaintiff and Plaintiff's counsel were forced to soldier on—to resist the motion to vacate the default judgment, to move to compel discovery, to move for summary judgment, to seek the reinstatement of the default judgment, and ultimately to try this case to a favorable jury verdict. But that favorable jury verdict came in December 2023. Dkt. No. 187. In the interim, time and money had to be expended on behalf of Plaintiff that never would have had to be expended had Mr. Lee not made his motion to vacate the default judgment and had he been honest about his relationship with the Chis and the Kims. Mr. Lee owes Plaintiff and his counsel fees and expenses for the costs they incurred as a result of that unreasonable delay.

Mr. Lee argues that it would be unfair and inconsistent with the law to make him pay attorneys' fees to Plaintiff. He makes two related arguments: (1) it was the Kims and not Mr. Lee who decided to continue to litigate after the default judgment was vacated; and (2) it would undermine the deterrent effect that the FLSA and NYLL were intended to have on employers if the Kims were relieved of the requirement to reimburse Plaintiff for his reasonable costs and expenses. Dkt. No. 260. Neither argument is convincing.

The wrong for which fees and costs are being awarded against Mr. Lee is not the decision made by Ms. Chi or her parents to continue litigating after the default judgment was vacated. Once the default judgment was vacated, it was eminently reasonable for them to want to continue to litigate. The wrong for which fees and costs are being awarded are the filings that caused the default judgment to be vacated and the Defendants to have the option to continue to litigate in the first place as well as the filings and statements that prevented the default judgment from being reinstated. Mr. Lee is at least equally responsible for that wrong. He is the lawyer who submitted the untrue declarations and who made the untrue statements of fact. Although he seeks to pass the blame to Ms. Chi on the theory that he received information from her and it would have been her duty as well to make sure the declarations were not untrue, that rationalization would not excuse Mr. Lee's conduct even if it were true. As an attorney, Mr. Lee has a duty of candor to the Court not to provide evidence or testimony that he knows to be false. *See* New York Rule of Professional Conduct 3.3 (a lawyer shall not knowingly make a false statement of fact to a tribunal nor fail to correct a false statement of material fact previously made to a tribunal nor offer or use evidence the lawyer knows to be false)*; see also Torres v. Donnelly*, 554 F.3d 322, 326 (2d Cir. 2009). A lawyer is liable under Section 1927 and the Court's inherent powers when, as here, he submits to the Court statements that he knows have no factual support. *Bandshell Artist*, 6 F.4th at 281–82; *Enmon*, 675 F.3d at 144–46; *Bavelis*, 563 B.R. at 698; *Avirgan*, 932 F.2d at 1582.

An award to Plaintiff of its reasonable costs and fees from Mr. Lee would not, as Mr. Lee contends, impermissibly undermine the deterrent effect of FLSA and the NYLL. Mr. Lee cites no authority for that proposition. Fee awards in FLSA and NYLL cases are intended to "'encourage members of the bar to provide legal services to those whose wage claims might

otherwise be too small to justify the retention of able, legal counsel.'" *See Fisher v. SD Protection Inc.*, 948 F.3d 593, 603 (2d Cir. 2020) (quoting *Sand v. Greenberg*, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010)). That purpose is satisfied regardless of whether Mr. Lee or Defendants ultimately foot the bill. Mr. Lee also argues that his former clients might receive a windfall. Dkt. No. 260 at 4. But the Court awards fees and costs jointly and severally. Plaintiff and Plaintiff's counsel were injured as a result of Mr. Lee's sanctionable conduct—they are not deprived of compensation for that injury because Defendants themselves personally are also required to pay attorneys' fees and costs. If Plaintiff and his lawyer choose to collect from Mr. Lee, the Defendants will be relieved of their obligation to pay that amount of fees and expenses (although there will still be fees and expenses prior to Mr. Lee's sanctionable conduct they will have to pay). But it could just as easily be argued that Mr. Lee may receive a windfall. If Plaintiff and his counsel choose to collect from Defendants personally, Mr. Lee will be relieved of that obligation to Plaintiff and his counsel. Even though in the Court's judgment Mr. Lee is responsible for vexatiously and unreasonably prolonging the proceedings, he will not pay Plaintiff for that wrong.

