USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/04/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUN YEUL HONG,

Plaintiff,

-v-

MOMMY'S JAMAICAN MARKET CORP., KAP WON KIM, MYONG SU KIM, DAE KYU KIM,

Defendants.

20-cv-9612 (LJL)

OPINION & ORDER

LEWIS J. LIMAN, United States District Judge:

Nonparty Peter Lee ("Lee") moves, pursuant to Federal Rules of Civil Procedure 60(b)(5) and 60(b)(6), for an order granting him relief from the Court's judgment entered on January 23, 2025. Dkt. No. 276. For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

### A. Prejudgment Proceedings

This case has a lengthy and tangled history. Plaintiff Sun Yeul Hong ("Plaintiff" or "Hong") is a former employee of defendant Mommy's Jamaican Market Corp. ("Mommy's Jamaican"), a small market located in New York City. Mommy's Jamaican was owned and run by a husband-and-wife team, Kap Won Kim ("Won") and Myong Su Kim ("Su"). On November 16, 2020, Hong sued Mommy's Jamaican, Won, and Su (collectively, "Defendants"), for their failure to pay him minimum wage and overtime wages as required under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et. seq.*, and the New York Labor Law ("NYLL").[1] Dkt. No. 1. Early in the proceedings, when Defendants failed to appear, the Court

[1] Hong also sued another defendant, Dae Kyu Kim. The Court later dismissed Hong's claims

issued an order and opinion on October 15, 2021, granting Plaintiff a default judgment awarding him $93,393.48 in back wages under the NYLL, with prejudgment interest; $93,393.48 in liquidated damages; $5,000 for Defendants' violation of NYLL § 194(3); $14,800 in attorneys' fees; and $909 in costs. *Hong v. Mommy's Jamaican Mkt. Corp.*, 2021 WL 4843912, at *5 (S.D.N.Y. Oct. 15, 2021), Dkt. No. 24. On November 16, 2021, Lee entered the case as counsel for Defendants and filed a motion to vacate the default judgment. Dkt. No. 26. The motion was based on Defendants' claim that the default was not willful because Defendants were operating under a mistaken assumption that a demand by Plaintiff before the New York State Department of Labor ("NYSDOL") for unemployment benefits would resolve Plaintiff's claims under the FLSA and the NYLL. Dkt. No. 29 at 3–4. The explanation made very little sense on its face, but the Court accepted it because Lee had claimed that the misunderstanding was caused by Defendants' inability to read and understand English effectively. *See* Dkt. No. 33 at 2. The Court granted the motion on December 22, 2021. *Hong v. Mommy's Jamaican Mkt. Corp.*, 2021 WL 6064101 (S.D.N.Y. Dec. 22, 2021), Dkt. No. 37.

After discovery was completed, Plaintiff filed a motion to set aside the vacatur of the default judgment and to reinstate it on the grounds that a fraud had been committed on the Court in connection with the motion to vacate the default judgment. Dkt. No. 83. Plaintiff offered evidence of a quitclaim deed prepared by Lee for Defendants that, though unrelated to the instant dispute, would seem to undermine the suggestions made by Lee in connection with the motion to vacate the default judgment that he had not represented Defendants at the time of the default judgment. Dkt. No. 84 at 5–6. Lee responded that the accusation was "pure fiction." Dkt.

---

against Dae Kyu Kim pursuant to the jury verdict, *see* Dkt. Nos. 185, 187, and Dae Kyu Kim is not relevant to this opinion.

No. 90 at 6. The Court held a hearing at which Lee testified under oath. *See* Dkt. No. 152. At the hearing, Lee testified to the Court that he did not have a representation letter with Defendants. *Id.* at 32. In response to a pre-hearing order from the Court that he produce various types of documents including representation letters, Dkt. Nos. 119, 121, Lee produced a number of documents primarily related to the preparation of the quitclaim deed but not a representation letter, Dkt. No. 134. *See also* Dkt. No. 249-1 ¶¶ 9–17. The Court denied the motion to set aside the vacatur of the default judgment. Dkt. No. 152 at 54; *see also* Dkt. No. 151. It found Lee's testimony that "he was not consulted . . . about the FLSA or the Department of Labor Proceedings" "to be convincing and to be credible" and that Plaintiff had otherwise failed "to elicit . . . evidence" to the contrary "that would require the Court to reconsider" its grant of vacatur. Dkt. No. 152 at 53–43.

The default judgment having been vacated and the motion to restore the default judgment having been denied, the case ultimately went to trial in December 2023. On December 13, 2023, the jury returned a verdict in favor of Plaintiff and against Defendants in the amount of $86,501. Dkt. No. 187. On December 18, 2023, the Court issued a judgment in that amount in favor of Plaintiff and against Defendants (the "185 Judgment"). Dkt. No. 185. On January 12, 2024, Plaintiff filed a post-trial motion seeking an award of liquidated damages under the NYLL, prejudgment and post-judgment interest, attorneys' fees and costs, and an increase in the amount of judgment pursuant to New York Labor Law § 198(4). Dkt. No. 194. On March 21, 2024, the Court granted in part and denied in part the motion. *Hong v. Mommy's Jamaican Mkt. Corp.*, 2024 WL 1242507 (S.D.N.Y. Mar. 21, 2024), Dkt. No. 217. The Court awarded Plaintiff liquidated damages in the amount of $81,501; prejudgment interest in the amount of $45,277; post-judgment interest under 28 U.S.C. § 1961(a); attorneys' fees in the amount of $177,318.25;

and costs in the amount of $18,460.09. *Id.* at *9. The Court added that the judgment should reflect that if any amounts remained unpaid upon the expiration of ninety days following the issuance of judgment or ninety days after the time to appeal with no appeal then pending, the total amount of the judgment would increase by fifteen percent. *Id.* On July 31, 2024, the Court entered a supplementary judgment (the "256 Judgment") in favor of Plaintiff and against Defendants jointly and severally in the amount of $409,057.34, comprised of $86,501 representing the jury verdict under the NYLL; $81,501 in liquidated damages; $45,277 in prejudgment interest; $177,318.25 in attorneys' fees; and $18,460.09 in costs. Dkt. No. 256.