Defendants have also asked this Court to award sanctions in their favor, Dkt. Nos. 226–230, as well as to require Mr. Lee to reimburse Defendants for the fees and costs incurred in connection with bringing the motion for sanctions, Dkt. No. 261 at ECF p. 5. Defendants are not entitled to be paid directly for the excess costs and fees incurred as a result of the default judgment being vacated. The excess time incurred in litigating this case cannot be charged to misconduct by Mr. Lee. Mr. Lee may have caused the proceedings to be extended, but the conduct of Mr. Lee in extending those proceedings was for Defendants' immediate, if not ultimate, benefit. Had the default judgment not been vacated, Defendants would have been

required to pay $207,495.96 and far earlier than the date on which they had to pay.  Mr. Lee's

conduct gave Defendants a second chance.  And Mr. Lee did an able job on behalf of Defendants

at trial.  It is to that extent that Mr. Lee's arguments are persuasive—Mr. Lee cannot be held

liable to the Kims under Section 1927 for the Kims' decision once the default judgment was

vacated and not reinstated to try this case to verdict.  While the Kims may ultimately be

dissatisfied with Mr. Lee's legal services, their remedy, if any, is not sanctions in this case.

Defendants, however, are entitled to be reimbursed for the fees and costs in bringing the

sanctions motion.  The sanction motion was meritorious in that the Court has found Mr. Lee

liable under Section 1927.  Moreover, even if Defendants are not entitled to be paid the excess

fees incurred by them as a result of the motion to vacate the default judgment, this Court's order

will still inure to their ultimate benefit.  If Mr. Lee pays any part of the fee award, Defendants

will be relieved from paying that part of the fee award.  But for the conduct of Defendants' new

counsel, Mr. Lee's misconduct might never have come to light.  Thus Defendants are entitled to

recover the cost of bringing the motion for sanctions under Section 1927 and the Court's inherent

authority.  *See, e.g.*, *Laba*, 2023 WL 4985290, at *15; *Enmon I*, 2010 WL 2594633, at *1.

Defendants are directed to submit a supplemental fee application by September 16, 2024.

Mr. Lee shall pay to Plaintiff and Plaintiff's counsel, the amount of "excess" fees and

costs that were "incurred *because of* [his] conduct."  28 U.S.C. § 1927 (emphasis added).  That is

an appropriate sanction under Section 1927 and the Court's inherent powers.  See *Goodyear*, 581

U.S. at 104 (holding that attorneys' fees issued under a court's inherent power must be "limited

to the fees the innocent party incurred solely because of the misconduct—or put another way, to

the fees that party would not have incurred but for the bad faith"); *see also Chambers*, 501 U.S.

at 45–46 (a court may assess attorneys' fees when a party "has acted in bad faith, vexatiously,

wantonly, or for oppressive reasons" and this serves dual purposes of "vindicating judicial authority" and making "the prevailing party whole for expenses *caused by* his opponent's obstinacy." (internal citations omitted) (emphasis added)).  The Second Circuit has not explicitly held that attorneys' fees assessed under Section 1927 must have the same but-for causal relationship to the attorneys' misconduct as laid out in *Goodyear* with respect to sanctions under the court's inherent authority, *see Bandshell Artist*, 6 F.4th at 288 n.27.  However, the Supreme Court suggested that it reads the text of Section 1927 to require a "causal link" between the misconduct and fees, *Goodyear*, 581 U.S. at 108 n.5, and other courts have required what amounts to a but-for causal relationship in the Section 1927 context, *see, e.g.*, *Murphy v. Richert*, 2022 WL 4079457, at *2 (N.D. Ill. Sept. 6, 2022); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 188 (3rd Cir. 2002) ("sanctions that are imposed under § 1927 must only impose costs and expenses that result from the particular misconduct."); *Amlong*, 500 F.3d at 1242; *see also Lee v. First Lenders Ins. Servs., Inc.*, 236 F.3d 443, 445–46 (8th Cir. 2001) ("[A] sanctioning court must make an effort to isolate the additional costs and fees incurred by reason of conduct that violated § 1927. But the task is inherently difficult, and precision is not required."); *In re Saint Vincent's Catholic Med. Ctrs. of N.Y.*, 2014 WL 3545581, at *12–13 (S.D.N.Y. July 16, 2014); *In re Residential Cap., LLC*, 512 B.R. 179, 192 (S.D.N.Y. Br. 2014); *Baker v. Urban Outfitters*, 431 F. Supp. 2d 351, 367 (S.D.N.Y. 2006); *Novelty Textile Mills, Inc. v. Stern*, 136 F.R.D. 63, 76 (S.D.N.Y. 1991).  This aligns with the text of 28 U.S.C. § 1927 ("Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.").  The reason the Court gave in *Goodyear* that attorneys' fees awarded pursuant to the court's inherent authority be limited to

those solely caused by the misconduct was that inherent power sanctions are meant to be

"compensatory rather than punitive in nature," and thus "pretty much by definition . . . the court

can shift only those attorney's fees incurred because of the misconduct at issue." *Goodyear*, 581

U.S. at 108.  Similar reasons apply to Section 1927 where the accused is not accorded the

protections attendant to a claim of criminal contempt.  *See Mackler Prods., Inc. v. Cohen*, 225

F.3d 136, 142 (2d Cir. 2000)   Thus, the Court applies a but-for standard in this case.