That did not conclude the activity in this case. In February 2024, Lee withdrew as Defendants' counsel. *See* Dkt. Nos. 205, 209. At the same time, new counsel for Defendants appeared and filed a letter with the Court stating that they had uncovered evidence that the testimony that Lee had given at the evidentiary hearing on the motion to set aside the vacatur of the default judgment was "false, inaccurate, and/or otherwise misleading." Dkt. No. 204 at 1. The letter disclosed the existence of a retainer agreement dated January 11, 2021, the very time he later claimed that Defendants were without counsel and unaware of their need to answer the complaint. *Id.* at 2. The letter also disclosed that Lee had cashed a check made out to him by Son Young Chi ("Chi"), the daughter of Won and Su, in the amount of $5,000, the amount required to be paid under the retainer agreement. *Id.*; *see also* Dkt. No. 205-2. Contrary to what Lee told the Court about a misunderstanding regarding the role of the NYSDOL and as the Court later learned, Lee had proposed and Defendants had agreed that Defendants would intentionally default and, in order to save costs, defend only with respect to damages at an inquest. *Hong v. Mommy's Jamaican Mkt. Corp.*, 2024 WL 3824394, at *7–9 (S.D.N.Y. Aug. 14, 2024), *aff'd sub nom. Lee v. Hong*, 2025 WL 3637495 (2d Cir. Dec. 16, 2025), Dkt. No. 262. This is all to say,

Lee's testimony to the Court that he did not have a representation letter was false, and the motion to vacate was a fraud. *See id.* at *5.

Plaintiff moved for sanctions pursuant to the Court's inherent powers and 28 U.S.C. § 1927. Dkt. No. 239. Defendants also moved for sanctions against Lee pursuant to the Court's inherent powers, 28 U.S.C. § 1927, and New York Judiciary Law § 487. Dkt. No. 226. The Court further ordered Lee to show cause why he should not be sanctioned under the Court's inherent powers and 28 U.S.C. § 1927. Dkt. No. 240.

In an opinion and order dated August 14, 2024 (the "Sanctions Ruling"), the Court granted in part Plaintiff's motion for sanctions against Lee and denied Defendants' motion for sanctions. The Court summarized its findings as follows:

> There is clear and convincing evidence that a fraud has been perpetrated on the Court and Mr. Lee has unreasonably and vexatiously prolonged the proceedings. Defendants did not default in answering the complaint in this action as a result of a "choice" based on a mistaken understanding that they did not need a lawyer and that Plaintiff's FLSA and NYLL claims would be addressed by the resolution of the NYSDOL matter, as claimed in the Kap Won Kim declaration submitted by Mr. Lee. Nor did Defendants lack counsel during the period of time from when [an earlier attorney they briefly retained] requested an extension of time to answer until the time they received the default judgment as referenced in the Kap Won Kim declaration and asserted by Mr. Lee. Counsel was not immediately retained after the default judgment. Mr. Lee agreed to represent Defendants as early as January 2021 and, in connection with that representation and as a result of a conversation with Ms. Chi, the daughter of Mr. and Mrs. Kim, devised a strategy pursuant to which the Defendants would knowingly take a default but contest the amount of damages Defendants owed to Plaintiff at a subsequent inquest Mr. Lee expected to take place. Mr. Lee signed a representation letter to provide those services, accepted and cashed a retainer, and—as he agreed in the engagement letter—monitored the docket of this case. That strategy failed when, contrary to Mr. Lee's expectation and representation to Ms. Chi, the Court did not order an inquest but instead found no inquest was necessary and awarded damages to Plaintiff. Then, instead of accepting that his strategy had failed or admitting to the Court that his clients knowingly accepted the default, Mr. Lee engaged in a strategy of deception. He presented a false story regarding the NYSDOL that entirely omitted the fact that the Defendants, through their daughter, had agreed on a strategy to default and challenge only damages. When he was caught in that lie and Plaintiff moved to reinstate the default judgment, Mr. Lee did not admit to the truth. He withheld the

> engagement letter and misrepresented the date on which he was first contacted by a representative of Defendants and the purpose and content of that contact. The Court relied on Mr. Lee's representations and omissions in first vacating the entry of default and in later denying Plaintiff's motion to reinstate the default judgment. As a result, the proceedings were needlessly prolonged to the detriment of Plaintiff and of the court system as a whole.

*Hong*, 2024 WL 3824394, at *7.

The Court rejected Defendants' claims for sanctions, holding that the prolongation of the proceedings did not injure them and that "their remedy, if any, is not sanctions in this case." *Id.* at *19. It awarded Defendants fees and costs only for their expenses in bringing the sanctions motion. *Id.* However, the Court found that Plaintiff and his counsel were injured as a result of Lee's vexatious and unreasonable conduct. *Id.* at *17. As a sanction for Lee's bad faith conduct, the Court made Lee jointly and severally liable with Defendants for Plaintiff's costs and fees in the amount of $192,319.34. *See id.* at *20 ("The obligation on Mr. Lee shall be joint and several with the obligation of Defendants pursuant to the Court's judgment of July 31, 2024, Dkt. No. 256, such that if Defendants have paid in full Plaintiff's attorneys' fees and costs Mr. Lee shall be relieved from paying this sanction and to the extent Mr. Lee has paid any of Plaintiff's attorneys' fees and costs, Defendants shall no longer be liable for those fees and costs."). The Court also ordered Lee to pay the Court $10,000 as a sanction because "Lee wasted court resources in needlessly prolonging this litigation for three years" but explained that Lee could "be relieved of" that sanction "upon proof that within six months . . . he . . . paid the Plaintiff at least that amount." *Id.* at *21.