The obligation on Mr. Lee shall be joint and several with the obligation of Defendants

pursuant to the Court's judgment of July 31, 2024, Dkt. No. 256, such that if Defendants have

paid in full Plaintiff's attorneys' fees and costs Mr. Lee shall be relieved from paying this

sanction and to the extent Mr. Lee has paid any of Plaintiff's attorneys' fees and costs,

Defendants shall no longer be liable for those fees and costs.[11]  However, the sanction shall be

only with respect to fees and costs incurred after Defendant made the motion to vacate the

default judgment (November 16, 2021).  The fees and expenses incurred by Plaintiff prior to the

motion to vacate the default judgment were incurred in connection with matters such as the

preparation of the complaint in this case, the service of the complaint, doing general background

research, working on the case management plan, and the motion for a default judgment.  *See* Dkt.

No. 194-7.  Such fees and costs would have been incurred regardless of whether Mr. Lee had

engaged in sanctionable conduct.  But all of the fees after the motion to vacate the default

judgment would not have been incurred except for Mr. Lee's sanctionable conduct and thus are

---

[11] Mr. Lee's obligation shall be with respect to the first dollars owed to Plaintiff and his counsel, such that Mr. Lee will not be relieved of any obligation to pay any portion of this sanction unless and until Defendants have paid the fees incurred prior to November 16, 2021 and shall be relieved of this sanction only with respect to those amounts that exceed the amount of reasonable fees and costs incurred after November 16, 2021.

the appropriate subject of a Section 1927 and inherent powers sanction.  *See Bao Guo*, 2021 WL 2414872, at *5.[12]

The Court previously reduced the requested attorneys' fees in this matter in half to account both for excess hours billed and unreasonable rates but also recognizing that "Defendants themselves did much to multiply costs in this case." Dkt No. 217 at 15.  The requested attorneys' fees for the period of November 16, 2021 (the date of the motion to vacate the default judgment) forward were $348,518.50, Dkt. No. 194-7, and 50% of that amount is $174,259.25, which represents the attorneys' fees and costs that this Court previously awarded Plaintiff that were a direct result of Mr. Lee's bad faith conduct beginning with his motion to vacate the default judgment and for which Mr. Lee should be jointly and severally liable.  If Mr. Lee had not made the misrepresentations he did, the Court would not have vacated the default judgment.  The total costs since November 16, 2021 were $18,060.09 and the Court previously awarded Plaintiffs 100% of their costs.  Dkt. No. 217.  Based on the foregoing, in total, the Court finds that Mr. Lee is liable jointly and severally with Defendants to Plaintiff for the excess attorneys' fees and costs incurred as a result of his bad faith conduct in the amount of $192,319.34.[13]

---

[12] It makes no difference if Plaintiff's counsel undertook representation on a contingency basis and thus Plaintiff was not "out of pocket" any money.  *Cf. Bandshell Artist*, 6 F.4th at 286–87 (holding that fact that attorney services were provided pro bono did not prevent sanctions award under Section 1927).  Regardless whether Plaintiff's counsel charged his fees to Plaintiff, the Court's attorneys' fee award represented the reasonable value of the services provided by counsel and thus the cost to Plaintiff and his counsel caused by Mr. Lee's sanctionable conduct.

[13] The Court declines to hold Mr. Lee liable for prejudgment interest because under Section 1927 an attorney may be liable only for "excess costs, expenses and attorneys' fees reasonably incurred because of" the offending conduct.  28 U.S.C. § 1927.  Prejudgment interest does not fall within that description.  *Cf. Doe 1 v. East Side Club*, LLC, 2023 WL 4174141, at *11 (S.D.N.Y. June 23, 2023) (noting that it was unclear whether the court had authority to enter prejudgment interest on sanctions awards, in part because Section 1927 only mentions costs, expenses, and attorneys' fees).