In subsequent proceedings, the Court fixed the amount due Defendants for preparing and filing the sanctions motion in the amount of $35,972.50 in attorneys' fees and $1,136.24 in costs. Dkt. No. 265 ("Fee Application Ruling") at 13.

On January 22, 2025, Plaintiff's counsel submitted a proposed omnibus judgment intended to memorialize the Court's prior rulings, orders, and judgments, including the 185 Judgement, the 256 Judgment, the Sanctions Ruling, and the Fee Application Ruling. Dkt. No. 266. The Court entered that judgment (the "Omnibus Judgment") the following day. The Court ordered as follows:

> 1) In accordance with the Initial Judgments, Plaintiff shall recover from, and is awarded judgment against, Defendants, jointly and severally, for the following sums: compensatory damages amount of $86,501.00; liquidated damages in the amount of $81,501; pre-judgment interest in the amount of $45,277; post-judgment interest under 28 U.S.C. § 1961(a); attorney[s'] fees in the amount of $177,318.25; and costs in the amount of $18,460.09;
>
> 2) In accordance with the Sanctions Ruling, Peter Y. Lee, Esq. shall be jointly and severally liable with Defendants to Plaintiff for the total amount of $192,319.34, representing attorneys' fees in the amount of $174,259.25, and costs in the amount of $18,060.09;
>
> 3) In accordance with the Fee Application Ruling, Defendants shall recover from, and are awarded judgment against, Peter Y. Lee, Esq., in the total amount of $37,108.74, representing attorneys' fees in the amount of $35,972.50, and costs in the amount of $1,136.24.

Dkt. No. 267 at 2–3.

After entry of judgment, Lee filed a notice of appeal with the Second Circuit. Dkt. No. 263. On December 16, 2025, the Second Circuit affirmed the Sanctions Ruling. *Lee v. Hong*, 2025 WL 3637495 (2d Cir. Dec. 16, 2025) (summary order).

### B. Post-Judgment Proceedings

On January 10, 2025, Plaintiff, Defendants, and Chi entered into a Judgment Purchase and Release Agreement (the "JPRA"). Dkt. No. 278-3; *see also* Dkt. No. 279 at 1. The JPRA was not disclosed to the Court at the time Plaintiff filed the proposed omnibus judgment. It provides that Plaintiff, as "Seller," "sells, assigns, sets over, transfers and conveys to Purchasers all rights, title, and interest" Plaintiff has in the 256 Judgment and the Sanctions Ruling to

Defendants and Chi (collectively, the "Purchasers") in exchange for a lump sum payment of $350,000 (the "Lump Sum Payment"), payable upon execution of the agreement. *Id.* § 1.01. It also provides that, upon receipt of the Lump Sum Payment, Plaintiff is to file with the Court the proposed omnibus judgment and that, upon entry of the omnibus judgment, Plaintiff is to "sell, assign, set over, transfer, and convey to Purchasers" all rights, title, and interest he has in the omnibus judgment. *Id.* § 1.02. Additionally, upon receiving the Lump Sum Payment, Plaintiff is to "execute a satisfaction of the [256 Judgment]" and, later, "of the Omnibus Judgment, in favor of the Defendants only." *Id.* § 1.04(d), (e). Purchasers, in turn, are obligated to pay Seller one dollar for every gross four dollars they collect directly or indirectly from Lee up to a cap of $50,000. *Id.* § 1.03(c). The JPRA makes Purchasers solely responsible for opposing Lee's appeal to the Second Circuit and for collecting on the judgments from Lee. *Id.* § 1.03(e), (f).

On January 11, 2025, a cashier's check in the amount of $350,000 issued in Chi's name was paid to Hyunkweon Ryu (Plaintiff's attorney) and Ryu Attorney Trust in accordance with JPRA § 10.3(b). Dkt. No. 278-4; *see also* Dkt. No. 281-2.

On February 27, 2025, counsel for Defendants filed requests for abstracts of the $37,108.74 portion of the judgment in favor of Defendants and of the $192,319.34 portion of the judgment against Lee in favor of Plaintiffs. Dkt. Nos. 272–73.

On July 18, 2025, counsel for Defendants domesticated the Omnibus Judgment with the assistance of Plaintiff and his counsel in New Jersey. Dkt. No. 273-3 at 2 ¶ 7. The Supreme Court of New Jersey recorded the judgment in the amount of $192,319.34, identifying Plaintiff as creditor and Defendants and Lee as debtors, and issued notices to each debtor identifying Defendants' counsel as "Creditor[']s Attorney." Dkt. No. 278-12.

On July 30, 2025, counsel for Defendants filed a writ of execution against Lee as attorneys for "Plaintiff/Judgment Creditor" in the aggregate amount of $229,428.08, reflecting the $192,319.34 due and owed from Lee to Plaintiff and the $37,108.74 due and owed from Lee to Defendants, plus interest thereon from January 23, 2025. Dkt. No. 278-13.

Lee filed this motion to alter judgment on March 20, 2026. Dkt. No. 276. He also filed a memorandum of law and a declaration in support of the motion. Dkt. Nos. 277, 278. Plaintiff and Defendants filed memoranda of law in opposition to the motion to alter judgments on April 2, 2026. Dkt. No. 279, 281. Lee filed a reply memorandum of law on April 9, 2026. Dkt. No. 283.