Finally, the Court has considered whether sanctions should be payable to it. The Court too was burdened as a result of Mr. Lee's conduct. The Court was required to turn its attention to Defendants' case when instead it could have been resolving other cases of equal importance. That is the result in *Mark Industries*, 50 F.3d at 732, the case ironically and improperly cited by Defendants for the proposition that they should receive fees. Dkt. No. 230 at ECF p. 19. The court there rejected the argument that the sanctions should be awarded in favor of a client against his own attorney, ruling that such a result would "amount[] to a summary malpractice penalty in favor of [the Kims] against [their] attorney." *Mark Industries*, 50 F.3d at 733. Instead, the Court found "[t]he wrong done was to the court" and ordered the attorney to pay sanctions to the court. *Id.* at 733.

In addition to the joint and several liability of Mr. Lee for the excess attorneys' fees incurred by Plaintiff as a result of his bad faith conduct and in order to preserve the deterrent value of the sanctions, Mr. Lee shall also be liable to the Court for a sanction in the amount of $10,000. Mr. Lee wasted court resources in needlessly prolonging this litigation for three years. *See Novelty Textile Mills*, 136 F.R.D. at 76 ("An appropriate sanction should also take into account the waste of judicial time and resources occasioned by the violation"). Courts have imposed sanctions payable to the Court under their inherent authority. *See Esposito v. Suffolk Cnty. Cmty. Coll.*, 390 F. Supp. 3d 428, 431–32 (E.D.N.Y. 2019) *vacated in part on other grounds* 517 F. Supp. 3d 126 (E.D.N.Y. 2021); *Usherson*, 2020 WL 3483661, at *20; *Xu v. UMI Sushi, Inc.*, 2016 WL 3523736, at *4 (S.D.N.Y. June 21, 2016); *J.M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338, 352 (D. Conn. 1981) (Cabranes, J.) (noting that courts have inherent authority to sanction attorneys, including in the form of fine payable to the court). This is an atypical case where, if Defendants themselves satisfy the fee award in its entirety, it remains

possible that Mr. Lee would suffer no financial consequence from his misdeeds.  In that event,

the sanctions award would lose much of its deterrent effect.  *See Bandshell Artist*, 6 F.4th at 287;

*Novelty Textile Mills*, 136 F.R.D. at 76; *see also Hart v. Blanchette*, 2019 WL 1416632, at *29

(W.D.N.Y. Mar. 29, 2019) (noting that sanctions under inherent authority may include fines

payable to the court for purpose of deterrence and need to vindicate public interest in sound

administration of justice) (internal citations omitted).  In light of these considerations, Mr. Lee

shall be relieved of the $10,000 sanction payable to the Court upon proof that within six months

of the date of this Order he has paid the Plaintiff at least that amount.

### B.    New York Judiciary Law § 487

Defendants also ask for relief under New York Judiciary Law § 487.  Specifically,

Defendants request that the Court award Defendants $41,768.90, representing attorneys' fees

paid by Defendants to Mr. Lee beginning in January 2021, attorneys' fees paid to Plaintiff in

connection with the motion to vacate the default judgment, and attorneys' fees paid to a separate

lawyer, Mr. Song, for bankruptcy petitions Defendants claim they filed at Mr. Lee's insistence.

Dkt. No. 230 at ECF p. 32.  Defendants argue that these expenses would not have been incurred

by them but for Mr. Lee's deceitful conduct towards them and the Court.  *Id.* at ECF p. 24.

New York Judiciary Law § 487 provides that an attorney who:

1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,

2. Wilfully delays his client's suit with a view to his own gain; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,

Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

N.Y. Judiciary Law § 487.

Section 487 of the Judiciary Law is a "unique statute of ancient origin in the criminal law of England." *Amalfitano v. Rosenberg*, 903 N.E. 2d 265, 268 (N.Y. 2009).  It "descends from the first Statute of Westminster, which was adopted by the Parliament summoned by King Edward I of England in 1275," was first codified by the New York Legislature in 1787, and eventually was placed in the New York Judiciary Law in the 1960s. *See id.* at 267–68.  The statute is distinct from common law fraud or legal practice and reflects "the importance of safeguarding the integrity of the judicial system" and "the integrity of attorneys who fulfill the role of officers of the court [and who] further[] its truth-seeking function." *Urias v. Daniel P. Buttafuoco & Assocs., PLLC*, 41 N.Y. 3d 560, 567 (N.Y. 2024).   It is designed to "safeguard an attorney's special obligation of honesty and fair dealing in the course of litigation" and thus is "limited to a peculiar class of citizens, from whom the law exacts a reasonable degree of skill, and the utmost good faith in the conduct and management of the business entrusted to them." *Bill Birds, Inc. v. Stein Law Firm, P.C.*, 149 N.E. 3d 888, 891 (N.Y. 2020).  The statute provides civil liability, in the form of treble damages, criminal liability for a specialized form of attorney misconduct occurring during a litigation. *See id.* at 891–92.