## DISCUSSION

Federal Rule of Civil Procedure 60(b)(5) gives the Court discretion on motion and just terms to relieve a party from a final judgment on grounds that "the judgment has been satisfied, released, or discharged." Fed. R. Civ. P. 60(b)(5). "Rule 60(b)(5) [is] an appropriate vehicle through which to seek credit against all or part of a judgment for the amount paid by a settling co-defendant." *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1274–75 (11th Cir. 2008) (citing cases); *see also Philips Lighting Co. v. Schneider*, 2014 WL 4274182, at *12 (E.D.N.Y. Aug. 28, 2014) ("Rule 60(b)(5) may be utilized to correct a judgment to prevent double recovery."). "The rule has been interpreted to allow district courts to mark judgments as partially satisfied." *Savitsky v. Mazzella*, 318 F. App'x 131, 132–33 (3d Cir. 2009); *see also Kassman v. American University*, 546 F.2d 1029, 1033 (D.C. Cir. 1976) ("[A] motion for a credit on a judgment should be treated as a Rule 60(b)(5) motion for relief from a judgment which has been satisfied, released or discharged.").[2]

---

[2] Though Lee also moves under Rule 60(b)(6), Rule 60(b)'s various provisions are "mutually exclusive." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993).

Lee argues that the Lump Sum Payment constitutes a payment in satisfaction of the $192,319.34 judgment that Defendants owed jointly and severally with Lee and that the judgment therefore could not be assigned to Purchasers. He claims that the payment discharges any liability he has for the judgment. He is mostly correct. As explained below, where the benefit of the assignment runs to a co-obligor, the assignment is void. Though the JPRA purports to assign the Omnibus Judgment to Defendants and Chi jointly, the economics of the transaction demonstrate that Defendants are the true beneficiary of the assignment. The JPRA therefore did not effect an assignment, and the Lump Sum Payment constituted a payment in partial satisfaction of the Omnibus Judgment. But because the JPRA evinces an intent to limit any benefit to Lee, the Lump Sum Payment first satisfied the portion of the judgment for which Defendants were solely liable and only partially satisfied the portion for which Defendants were jointly and severally liable with Lee. Thus, that portion of the Omnibus Judgment remains outstanding and can, at the very least, be enforced against Lee.

In the ordinary course, a judgment may be assigned, and the "assignment of a judgment vests in the assignee all remedies for its enforcement which were available to the assignor." *Cadle Co. v. Calcador*, 926 N.Y.S.2d 106, 108 (2d Dep't 2011). A judgment is an asset, and the judgment creditor is free to dispose of that asset as it wishes, including by assignment. New York law[3] codifies that principle in General Obligation Law § 13-103, allowing "[a] judgment

---

Because Lee only raises arguments within the ambit of Rule 60(b)(5), the Court does not consider Lee's motion under Rule 60(b)(6), the rule's "catchall provision." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211 (2025).

[3] The JPRA identifies New York law as "govern[ing] all questions concerning [its] construction, validity, and interpretation." Dkt. No. 278-3 § 5.06. Additionally, the parties rely on New York law to brief the validity of the JPRA's assignment and have thus consented to its application. "[T]hat consent [alone] is sufficient to end the choice of law inquiry." *Trepel v. Dippold*, 2006 WL 3054336, at *4 n.7 (S.D.N.Y. Oct. 27, 2006).

for a sum of money, . . . recovered upon any cause of action, [to] be transferred." Thus, a judgment creditor who does not want to take the risk and spend the time in judgment enforcement may monetize the judgment by assigning it for money to a third party. New York law creates no impediments to such conduct.

An important exception exists to this rule: Where a judgment is imposed jointly and severally on multiple obligors, a co-obligor cannot take an assignment in the judgment.[4] *See Whitney*, 75 N.Y. at 429 (citing *Harbeck v. Vanderbilt*, 20 N.Y. 395 (1859)). Under New York law, joint and several liability "imposes on each wrongdoer responsibility for the entire damages awarded, even though a particular wrongdoer's conduct may have caused only a portion of the loss." *In re Seagram Floral Co.*, 78 N.Y.2d 439, 448 (1991). When a party believes that she paid more than the equitable share of a judgment for which she was joint and severally liable, she may attempt to recover that excess from her co-obligor only through an action for contribution. *Whitney*, 75 N.Y. at 429 ("The remedy of the party thus paying is by an action against his co-debtor for contribution."); *Boccia v. Murphy,* 770 N.Y.S.2d 592, 595–96 (Sup. Ct. 2003); *see also* N.Y. C.P.L.R. §§ 1401, 1403 (allowing for actions in contribution); *cf. Harry Spring Consulting LLC v. Esterson*, 158 N.Y.S.3d 73, 74 (1st Dep't 2021) (applying this rule in the context of a loan agreement). She cannot sidestep that procedure, and its requirement that she prove the co-obligor's share of responsibility, through the expedient of assignment and judgment enforcement.

Thus, a co-obligor and an obligee lack the "power" to create "any arrangement . . . to keep the judgment on foot" for the benefit of the co-obligor, and any attempt by the co-obligor to

[4] A "different rule," however, "prevails where one of the joint judgment debtors is a surety upon the obligation put into judgment." *Townsend v. Whitney*, 75 N.Y. 425, 429 (1878). This case, however, does not involve any sureties.