To state a claim under § 487, a plaintiff must show at a minimum that the defendant attorney is 1) guilty of deceit or collusion, or consent to any deceit or collusion, and 2) had an intent to deceive the court or any party. *See Ray v. Watnick*, 182 F. Supp. 3d 23, 28 (S.D.N.Y. 2016); *see also Bryant v. Silverman*, 284 F. Supp. 3d 458, 471–72 (S.D.N.Y. 2018).  Claims under § 487 are frequently joined with other claims such as those for malpractice. *See, e.g.*, *Bryant*, 284 F. Supp. 3d at 463; *Bill Birds*, 149 N.E. 3d at 890; *Moormann v. Perini & Hoerger*, 65 A.D. 3d 1106, 1107 (2d Dep't 2009); *Chrystelle Rondin v. Goldblatt*, 2016 WL 3748488, at *1 (S.D.N.Y. July 7, 2016).  Federal courts in New York have entertained claims for § 487

violations based on conduct in state court.  *See, e.g.*, *Makhnevich v. MTGLQ Investors, L.P.*, 2021 WL 3406484, at *9 (S.D.N.Y. Aug. 4, 2021); *Amalfitano v. Rosenberg*, 428 F. Supp. 2d 196, 206 (S.D.N.Y. 2006); *Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP*, 2013 WL 3357921, at *2 (S.D.N.Y. July 2, 2013).  And New York state courts have entertained claims for § 487 violations based on conduct in federal court.  *See, e.g.*, *Schnur v. Balestriere*, 175 N.Y.S.3d 50, 50 (1st Dep't 2022); *Sage v. Neil H. Greenberg and Assocs., P.C.*, 196 N.Y.S.3d 775, 775 (2d Dep't 2023).

However, claims under § 487 must be brought as an action, not by motion.  *See, e.g.*, *Gurvey v. Cowan, Liebowitz & Latman, P.C.*, 2014 WL 6491281, at *7 (S.D.N.Y Nov. 20, 2014) ("[T]here is no legal basis to grant plaintiff the relief she seeks [under Section 487] by motion."); *see also Brake v. Slochowsky & Slochowsky*, LLP, 504 F. Supp. 3d 103, 116 (E.D.N.Y. 2020); *Klein v. Rieff*, 135 A.D. 3d 910, 911 (2d Dep't 2016); *Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison LLP*, 629 F. Supp. 2d 259, 260 (S.D.N.Y. 2007).  In federal court, the complaining party must file and serve a complaint satisfying the standards of *Twombly* and *Iqbal*, *see Haggerty v. Ciarelli & Dempsey*, 374 Fed. App'x 92, 93 (2d Cir. 2010),[14] and the defendant is entitled to the full panoply of rights accorded parties to a civil litigation.  *See, e.g.*, Fed. R. Civ. P. 26–37.

Defendants have not brought an action or filed a complaint against Mr. Lee.  They have not named him as a defendant.  Nor has he had the opportunity to answer or assert any

---

[14] Indeed, some courts have held that a claim under § 487 is subject to the heightened pleading standard in Federal Rule of Civil Procedure 9(b) or its equivalent under New York state procedural rules.  *See Lewis v. Legal Servicing, LLC*, 2022 WL 2531817, at *8 (S.D.N.Y. Mar. 15, 2022) *report and recommendation adopted* 2022 WL 4592641 (S.D.N.Y. Sept. 30, 2022) (citing cases).

affirmative defenses he has to Defendants' complaint.[15]  Neither side has had an opportunity to take full discovery.

Accordingly, the request for relief under New York Judiciary Law § 487 is denied.

## CONCLUSION

Plaintiff's motion for sanctions is GRANTED IN PART.  Defendants' motion for sanctions is DENIED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 226 and 239.

SO ORDERED.

Dated: August 14, 2024
      New York, New York

LEWIS J. LIMAN
United States District Judge

---

[15] Defendants are also incorrect that their only recourse against Mr. Lee lies in this action.  *See* Dkt. No. 230 at ECF p. 26.  As counsel for Mr. Lee admitted at argument, a state court action under § 487 would still be timely. *See* Dkt. No. 252-1 at 49.  Because this is not a situation where Defendants are seeking to collaterally attack a prior adverse judgment on the ground that it was procured by fraud, such a claim is permissible as a separate action.  *See Melcher v. Greenberg Traurig LLP*, 24 N.Y.S.3d 249, 249 (1st Dep't 2016); *see also Urias v. Daniel P. Buttafuoco & Assocs., PLLC*, 2024 WL 1160485, at *3–4 (N.Y. Mar. 19, 2024).