"take an assignment to himself, or, unless under special circumstances, even to a third person for his own benefit" renders the "assignment . . . void."[5] *Harbeck*, 20 N.Y. at 398 (opinion of Selden, J.); *see also Booth v. Farmers' & Mechanics' Nat. Bank*, 74 N.Y. 228, 232 (1878); *Boccia,* 770 N.Y.S.2d at 595–96; *Harvey v. Harvey*, 48 N.Y.S.2d 238, 239 (Co. Ct. 1944). It is not hard to see the rationale for this rule. Allowing a judgment debtor to acquire the judgment allows that debtor effectively to profit from their own liability. An assignee has the same rights as the assignor from whom she receives the assignment. Upon receiving an assignment in the judgment, an obligor could pursue the entirety of the judgment from a co-obligor simply by locating and seizing assets without having to show the co-obligor's equitable share of liability as would be required in an action for contribution. The onus would shift to the co-obligor to pursue an action in contribution to claw back any overpayment. And in the event that the co-obligor did not pursue an action in contribution, the scenario would result in a recovery in excess of the value of that judgment. Accordingly, where a co-obligor makes a payment on a judgment, that payment must be treated as a satisfaction. *See Benedictine Hosp. v. Glessing*, 935 N.Y.S.2d 683, 686 (3d Dep't 2011); *Gotthelf v. Krulewitch*, 138 N.Y.S. 756, 757–58 (1st Dep't 1912). Further, under New York General Obligation Law §15-103, any consideration paid by one obligor in satisfaction of a judgment must be "credited to the extent of the amount received on the obligations of all co-obligors." Courts have relied on that statute to credit a payment provided by

---

[5] Defendants contend that the New York Court of Appeals' subsequent decision in *Champney v. Cope*, 32 N.Y. 543 (1865), undermines this reading of *Harbeck*. *See* Dkt. No. 281 at 11. That is incorrect. Judge Davies' opinion, to which Defendants cite, distinguished *Harbeck* on several grounds, including that the issue at *Champney* involved the assignment of a mortgage, not a judgment, and, separately, that there "was no joint liability on the party making the payment." 32 N.Y. at 550–52 (explaining that, unlike the rule in *Harbeck*, "the doctrine is well settled by authority, [that,] in relation to mortgages[,] . . . if the amount due thereon is paid, the intent of the parties in making such payment . . . will govern").

a settling defendant against the judgment still owed by a non-settling defendant. *See, e.g.*, *D.H. Blair & Co. v. Gottdiener*, 2010 WL 4258967, at *10 (S.D.N.Y. Oct. 27, 2010); *J.P. Endeavors v. Dushaj*, 778 N.Y.S.2d 531, 533 (2d Dep't 2004); *see also Williams v. UFH Apartments*, 48 F. App'x 344, 347 (2d Cir. 2002) (summary order) (noting that where one debtor is "jointly and severally liable," its "liability is reduced to the extent of any . . . recoveries" against co-obligors).

In light of this framework, it is undisputable that if Defendants were the only purchasers under the JPRA, the assignment would have been void and the Lump Sum Payment would be characterized and treated as a satisfaction. The JPRA would function no differently than a standard settlement-and-release agreement. Defendants would have no right to enforce the judgment against Lee for any portion of the Lump Sum Payment they made in exchange for the satisfaction of the Omnibus Judgment as against them. They could not manufacture such rights by calling the payment consideration for an assignment rather than a satisfaction. Recognizing an assignment in that scenario would allow Defendants to pursue the portion of the Omnibus Judgment for which Defendants and Lee were jointly and severally liable ($192,319.34) from Lee without Defendants having to make any showing of Lee's proportionate responsibility. Because Defendants had paid $350,000 in consideration for the assignment, it would also result in a collective recovery of $542,319.34 on the portion of the Omnibus Judgment originally awarded to Plaintiff, a windfall relative to its $409,057.34 value. But the assignment would not provide any additional benefit to Plaintiff, as, even with additional quarter-share of Defendants' recovery from Lee, he would recover only $398,079.84—a sum less than what he was originally entitled to.

Defendants muddy the waters by adding to the JPRA the provision that, in addition to filing a satisfaction of the judgment, Plaintiff agrees to assign the rights that he has to the

judgment to Defendants *jointly with a third party*. Further complicating the situation is that the third party is their daughter, Chi. In effect, Plaintiff and Defendants would now have it that, through the mechanisms of assignment and release, Defendants—and Chi—can recover through judgment enforcement the full $192,319.34 from Lee that Lee owed jointly and severally with Defendants. Unsurprisingly, to avoid the bar on assignments by an obligee to a co-obligor of a judgment, Plaintiff and Defendants point to Chi as the primary beneficiary of this transaction, as she "obtain[ed] the right to enforce the Judgment." Dkt. No. 281 at 8; *see also* Dkt. No. 279 at 3 (explaining that a "payment by or for a third person . . . can leave the judgment alive for legitimate protective purposes").[6]

As an initial matter, there is nothing in New York law that would have prohibited Plaintiff from engaging in two transactions (so long as they were both conducted at arm's length), the first settling the judgment against Defendants in exchange for a partial satisfaction of judgment and release and the second assigning to Chi for a payment the remaining portion of the judgment that was unpaid. Chi could then have pursued Lee for the value of the Sanctions Ruling less any portion of the judgment paid by Defendants in exchange for the satisfaction. And, depending on the value of the satisfaction, Lee and/or Defendants could have pursued one another through an action for contribution. There would have been no concern that the payment for the assignment would have been a disguised payment for the satisfaction. The judgment having already been settled as between Plaintiff and Defendants, the payment by Chi could only

[6] Plaintiff and Defendants also contend that Plaintiff is a beneficiary of the assignment as the JPRA "creates a collection mechanism" that "entitl[es] him to" a portion of Defendants' recovery. Dkt. No. 281 at 4. But, as explained below, the relevant inquiry is which of the *assignees* is the true beneficiary of the assignment. Plaintiff's ability to monetize his judgment is not limited to making an assignment to Defendants, and—assuming the market allows for it—he could obtain the same "collection mechanism" by way of an assignment to someone other than Defendants.

have been characterized as payment for the assignment—it would not have reduced the sum that Lee owed as a joint-and-several obligor. *See Harbeck*, 20 N.Y. at 399. But neither the parties nor the JPRA itself present any indication of an allocation—with some amount of the Lump Sum Payment having been made for the satisfaction and some for the assignment. Rather, the JPRA presents the assignment as made jointly to the Purchasers as a tenancy in common,[7] *see* Dkt. No. 278-3 §§ 1.01, 1.02, and Defendants affirmatively argue that "the [entire] $350,000 [p]ayment was [c]onsideration for [that] [a]ssignment, [n]ot a [s]atisfaction of the [j]udgment," Dkt. No. 281 at 6.

Thus the question arises whether the Lump Sum Payment made by Purchasers through a check from Chi should be characterized, as Defendants and Plaintiff would have it, as an assignment for the benefit of Chi, or, as Lee would have it, as a disguised payment to avoid judgment enforcement against Defendants and to enable Defendants to shift liability for the judgment entirely to Lee.

Though this fact pattern appears somewhat unique, Judge Selden addressed a similar issue in *Harbeck*, where he concluded that when a payment is made jointly by an obligor and a third party jointly and "an assignment ha[s] been at the same time taken to a third person," the validity of the assignment turns on for "whose benefit the assignment was taken." 20 N.Y. at 399. In *Harbeck*, Jacob H. Vanderbilt[8] was one of several defendants on a joint obligation. *Id.*

[7] Though the JPRA does not refer to the arrangement specifically as a tenancy in common, "[u]nder New York law, '[a] disposition of property to two or more persons creates in them a tenancy in common, unless expressly declared to be a joint tenancy.'" *Topp v. Pincus*, 2022 WL 493551, at *3 (S.D.N.Y. Feb. 16, 2022) (quoting N.Y. Est. Powers & Trusts Law § 6-2.2(a)). "All co-owners, or cotenants, of a tenancy in common share a *single right* to possession of the entire interest." *Amendola v. Cavallero*, 2026 WL 880548, at *5 (S.D.N.Y. Mar. 31, 2026) (internal quotation marks omitted).

[8] Jacob H. Vanderbilt Sr. (1807–1893) was the brother of Cornelius Vanderbilt (1794–1877). Cornelius, nicknamed "the Commodore," was a leading businessman of the nineteenth century,

at 396. After judgment was obtained against Jacob and his joint obligors, Jacob paid his share of the judgment and delivered to the underlying plaintiffs a promissory note as to the remainder. The note was indorsed by his brother Cornelius Vanderbilt. *Id.* Jacob's attorney then assigned the judgment to himself as an indemnity to Cornelius against Cornelius' liability as the indorser. *Id.* After Jacob's attorney sought enforcement of the judgment, the co-obligors sued to stop it. *Id.* The trial court concluded that the promissory note (by this point paid for by Cornelius) constituted a satisfaction and that Jacob could only recover from the plaintiffs by way of contribution. *Id.* The judgment was affirmed by the intermediate appellate court. *Id.* The Court of Appeals, however, disagreed. It observed that "[w]here the amount due upon a judgment is paid wholly or in part by one who is not a party to nor bound by it, the judgment is extinguished or not according to the intention of the party paying." *Id.* at 395. Applying that rule, the Court concluded that the "taking of an assignment" by Cornelius—a third party not subject to the judgment—in the portion of the judgment not paid by Jacob constituted "unequivocal evidence of an intention not to satisfy the judgment." *Id.* And because the judgment was not satisfied, Cornelius, as the assignee, could seek its enforcement. *Id.*

Judge Selden's seriatim opinion presented a series of hypotheticals related to the facts of the case: First, if Jacob had paid the entirety of the judgment, any putative assignment "whether taken to [Jacob] himself, or to any other person, would have been void." *Id.* Second, if Cornelius had paid the entirety of the judgment and took an assignment in the judgment, "the judgment would remain in force for [his] benefit" or for any "third person" to whom he directed

---

playing a key role in the steamship and the then-nascent railroad industries. Jacob followed his brother into transportation, first captaining the Commodore's ships on the Hudson River and, later, serving as president of the Staten Island East Shore Railroad. *See Capt. Vanderbilt Dead*, N.Y. Times (Mar. 20, 1893), *available at* https://timesmachine.nytimes.com/timesmachine/1893/03/20/issue.html.

the assignment. *Id.* But, third, if Jacob and Cornelius "jointly" made the payment and assigned the judgment to a third person, the validity of the assignment would turn on "whose benefit the assignment was taken [for]." *Id.* 399. Once again, an assignment to benefit Jacob would be void and one to benefit Cornelius would be valid (although offset by the share of the purchase price provided by Jacob). *Id.* In the absence of "any evidence to the contrary," "the law would presume [the assignment] to have been made for a legitimate purpose, rather than one which would make it illegal and void." *Id.* And, returning to the facts of the case before him, Judge Selden concluded there was clearly a legitimate purpose to the assignment: indemnifying Cornelius "to protect him against" the "contingent[] liab[ility]" he had assumed in indorsing the promissory note. *Id.*

Though this discussion from Judge Selden's opinion was plainly dictum, it is persuasive. A co-obligor cannot benefit from an assignment in a judgment by bringing in a straw purchaser. But a third party, not bound by the limitation that applies to a co-obligor, should remain free to benefit from the purchasing and eventual enforcement of a judgment, at the least as to the portion that did not come from a co-obligor. Focusing on who the actual beneficiary of an assignment is in such cases, then, prevents a co-obligor from employing clever drafting to obtain indirectly what he is not entitled to receive directly—the purchasing of a judgment against him.

Applying that logic to the JPRA, it is evident that the tenancy in common that Defendants and Chi intended to receive in the judgment should not be recognized as an assignment to the benefit of Chi but rather as a disguised payment for the partial satisfaction in favor of Defendants.[9] The entire benefit of the JPRA flowed to Plaintiff and Defendants. From

---

[9] Because the Court treats the tenancy in common as an entity distinct from Defendants and Chi (akin to the third party apart from Jacob and Cornelius in Judge Selden's third hypothetical) and still concludes that Defendants are the intended beneficiary, it need not consider a more drastic

the perspective of Defendants, they obtained through the payment of $350,000, a satisfaction from Plaintiff and the right to reduce that sum by up to $144,239.50 (three-quarters of $192,319.34) through the executable assets of Lee. In effect, they would pay only $205,760.50 on a judgment against them in the amount of $409,057.34. And from the perspective of Plaintiff, he would obtain immediate payment of $350,000 for satisfaction of the judgment as against Defendants with the possibility of recovering an additional $48,079.84, depending on the collection efforts of Defendants. The benefit of the consideration would not have inured, however, to Chi. From her perspective, if all $350,000 of the Lump Sum Payment went towards the assignment—as Defendants represent in their brief, Dkt. No. 281 at 6—Chi would have been a clear net loser. There would have been no benefit to her from the transaction. The Purchasers (meaning Chi) would be able to enforce the judgment against Lee for the entirety of the Lee Order ($192,319.34), but—assuming that the Purchasers collected the entirety of the Lee Order—Chi would have enjoyed only three-quarters of that recovery ($144,239.51). There would be a loss of over $200,000.

Even if the Court could allocate the Lump Sum Payment between a satisfaction offered by Defendants and an assignment paid for by Chi (an allocation that would lack any evidentiary

possibility that, under New York law, any assignment is void where it is conveyed as a tenancy in common and a tenant is a co-obligor. At least one trial-level court appears to have taken that approach. In *Morley v. Stevens*, a third party purchased a judgment and attempted to assign that judgment to a firm in which the third party and a co-obligor were partners. 47 How Pr. 228, 228–29, 1874 WL 9852 (N.Y. Sup. Ct. 1874). The court concluded that "the assignment of the judgment to the firm of which [the co-obligor] was a member operated at law as a satisfaction of the judgment," as "[the co-obligor] was the one whose duty it was to pay the judgment, and when he became the purchaser the judgment was satisfied, both at law and in equity." *Id.* at 229. It further explained that it had found "[n]o case . . . that relieves the purchaser from the operation of the rule, because the debtor is a member of a firm and the purchase is made in the name of the firm. It is enough that the debtor justly owing the debt is one of the purchasers." *Id.* at 230. It does not appear, however, that any intermediate appellate court or the New York Court of Appeals has had the opportunity to address this conclusion.

basis and would run afoul of the JPRA's text and Defendants' representation), there is no way for the deal to make economic sense with an assignment. Consider, for example, if all of the Lump Sum Payment (save perhaps one dollar) were treated as if a payment made in satisfaction by Defendants. Chi would have benefitted from characterizing the transaction in that fashion, but Plaintiff would suffer substantial losses. In that instance, the remaining portion of the judgment would be $59,058.34, with Defendants able to enjoy three quarters of that amount or $44,293.78. Plaintiff would receive only $14,764.59 of the remainder of the judgment; with the single dollar from Chi, he would have lost $44,292.75 on the assignment. Not even Plaintiff and Defendants argue that the transaction should be characterized in that fashion.

Thus, the arrangement of the JPRA itself provides "evidence . . . contrary" to the notion that Chi is the intended beneficiary of the assignment. *Harbeck*, 20 N.Y. at 399. Instead, the benefit is conferred entirely on Defendants, who are released from a judgment of $409,057.34 against them for only $350,000. This should not be surprising where the third party brought in to purchase the judgment jointly with Defendants and to give the assignment a veneer of legitimacy was Defendants' own daughter. And because the structure of the purported assignment is to Defendants' benefit, the assignment is void and the Lump Sum Payment must be treated as a payment in satisfaction. If Defendants wish to recover any portion of the Lump Sum Payment from Lee, they must do so through an action for contribution. They cannot avoid that process, and the rights it would afford Lee, through the expedient of an assignment.

How then should the satisfaction be credited against the Omnibus Judgment? Lee would have the $350,000 first go toward the portion of the Kim Judgment owed jointly and severally with him. *See* Dkt. No. 277 at 1. But Lee has no say in the matter. Under the common law, "where a debtor who owes a number of debts to a creditor makes a payment to the creditor, the

payment will be applied as the debtor directs; if the debtor fails to make a timely application, the payment will be applied as the creditor directs; and, if neither makes a timely application, the court will apply the payment."[10] 70 C.J.S. Payment § 36 (2026); *see also In re Isaac Silver & Bros. Co.*, 5 F. Supp. 955, 957 (S.D.N.Y. 1933); *Van Rensselaer's Ex'rs v. Roberts*, 5 Denio 470, 474–75, 1848 WL 4516 (N.Y. Sup. Ct. 1848). Though the JPRA, in treating the Lump Sum Payment as going toward an assignment, does not address what debt it is intended to satisfy, it clearly intends that Lee not be a beneficiary of the Lump Sum Payment. *See, e.g.,* Dkt. No. 278-3 § 1.04(d) ("For the avoidance of doubt, the satisfaction of judgment shall not apply to Lee, and the [256 Judgment and later the Omnibus Judgment] shall remain extent as to Lee."). Given that manifest intent by both Plaintiff and Defendants, the Court treats the Lump Sum Payment as satisfying first the entire portion of the Omnibus Judgment owed solely by Defendants ($216,738 plus post-judgment interest) with the amount in excess then going toward the portion of the Omnibus Judgment owed jointly and severally by Defendants and Lee. Though the JPRA countenances that Lee receive *no* benefit from the agreement, that is likely unavoidable because the Lump Sum Payment was one made in satisfaction and N.Y. General Obligation Law § 15-103 mandates that a payment of value by one obligor "be credited . . . on the obligations of all co-obligors." However, the Court cannot determine the remaining amount due on the Omnibus Judgment until it is made aware of the post-judgment interest to which Plaintiff was entitled at the time Plaintiff and Defendants entered the JPRA. Plaintiff and Defendants are therefore directed to provide a letter to the Court addressing this information,

[10] Some courts have adopted a further presumption to this "common law rule[]" that, in the absence of any direction from the debtor or the creditor, "the payment should be credited first to the separate debt, with any remainder being allocated to the joint and several obligation." *Jorgensen v. Aetna Cas. & Sur. Co.*, 769 P.2d 809, 812 (Utah 1988); *see also Wischkaemper v. Massey*, 70 S.W.2d 771, 772 (Tex. Civ. App. 1934); 60 Am. Jur. 2d Payment § 74 (2026).

and, after Lee has an opportunity to raise any objections with the calculation, the Court will issue an amended judgment.

Finally, Defendants argue that, because the Lee Judgment was imposed as a sanction, the Court cannot construe the JPRA as benefitting Lee. Dkt. No. 281 at 11–12. "Allowing the JPRA to extinguish sanctions," they contend, "would undermine th[e] institutional framework [of sanctions] and create a dangerous precedent." *Id.* The Court's ruling does no such thing. In fashioning the proper sanction, the Court imposed three penalties: 1) holding Lee jointly and severally liable for Plaintiff's costs and fees; 2) a $10,000 penalty payable to the Court unless Lee paid the same amount to Plaintiff within six months of the Sanctions Ruling; and 3) the Fee Application ruling, which rendered Lee liable for Defendants' costs in filing their sanctions motion. *Hong*, 2024 WL 3824394, at *17–19, *21. All are still in effect. Though some portion of the Lump Sum Payment went toward Plaintiff's costs and fees, Plaintiff was always free to "choose to collect [those] from" either Defendants or Lee; the Court's Sanctions Ruling did not make Lee solely liable. *Id.* at *18. To the extent that Defendants believe they overpaid their share of those costs and fees, they remain able to pursue an action for contribution against Lee. As to the penalty, Lee must deliver that payment to the Court. Plaintiff still maintains (and always did maintain) an outstanding judgment in excess of $10,000 that Lee could have satisfied, and six months from the Court's Sanctions Ruling have long passed. Though Lee argues that the six-month deadline was to be measured from a ruling on his appeal and that he became aware of the JPRA within six months of the Second Circuit's decision, *see* Dkt. No. 283 at 11, that excuse fails. The Court never stayed its Sanctions Ruling pending appeal. *Cf. de la Fuente v. DCI Telecomms., Inc.*, 269 F. Supp. 2d 237, 245 (S.D.N.Y. 2003) ("[I]t lies in the Court's discretion whether to stay enforcement of . . . sanctions pending appeal."). Even if the Court had granted a

stay, the JPRA's purported assignment was void *ab initio*—exactly as Lee contends—and he therefore could have made payment to Plaintiff at any point since the Second Circuit's decision in December 2025. The Court rejects Lee's attempt to have it both ways.

In short, Defendants tried to craft an agreement to circumvent the prohibition on a defendant assigning a judgment to himself. That gambit has failed. Plaintiff's interest in the Omnibus Judgment was never assigned but, instead, was partially satisfied as to $350,000. Plaintiff remains free to pursue the outstanding judgment.[11] Defendants remain free to pursue Lee for any contribution they believe themselves entitled to based on the Lump Sum Payment. Lee remains responsible for the Fee Application Ruling for which he is individually liable and the monetary sanction imposed by the Court.

## CONCLUSION

For the reasons stated above, the motion to amend the judgment is GRANTED IN PART and DENIED IN PART. The Clerk of Court is respectfully directed to close Dkt No. 276. Plaintiff and Defendants are directed to provide a letter to the Court by November 18, 2026, addressing Plaintiff's entitlement to post-judgment interest on the portion of the Omnibus Judgment owed solely by Defendants at the time Plaintiff and Defendants entered the JPRA. Lee

[11] The Court does not and need not address any effect this ruling might have on the JPRA's release provisions. It is clear, however, that, if the JPRA validly released Defendants, it did not release Lee and did not discharge the judgment as to him. *See, e.g.*, Dkt. No. 278-3 § 1.03(d) ("[T]he satisfaction of judgment shall not apply to Lee."); *see also* N.Y. Gen. Oblig. L. § 15-104 ("[T]he obligee's release or discharge of one or more of . . . joint and several obligors shall not discharge co-obligors, against whom the obligee in writing and as part of the same transaction as the release or discharge, expressly reserves his rights.").

shall then have two days to raise any objections to Plaintiff and Defendants' calculation. The Court will then issue an amended judgment.

SO ORDERED.

Dated: November 4, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge